EXHIBIT
E



# Transcript of Andrew Voveris

**Date:** June 14, 2024
**Case:** Futrell -v- Cramer, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1            IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF VIRGINIA

3                  Newport News Division

4      - - - - - - - - - - - - - -x

5    TOWANDA R. FUTRELL,        :

6            Plaintiff,         :

7      v.                       :   Civil Action No.

8    DANIEL L. CRAMER,          :   4:23-CV-00118-JKE-DEM

9    et al.,                    :

10           Defendant.         :

11     - - - - - - - - - - - - - -x

12

13             Deposition of ANDREW VOVERIS

14                 Conducted Virtually

15               Friday, June 14, 2024

16                  1:40 p.m. CST

17

18

19

20    Job No.: 542209

21    Pages: 1 - 135

22    Transcribed By: Alicia Greenland

1      Deposition of ANDREW VOVERIS conducted

2  virtually.

3

4

5

6

7

8

9      Pursuant to notice, before Cary Davidow, Notary

10  Public in and for the State of Illinois.

11

12

13

14

15

16

17

18

19

20

21

22

```
1              A P P E A R A N C E S

2   ON BEHALF OF PLAINTIFF, TOWANDA R. FUTRELL:

3        CHRISTOPHER M. FITZPATRICK, ESQUIRE

4        MORGAN & MORGAN

5        1901 Pennsylvania Avenue NW

6        Suite 300

7        Washington, DC 20006

8        (202) 772-0560

9

10  ON BEHALF OF DEFENDANT/THIRD-PARTY PLAINTIFF

11  AV LEASING, LLC:

12       TERRENCE L. GRAVES, ESQUIRE

13       AAISHA M. SANAULLAH, ESQUIRE

14       SANDS ANDERSON PC

15       919 East Main Street

16       Suite 2300

17       P.O. Box 1998

18       Richmond, Virginia 23218

19       (804) 648-1636

20

21

22
```

1    A P P E A R A N C E S   C O N T I N U E D

2   ON BEHALF OF THE DEFENDANT, DANIEL LEE CRAMER:

3        SHAWN A. VOYLES, ESQUIRE

4        MCKENRY DANCIGERS DAWSON PC

5        192 Ballard Court

6        Suite 400

7        Virginia Beach, Virginia 23462

8        (757) 461-2500

9

10   ON BEHALF OF THIRD-PARTY DEFENDANT, ANTONI

11   WIGGINS AND FUTRELL'S PARTY ADVENTURES, LLC:

12        ANGELA MACFARLANE, ESQUIRE

13        HARMON CLAYTOR CORRIGAN WELLMAN

14        P.O. Box 70280

15        Richmond, Virginia 23255

16        (804) 622-1153

17

18

19

20

21

22

1                        C O N T E N T S

2   EXAMINATION OF ANDREW VOVERIS                    PAGE

3       By Mr. FitzPatrick                             6

4

5

6                        E X H I B I T S

7                   (No exhibits marked.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1              P R O C E E D I N G S

2    Whereupon,

3                    ANDREW VOVERIS,

4    being first duly sworn or affirmed to testify to the

5    truth, the whole truth, and nothing but the truth,

6    was examined and testified as follows:

7         EXAMINATION BY COUNSEL FOR THE PLAINTIFF,

8                   TOWANDA R. FUTRELL

9    BY MR. FITZPATRICK:

10        Q  What is your full name, sir?

11        A  (No audible response.)

12        Q  Can you state what your full name is?  I

13   couldn't hear it for the record before.

14        A  My name is Andrew Voveris.

15        Q  Okay.  And what is your position with

16   AV Leasing?

17        A  I'm the president.

18        Q  Okay.  Let me just introduce myself.  My

19   name is Christopher FitzPatrick.  I'm an attorney

20   with Morgan and Morgan.  We represent the plaintiff,

21   Towanda Futrell, in the very tragic incident that

22   happened way back on December 16th, 2022.

1       If you don't understand my questions, please

2   let me know and I'll rephrase those questions.  If

3   at any time you want to take a break, please let me

4   know and we'll do that.  Okay?

5       The biggest rule in a deposition -- maybe

6   you've been deposed before -- is it's got to be yes,

7   no, or the appropriate response because the court

8   reporter has to be able to take down your testimony

9   and --

10      A  Right.

11      Q  -- the court reporter can't do that with

12  nods of the head or uh-huh.  It has to be yes, no,

13  or the appropriate response.

14      And if you don't understand my question or

15  hear my question, I don't want you to answer it

16  until you totally understand it and you totally --

17  and you totally hear it.  Okay?

18      A  Okay.

19      Q  Okay.  Once again, what is your position

20  with the company, sir?

21      A  I already told you.  I'm the president.

22      Q  Okay.  Sir, if I ask you a question and I

1  have a problem because I couldn't hear it, please

2  don't say things like I already told you this.  I'm

3  just -- because there's a problem sometimes with the

4  audio.  That's all.  All right?

5      A  All right.

6      Q  Okay.  You're the president of -- how long

7  have you been the president of AV Leasing?

8      A  I don't remember to be honest.  I need to

9  look at my books.

10      Q  Approximately how many years, sir?

11      A  Maybe five, maybe more.  I need to look.  I

12  don't remember.

13      Q  Okay.  Where were you born, sir?

14      A  Lithuania.

15      Q  In Lithuania?

16      A  Yes.

17      Q  Okay.  And what year were you born?  What's

18  your birthday?

19      A  1979, February 19th.

20      Q  Okay.  And when did you come to the

21  United States?

22      A  2014.

1     Q   Are you a U.S. citizen?

2     A   Yes.

3     Q   Okay.  How many -- how many -- who are the

4  corporate officers of AV Leasing?

5     A   Sorry?

6     Q   Who are the corporate officers?  Who's the

7  vice president?  The treasurer?

8     A   Nobody.

9        MR. GRAVES:  Well, before you answer,

10  Andrew, I'm going to object because that wasn't

11  listed as part of your 30(b)(6) deposition notice.

12        MR. FITZPATRICK:  This is all background

13  information, Terrence.  He can -- it's his company.

14  His company leased a truck that killed three people

15  and injured 23.  I'm certainly entitled to latitude

16  of what his company -- who his company is and

17  what -- who is the vice president and treasurer.  He

18  said --

19        MR. GRAVES:  But he --

20        MR. FITZPATRICK:  He just answered.  He said

21  he's the only guy.

22        MR. GRAVES:  Well, and that's fine.  I just

1   need to state my objection for the record, which I

2   did, and he's answered so we can move on.

3        MR. FITZPATRICK:  All right.

4   BY MR. FITZPATRICK:

5        Q  Sir, I can't see you on the screen.  What

6   happened?

7        A  You cannot see --

8        Q  Oh, okay.  There it is.

9           Okay.  How many employees are there in the

10  company?

11       A  It's only myself.

12       Q  It's only yourself?  So you own this company

13  and there's no corporate officers?  There's no

14  employees?  You just run this company?  Is that what

15  your testimony is?

16       A  It's only myself.  Employee.  None

17  employees.

18       Q  Okay.  Is your company incorporated?

19          MR. GRAVES:  Same objection.  I'll object --

20  just have a standing objection to the background

21  information because you could have -- very easily

22  have included that as part of your notice, but you

1  didn't.  But he's answered.

2          Go ahead and answer the question, Andrew.

3          THE WITNESS:  You said -- ask -- I mean,

4  answer the question or do not answer question?

5          MR. GRAVES:  Go ahead and answer it if you

6  remember what the question was at this point.

7          Can you re-ask the question, Chris?  And

8  I'll just have a standing objection.

9          (Brief pause.)

10          THE WITNESS:  I think we cannot hear Chris.

11  Is he still here?

12  BY MR. FITZPATRICK:

13      Q  I'm here.

14      A  Oh, okay.

15      Q  Okay.  What is your relationship with

16  Triton Trucking Company?  What's your relationship

17  with them?  I noticed that you guys both have a

18  Romeoville, Illinois address area.  What's your

19  relationship with that company?

20          MR. GRAVES:  Same objection as to outside

21  the scope of the notice.

22          You can answer it, Andrew.

1          THE WITNESS:  I can?

2          MR. GRAVES:  Yes.

3          THE WITNESS:  Basically Triton leasing the

4    trucks and trailers from AV Leasing.

5    BY MR. FITZPATRICK:

6       Q  They do what?  I'm sorry, sir.  You'll have

7    to keep your voice up.

8       A  Okay.  What is the relationship?  So I'm the

9    president for Triton Logistics.

10      Q  Okay.  So you're the president of

11   Triton Logistics?

12      A  Yes.

13      Q  Okay.  And you're also the president of

14   AV Leasing, LLC?

15      A  Yes.

16      Q  Why is that, sir?

17         MR. GRAVES:  Same objection as to scope of

18   the notice.

19   BY MR. FITZPATRICK:

20      Q  Why is that, sir?

21         MR. GRAVES:  I think I'll also object to the

22   form of the question because the question doesn't

1    necessarily make sense.

2    BY MR. FITZPATRICK:

3        Q   Well, why are you the -- it makes sense.

4            Why are you the president of the trucking

5    company and also the president of a single LLC

6    yourself that leases -- well, that has some sort of

7    relationship -- I'm asking what is the business

8    relationship, sir?

9        A   There's no relationship.  What do you mean

10   the relationship?  It's a different --

11       Q   Well --

12       A   Different -- different entity.

13       Q   Okay.  But same -- you're in the same area?

14   In Romeoville, Illinois, correct?

15       A   Yes.

16       Q   Okay.  And you're the president -- you're

17   saying it's a different entity, but you're the

18   president of both of them, correct?

19       A   Yeah, but I can be the president for a

20   hundred companies.

21       Q   Okay.  Sir, I don't -- listen, I don't need

22   you to be wise here and I don't need you to be

1  arrogant, I just need you to answer --

2      A  Seems like --

3      Q  I just need you to answer questions --

4      A  Seems like --

5      Q  Answer questions that are asked here.

6      A  Why --

7      Q  Okay?

8          MR. GRAVES:  He answered your question,

9  Chris.  I mean, if you --

10         MR. FITZPATRICK:  It was more of a

11  rhetorical arrogant type of smug response so I'll

12  ask the question again.

13         THE WITNESS:  Okay.

14         MR. FITZPATRICK:  I'll rephrase the question

15  again.

16  BY MR. FITZPATRICK:

17     Q  Sir, I'm just here to ask -- to find out

18  about what your relationship is with Triton.  How

19  you're related to this accident.  I'm entitled to go

20  into that.  All right?

21         MR. GRAVES:  Well, not necessarily.  Once

22  again, I'm going to object to the speech.  You can

1    ask him questions.

2            MR. FITZPATRICK:  Yeah.

3            MR. GRAVES:  And your questions need to be

4    focused on the seven areas that you --

5            MR. FITZPATRICK:  No.  Please, Counsel,

6    don't tell me --

7            MR. GRAVES:  -- delineated in the notice.

8            MR. FITZPATRICK:  Don't tell me what my

9    questions need to be focused on.  This gentleman has

10   pertinent tremendous knowledge of what happened

11   here today --

12           MR. GRAVES:  Once again --

13           MR. FITZPATRICK:  -- with regard to the --

14   tremendous knowledge --

15           MR. GRAVES:  -- (Indiscernible) your

16   speech --

17           MR. FITZPATRICK:  Tremendous knowledge --

18   his vehicle was involved in this accident.

19           MR. GRAVES:  You're giving a speech.

20           MR. FITZPATRICK:  All right.  So here we go.

21   So let me --

22           MR. GRAVES:  Ask questions.

1      MR. FITZPATRICK:  So let me -- let me

2  question.  Please do not interrupt my deposition,

3  please.  Okay?

4      And he has to answer the question over

5  objections so let him know that because he doesn't

6  know that.  He says should I -- I don't have to

7  answer?  Should I answer?  So --

8      MR. GRAVES:  I instructed him on that.

9  He --

10     MR. FITZPATRICK:  Right, but he thinks you

11 are instructing him.  That's what he said a couple

12 times.  Should I answer?

13     MR. GRAVES:  Well, you heard me tell him to

14 answer the question.

15     MR. FITZPATRICK:  All right.  All right.

16 BY MR. FITZPATRICK:

17   Q  Sir, do you own stock in Triton Trucking

18 Company?

19     MR. GRAVES:  Same objection.  Outside of the

20 scope of the notice.

21     You can answer the question, Andrew.

22     THE WITNESS:  Sorry.  I didn't hear your

1  question.  What is your question?

2  BY MR. FITZPATRICK:

3      Q  Do you own stock in Triton Construction

4  Company.  Triton -- I'm sorry -- Trucking Company.

5      A  What do you mean "stock"?  What kind of

6  stock?  The company --

7      Q  You own stock --

8      A  -- is not public.

9      Q  Do you own stock in the company?

10     A  I mean, this is not publicly traded company

11 so what do you --

12     Q  It's not --

13     A  -- mean "stock"?

14     Q  So it's not a publicly traded company.  How

15 big is Triton?  How many trucks does it have?  How

16 many employees does it have?

17        MR. GRAVES:  Same objection as to outside of

18 the scope.

19        At this point, Chris, I'm going to start

20 instructing him to not answer the questions because

21 this is not a corporate deposition for Triton, this

22 is a corporate deposition for --

1              MR. FITZPATRICK:  Well, if he --

2              MR. GRAVES:  -- AV Leasing.

3              MR. FITZPATRICK:  He just --

4              MR. GRAVES:  You can ask him all the

5     questions you want --

6              MR. FITZPATRICK:  No, no, no.

7              MR. GRAVES:  -- about AV Leasing.

8              MR. FITZPATRICK:  No, Terrence.  This is

9     going to actually -- I believe is now bordering on

10    the fact that he is now both -- I didn't know this

11    before this deposition --

12             MR. GRAVES:  Well, that's not --

13             MR. FITZPATRICK:  -- that he is now both the

14    president --

15             MR. GRAVES:  -- my problem.  If he's --

16             MR. FITZPATRICK:  He's both the --

17             MR. GRAVES:  I don't --

18             MR. FITZPATRICK:  He's both the president --

19             MR. GRAVES:  Chris, I don't care.  It's

20    improper.

21             MR. FITZPATRICK:  Now, please -- would you

22    listen?  Let me speak.

1        MR. GRAVES:  I understand --

2        MR. FITZPATRICK:  He's both the --

3        THE COURT REPORTER:  Counsel.

4        MR. GRAVES:  I understand what you're

5   saying, but --

6        THE COURT REPORTER:  Counsel, sorry.  Sorry.

7   One at a time.

8        MR. FITZPATRICK:  He's both a president of

9   this company -- he's both the president of the

10  company and he's president of AV Leasing.  I have a

11  right to know because he's coming back for the

12  deposition of Triton and the information we find out

13  today might be very important.  Right?

14       MR. GRAVES:  And if that happens, then it

15  happens, but this is not the deposition of Triton.

16       MR. FITZPATRICK:  No.  No.  If you're going

17  to obstruct this deposition, I want Judge Miller on

18  the phone.  Simple as that.  These are questions and

19  it's borderline -- it's borderline frustrating the

20  administration of justice right now.  It really is.

21  Because he's got pertinent information regarding the

22  relationships of the companies, regarding the

1    accident itself, regarding whether a publicly traded

2    company -- he has that knowledge and you cannot --

3    you cannot just tell him don't answer the question.

4          MR. GRAVES:  Maybe he does, but we've got

5    certain procedures that we follow.  Your notice --

6    if this was a fact deposition of Andrew Voveris --

7          MR. FITZPATRICK:  Okay.

8          MR. GRAVES:  -- you could get into that all

9    day --

10          MR. FITZPATRICK:  I'll tell you what.  We'll

11    bring him --

12          MR. GRAVES:  -- but --

13          MR. FITZPATRICK:  We'll bring him back for

14    the Triton deposition and we'll ask him

15    everything --

16          So you're not going to let him -- so it's

17    your statement right now, Counsel, that you are

18    directing him not to answer any questions regarding

19    Triton despite the fact that he's wearing two hats?

20    He's wearing the president of Triton and he's

21    wearing the president of AV Leasing.  Is that what

22    your position is?

1          MR. GRAVES:  He could wear a hundred hats if

2     he wanted to, but your notice is for the corporate

3     deposition of AV Leasing and only AV Leasing.  So if

4     you want to -- and you're -- you are stuck with what

5     you put in that notice, right, wrong, or

6     indifferent.  You don't get to go beyond it.  It's

7     a --

8          MR. FITZPATRICK:  No.  Yes --

9          MR. GRAVES:  -- basic rule --

10         MR. FITZPATRICK:  Yes, I do.  When you're --

11         MR. GRAVES:  It's a basic rule of --

12         MR. FITZPATRICK:  -- frustrating the

13    administration of justice, yes, I do.

14         MR. GRAVES:  -- a 30(b)(6) deposition.

15         MR. FITZPATRICK:  Yes, I do.  Because you

16    know what, Counsel?  Getting to the -- I've got a

17    person who is severally injured.  We've got three

18    people who are dead.  Who are deceased and dead.

19    Okay?  And --

20         MR. GRAVES:  The more you say that, it

21    doesn't make it any better or any worse.

22         MR. FITZPATRICK:  Well --

1        MR. GRAVES:  So every statement that you

2   say --

3        MR. FITZPATRICK:  -- the deposition is

4   getting to the truth.

5        MR. GRAVES:  -- does not have to be

6   conditioned or preceded by the fact that there are

7   injured people and that people died in this

8   accident.

9        MR. FITZPATRICK:  But you've been giving

10  speaking objections.

11       MR. GRAVES:  We understand that.  We know

12  that.

13       MR. FITZPATRICK:  You've been giving

14  speaking objections throughout this deposition and

15  you're instructing the witness not to answer despite

16  the fact that he has relevant knowledge regarding --

17       MR. GRAVES:  Well, if --

18       MR. FITZPATRICK:  Regarding --

19       MR. GRAVES:  If you --

20       MR. FITZPATRICK:  Regarding his position as

21  Triton -- as the president of Triton and AV Leasing.

22       MR. GRAVES:  If you would get back on track,

1   I wouldn't have to explain why I'm taking the

2   position that I'm taking to you.

3          MR. FITZPATRICK:  Right.

4          MR. GRAVES:  Because you're refusing to

5   follow the rules --

6          MR. FITZPATRICK:  No.

7          MR. GRAVES:  -- which makes it necessary for

8   me to --

9          MR. FITZPATRICK:  Well, what do you mean

10  refusing?  I'm asking questions that are very

11  pertinent --

12         MR. GRAVES:  All right.  You can go ahead

13  and --

14         MR. FITZPATRICK:  -- and relevant to my

15  client's case.

16         MR. GRAVES:  You can ask every question that

17  you want to --

18         MR. FITZPATRICK:  Okay.

19         MR. GRAVES:  -- and we will --

20         MR. FITZPATRICK:  No.  As long as you're --

21         MR. GRAVES:  I'll keep my objections --

22         MR. FITZPATRICK:  If you're going to keep

1   obstructing --

2           MR. GRAVES:  -- (Indiscernible).

3           MR. FITZPATRICK:  If you're going to keep

4   obstructing then I need the Judge on here.  You

5   continue to obstruct and you have obstructed right

6   from the beginning.  So please --

7           MR. GRAVES:  Well --

8           MR. FITZPATRICK:  Please let me --

9           MR. GRAVES:  -- all I'm telling you --

10          MR. FITZPATRICK:  Let me conduct my

11  deposition.

12          MR. GRAVES:  All I'm telling you, Chris, is

13  that --

14          MR. FITZPATRICK:  Please let me,

15  Mr. Graves --

16          MR. GRAVES:  -- you have to stay --

17          MR. FITZPATRICK:  -- conduct my deposition.

18          MR. GRAVES:  -- within your notice.

19          THE COURT REPORTER:  Counsel, I apologize,

20  but I can't hear you talking over one another.

21          MR. FITZPATRICK:  Just please let me conduct

22  my deposition.

1      MR. GRAVES:  I'm not going to let you

2 conduct your deposition if it's outside of the rules

3 and what's allowable because then I'm not doing my

4 job.

5      MR. FITZPATRICK:  What?  To get to the truth

6 of what happened to my client is outside the rules?

7 Is that what you're saying?

8      MR. GRAVES:  Chris, stop --

9      MR. FITZPATRICK:  All right.  All right.

10      MR. GRAVES:  -- pontificating, please.

11      MR. FITZPATRICK:  No, I'm not pontificating.

12      MR. GRAVES:  It's objections.

13      MR. FITZPATRICK:  You're the one who's

14 pontificating, Mr. Graves.

15 BY MR. FITZPATRICK:

16    Q  All right, sir.  Back on --

17      MR. GRAVES:  Ask your questions --

18      MR. FITZPATRICK:  We're back --

19      MR. GRAVES:  -- and I'll instruct --

20      MR. FITZPATRICK:  We're back --

21      MR. GRAVES:  -- my witness accordingly.

22      MR. FITZPATRICK:  We're back on the record.

1        And please do not obstruct.  Once again, if

2   you have an objection, you just make an objection.

3   That's it.

4        MR. GRAVES:  I'm going to make my objection

5   and I'm going to --

6        MR. FITZPATRICK:  All right.

7        MR. GRAVES:  -- instruct him accordingly.

8        MR. FITZPATRICK:  All right.  You cannot

9   obstruct -- you cannot direct a witness in a

10  deposition who especially has pertinent knowledge

11  regarding an accident -- pertinent tremendous

12  knowledge regarding his relationships with Triton.

13  You cannot direct that witness not to answer the

14  question.  You can make an objection for it, but you

15  can't direct him not to answer the question.

16       MR. GRAVES:  I --

17       MR. FITZPATRICK:  Especially when he has

18  direct knowledge of --

19       MR. GRAVES:  I've got a solution to that.

20       MR. FITZPATRICK:  He has direct knowledge,

21  Mr. Graves, of this.

22       MR. GRAVES:  All right.  Ask your questions.

1          MR. FITZPATRICK:  You've been an attorney a

2     long time.

3          MR. GRAVES:  Ask your questions, please.

4          MR. FITZPATRICK:  Okay.

5          MR. GRAVES:  But you're burning time right

6     now.  Ask your questions.

7          MR. FITZPATRICK:  Okay.  I have as much time

8     as I want to because I thought I was going to be an

9     hour with this witness, now you're telling me --

10    with obstructing it and with the knowledge he has,

11    it could be four hours, five hours with this

12    witness.

13          THE WITNESS:  No.

14          MR. GRAVES:  Go ahead.

15          MR. FITZPATRICK:  Did the witness come --

16          MR. GRAVES:  Ask your questions, Chris.

17          MR. FITZPATRICK:  Did the witness come back?

18          MR. GRAVES:  Ask your questions.

19    BY MR. FITZPATRICK:

20      Q  So what knowledge -- did AV Leasing lease

21    a -- the truck that was involved in this accident to

22    Triton?

1     A   Yes.

2     Q   Okay.  And were you involved with the

3  leasing directly since you're the only employee of

4  the company?

5     A   Yes.

6     Q   Okay.  And when you made that -- when you

7  engaged in that lease, you were also acting as the

8  president of Triton Trucking Company; is that

9  correct?

10        MR. GRAVES:  Before you answer, objection.

11  Outside of the scope of the notice.  Move to strike

12  any answer.

13        You can answer.

14        THE WITNESS:  Okay.  What is your question

15  again?  I didn't get it.

16  BY MR. FITZPATRICK:

17     Q   Okay.  When you entered in that lease,

18  sir -- were you also the president of Triton when

19  you entered into that lease?

20        MR. GRAVES:  Same objection.

21        Go ahead and answer.

22        THE WITNESS:  Yes.

```
1    BY MR. FITZPATRICK:

2        Q   Okay.  Who is the general counsel of

3    AV Leasing?

4            MR. GRAVES:  Before you answer, objection.

5    Outside of the scope.  Move to strike.

6            You can answer, Andrew.

7            THE WITNESS:  It's Jamie.

8    BY MR. FITZPATRICK:

9        Q   Jamie.  What's Jamie's last name?

10           MR. GRAVES:  Same objection.  Move to

11   strike.

12           THE WITNESS:  Shall I give him information

13   or no?

14           MR. GRAVES:  Yeah, you can answer.  Sorry.

15   I didn't instruct you.  Okay to answer, but I'm

16   moving to strike the answer.

17           THE WITNESS:  Yeah.  Sorry.  I have to go to

18   my phone and just spell the full name.

19           (Brief pause.)

20           THE WITNESS:  Jamie is J-A-M-I-E and the

21   last name is Lane.  L for lemon, A for apple, N for

22   November, E for echo.
```

1  BY MR. FITZPATRICK:

2      Q  Lake?  L-A-K-E?

3      A  No, no, no.  L-A-N for Nancy, E for echo.

4  Lane.

5      Q  Can you spell it?  I still can't -- I still

6  can't understand it.

7      A  L for lemon, A for apple --

8      Q  Okay.

9      A  -- N for Nancy, E for echo.

10     Q  Lane.  Jamie Lane.

11     A  Yes.

12     Q  Is that a man or a woman?

13     A  It's a man.

14     Q  Okay.  And how do you spell Jamie?

15     A  J for James, A for apple, M for mother, I

16  for India, E for echo.

17     Q  Okay.  And does Jamie -- I'm not going to

18  ask you discussions that you had with Jamie or

19  anything like that.  Or sensitive attorney-client

20  privileged issues.

21         Is Jamie a licensed attorney in the State of

22  Illinois?

1          A   Yes.

2          Q   Yes?

3          A   Yes.

4          Q   Okay.  And is Jamie Lane involved in

5    advising you -- I'm not going to ask you the type of

6    advice -- is he advising -- involved in advising you

7    regarding leasing vehicles from your company to

8    Triton?

9          MR. GRAVES:  Objection.  Outside the scope

10   of the notice.  Move to strike any answer.

11         You can answer the question.

12         THE WITNESS:  No.

13   BY MR. FITZPATRICK:

14         Q   Okay.  Why not?  If he's the general

15   counsel, wouldn't a major part of his position would

16   be advising you and reviewing leases, sir?

17         MR. GRAVES:  Objection.  Outside of the

18   scope of the notice.  Also invades the

19   attorney-client privilege.  Move to strike any

20   answer.

21         You can answer, Andrew.

22         THE WITNESS:  I don't really understand what

1    you're asking.

2              MR. FITZPATRICK:  I'll have the court

3    reporter read it back to you.

4              THE WITNESS:  Why?  I don't really know what

5    you --

6              MR. FITZPATRICK:  I'll have the court

7    reporter read it back to you.

8              THE WITNESS:  I'm sorry?

9              MR. FITZPATRICK:  The court reporter is

10   going to read back the last question.

11             Sir, can you read back the last question to

12   this witness?

13             THE COURT REPORTER:  Please stand by.

14             (The Reporter read the record as follows:

15   Why not?  If he's the general counsel, wouldn't

16   he be a major part of this?)

17             THE WITNESS:  I mean, are you asking the

18   question if he helped me to -- or advised me to make

19   lease agreements?

20   BY MR. FITZPATRICK:

21        Q  Yeah, that's my question.  Does he advise

22   you to make lease agreements?

1       A   No.  I told you.  No.

2       Q   Does he review the lease agreements?

3           MR. GRAVES:  Same objection.  Outside of the

4   scope of the notice.  Move to strike any answer.

5           You can answer.

6           THE WITNESS:  No.

7   BY MR. FITZPATRICK:

8       Q   Do you know whether it's legal or

9   appropriate for AV Leasing company to -- as a

10  president, to lease a truck to a major trucking

11  company in which he is the president?

12          MR. GRAVES:  Objection.  Calls for a legal

13  conclusion.  Outside of the scope of the notice.

14  Also object to the form of the question.

15          You can answer the question if you

16  understood it, sir.

17          Move to strike also.

18          THE WITNESS:  Can you repeat your question?

19  BY MR. FITZPATRICK:

20      Q   Do you know if it's legal or not to have --

21  to lease a truck in which you're the president of --

22  okay?  From AV Leasing to lease that to the same

1    company in which you're the president of?

2         MR. GRAVES:  Same objection.

3    BY MR. FITZPATRICK:

4         Q  Of a major trucking company which you're the

5    president of?

6         MR. GRAVES:  Same objection.

7         THE WITNESS:  Yes, it's legal.  Yeah.

8    BY MR. FITZPATRICK:

9         Q  Okay.  Who has advised you that it's legal?

10        I'm not going to ask him what the -- what

11   they specifically advised you, but who is the

12   person -- did Jamie Lane advise you that that's both

13   legal and appropriate to do?

14        MR. GRAVES:  Same --

15        THE WITNESS:  No.

16        MR. GRAVES:  Same objection as to legal

17   conclusion.  Outside of the scope of the notice.

18   I'll also object to the form of the question and

19   further it invades the attorney-client privilege as

20   asked.

21        You can answer the question.

22        THE WITNESS:  No.

1    BY MR. FITZPATRICK:

2        Q   Who's in charge of marketing for AV Leasing?

3            MR. GRAVES:  Objection.  Outside the scope

4    of the notice of deposition.

5            You can answer the question.

6            THE WITNESS:  Myself.

7    BY MR. FITZPATRICK:

8        Q   Okay.  And who's in charge of marketing for

9    Triton Construct --

10           MR. GRAVES:  Objection.

11   BY MR. FITZPATRICK:

12       Q   -- Triton Trucking Company?

13           MR. GRAVES:  Objection.  Outside of the

14   scope of the notice.  Move to strike.

15           You can answer.

16           THE WITNESS:  Mr. Christopher, I'm not

17   representing Triton today, I'm representing

18   AV Leasing.

19   BY MR. FITZPATRICK:

20       Q   I'm going to ask you about Triton.

21           Who's the director of marketing for Triton?

22       A   I already told you.  Deposition --

1          MR. GRAVES:  Same objection.

2          THE WITNESS:  Deposition today is for

3    AV Leasing.  Once we're going to have a

4    deposition --

5    BY MR. FITZPATRICK:

6      Q  No, you didn't tell me that, sir.  Your

7    attorney did.  But I'm asking you to answer the

8    question.

9      A  I'm not answering it.

10     Q  Why won't you answer it?

11     A  Because deposition today is for AV Leasing.

12     Q  So you're -- on your own -- your own accord

13   you're directing yourself not to answer the

14   question?

15     A  I'm not directing nothing.  I just came

16   today.  I have a limited time to answer the

17   questions for AV Leasing.  I have no time.  Okay?  I

18   have meetings after that.

19     Q  All right.  So you --

20     A  Very important meetings.

21     Q  So you want to cancel -- you want to cancel

22   this -- you're walking out of this deposition?  Is

1    that what you're saying?

2        A   I'm not walking.

3        Q   You're walking out?

4        A   I'm not walking.

5        Q   All right.  So please, I'm going to do the

6    questions.

7        A   I came here today --

8        Q   I'm going to do the questions.  Your

9    attorney can make an objection, but you can't refuse

10   not to answer a question.

11       A   Mr. Christopher, I was advised to come here

12   today to do deposition of AV Leasing.  That's why I

13   came.

14       Q   Okay.

15       A   So I'm talking about AV Leasing.

16       Q   Okay.

17           MR. GRAVES:  And just so we're -- and we'll

18   keep this on the record.

19           Just so you know, when you told me that it

20   would take about an hour, that's what I told people.

21           MR. FITZPATRICK:  All right.

22           MR. GRAVES:  And now you're completely

1    walking that back and you're saying --

2          MR. FITZPATRICK:  Well, because I gave

3    enough --

4          MR. GRAVES:  -- three to four hours.

5          MR. FITZPATRICK:  Mr. Graves, I -- we're

6    finding --

7          MR. GRAVES:  Wait a minute, Chris.

8          MR. FITZPATRICK:  We're finding out --

9          MR. GRAVES:  Let me finish.  Chris.

10         MR. FITZPATRICK:  -- that he's both the

11   president --

12         MR. GRAVES:  Chris.

13         MR. FITZPATRICK:  No.  I'm not going to --

14         MR GRAVES:  Let me finish.

15         MR. FITZPATRICK:  Listen.  We're going to

16   get the Judge on the phone.

17         MR. GRAVES:  Let me finish.

18         MR. FITZPATRICK:  I'm going to get the

19   Judge.  Listen.

20         MR. GRAVES:  Well, fine.

21         MR. FITZPATRICK:  Because this -- this --

22         MR. GRAVES:  I don't call (Indiscernible) --

```
1              MR. FITZPATRICK:  I will try one more time.
2    I will try one more time.
3              MR. GRAVES:  Call Judge Miller.  Call --
4              MR. FITZPATRICK:  I'll try one more time --
5              MR. GRAVES:  (Indiscernible).
6              MR. FITZPATRICK:  -- before this --
7              MR. GRAVES:  You can call Judge Miller.
8              MR. FITZPATRICK:  We have to work this out.
9    I will try one more time and move on.  Okay?
10   BY MR. FITZPATRICK:
11      Q  Sir, do you --
12             MR. GRAVES:  At this point, I want you to
13   call Judge --
14             MR. FITZPATRICK:  Are you going to let me
15   answer the -- ask the questions?
16   BY MR. FITZPATRICK:
17      Q  Sir, were you aware of an incident that took
18   place on December 16th, 2022?
19      A  Are you asking if I'm aware about the
20   accident?
21      Q  Yes.
22      A  Yes.
```

1      Q   Okay.  Who contacted you about that

2   incident?

3      A   Claims department from Triton Logistics.

4      Q   Did the Virginia Police contact you at any

5   time to investigate the fact that your company,

6   AV Leasing, as well as Triton was violating the law

7   at all by doctoring hours and falsifying hours in

8   records when your drivers were on the road?

9        MR. GRAVES:  Objection.  Object to form.

10   Outside of the scope of the notice.

11        You can answer the question.

12        THE WITNESS:  Nobody contact me.

13   BY MR. FITZPATRICK:

14      Q   Who did they -- who did they contact, sir?

15        MR. GRAVES:  I'll also move to strike any

16   answer.

17        Once again, objection to the form.

18   Objection.  Outside of the scope of the notice.

19   Move to strike any answer.

20        You can answer the question.

21        THE WITNESS:  Mr. Christopher, nobody

22   contact AV Leasing.  Nobody contact me.

1    BY MR. FITZPATRICK:

2        Q   Okay.  Are you aware of an article in

3    Virginia -- in the Virginia papers alleging that

4    your company and Triton allegedly falsified and

5    doctored hours for drivers, including Mr. Cramer,

6    before this accident?  Are you aware of that

7    article?  Are you aware of that investigation as

8    well?

9            MR. GRAVES:  Objection.  Outside of the

10   scope of the notice.

11           MR. FITZPATRICK:  He's under oath, Terrence.

12           MR. GRAVES:  Wait a minute.

13           MR. FITZPATRICK:  He's under oath.

14           MR. GRAVES:  Wait a minute.

15           MR. FITZPATRICK:  He's under oath.

16           MR. GRAVES:  I'm making my objection.

17           MR. FITZPATRICK:  All right.  Go ahead.

18           MR. GRAVES:  Don't interrupt my objection.

19   I'm not interrupting --

20           MR. FITZPATRICK:  All right.

21           MR. GRAVES:  -- your questions.  Do not

22   interrupt my question -- my objections.

1          MR. FITZPATRICK:  Go ahead.  Go ahead.

2          MR. GRAVES:  Outside of the scope of the

3    notice.  Misstates facts so I object to the form.

4    Move to strike any answer.

5          You can answer, Andrew.

6          THE WITNESS:  Nobody contact me as the owner

7    for AV Leasing.

8    BY MR. FITZPATRICK:

9      Q  No.  Did anyone contact Triton -- and you're

10   the president of Triton, sir -- regarding --

11     A  I'm not --

12     Q  -- falsifying -- falsifying documents --

13   falsifying documents and doctoring logbooks?

14         Did anyone -- you as the president of

15   Triton, did anyone contact you or anyone within

16   Triton?

17         MR. GRAVES:  Objection.  Outside of the

18   scope of the notice.  Move to strike any answer.

19         You can answer, Andrew.

20         THE WITNESS:  Mr. Christopher, I'm saying to

21   you one more time, again.  The last one.  I

22   represent -- I'm representing today AV Leasing.  I'm

1    not representing Triton.

2    BY MR. FITZPATRICK:

3        Q   Okay.  But you're -- but guess -- your

4    attorney just told you to -- directed you to answer

5    the question -- specific question I just asked you.

6        A   So ask about AV Leasing.  I will --

7        Q   No, no.  I'm asking you right now.  Under

8    oath.  Under the penalties of perjury.  Okay?  I'm

9    asking you to provide that information and give a

10   response to that question that your attorney

11   directed you to answer.

12           MR. GRAVES:  Well, Chris, here's where we

13   are right now.

14           MR. FITZPATRICK:  No.  Terrence, you

15   directed --

16           MR. GRAVES:  No.  Wait a minute.

17           MR. FITZPATRICK:  -- him to answer the

18   question.

19           MR. GRAVES:  Chris.  Chris.

20           MR. FITZPATRICK:  I'm going to make a --

21           MR. GRAVES:  Chris.

22           MR. FITZPATRICK:  Listen, Terrence.

1          MR. GRAVES:  All right.  Chris.  Let me --

2          MR. FITZPATRICK:  I'm making a -- he's

3    withholding --

4          MR. GRAVES:  All right.

5          MR. FITZPATRICK:  -- vital information --

6          MR. GRAVES:  Fine.

7          MR. FITZPATRICK:  -- that --

8          MR. GRAVES:  Fine.  Then this is what we'll

9    do.  We will end the deposition at this point in

10   time.  You can get Judge Miller on the phone if you

11   want to, if you can reach him, and you can make any

12   complaints you want to about how this is going --

13         MR. FITZPATRICK:  Well, I'm not making a

14   complaint about you --

15         MR. GRAVES:  -- and make (Indiscernible).

16         MR. FITZPATRICK:  -- because you're

17   directing him to answer.

18         MR. GRAVES:  But wait a minute, Chris.

19   Chris.

20         One, don't talk over me.  Two, the court

21   reporter cannot take both of us down at the same

22   time so you're going to have to listen for a while

1    until I stop talking.  And if you don't want to

2    listen, that's another reason for me to stop the

3    deposition.

4         Now, you continue to ask him questions

5    outside of the scope of the notice.

6         MR. FITZPATRICK:  But you just directed --

7         MR. GRAVES:  He has -- wait a minute, Chris.

8    Wait a minute.  I'm not -- stop.  I'm not finished

9    talking.

10        MR. FITZPATRICK:  Yeah.

11        MR. GRAVES:  Just stop.  Just stop, please.

12        MR. FITZPATRICK:  You're an attorney and

13   you're an officer --

14        MR. GRAVES:  Chris.

15        MR. FITZPATRICK:  -- of the court.

16        MR. GRAVES:  Chris.

17        MR. FITZPATRICK:  You cannot direct a

18   witness --

19        MR. GRAVES:  You're still doing it.

20        MR. FITZPATRICK:  -- who has --

21        No.  You can't direct a witness who has

22   tremendous knowledge about a -- about doctoring --

1    an investigation about doctoring logbooks because

2    he's saying this has to do with AV Leasing.  But

3    Mr. Graves, you directed him to answer that question

4    and he's refused repeatedly under oath which --

5           MR. GRAVES:  He refused because --

6           MR. FITZPATRICK:  -- (Indiscernible) for

7    contempt.

8           MR. GRAVES:  -- it's outside of the scope of

9    the notice --

10          MR. FITZPATRICK:  (Indiscernible).

11          MR. GRAVES:  -- that you have provided and I

12   think he's entitled to refuse to answer it as a

13   designee of AV Leasing.

14          MR. FITZPATRICK:  You directed him --

15          MR. GRAVES:  I think he's entitled to do

16   that.

17          MR. FITZPATRICK:  -- to answer the question.

18          MR. GRAVES:  So what we're going to do --

19   you go ahead and call Judge Miller if you want to.

20   That's fine.  I have no problem with that.  And I've

21   only said --

22          MR. FITZPATRICK:  Let's do the deposition.

1          MR. GRAVES:  -- that once in 33 years and

2    that's today.

3          MR. FITZPATRICK:  All right.

4          MR. GRAVES:  So that should tell you that

5    you're way outside of the bounds of what you're

6    allowed to do.  But I don't think you're getting

7    that so you call Judge Miller now --

8          MR. FITZPATRICK:  (Indiscernible) for the

9    deposition.

10          MR. GRAVES:  -- if you want to.  We will go

11    off the record --

12          MR. FITZPATRICK:  All right.

13          MR. GRAVES:  -- until you try to make your

14    call --

15          MR. FITZPATRICK:  I would like --

16          MR. GRAVES:  -- and get him on the line.

17          MR. FITZPATRICK:  I would like to --

18          MR. GRAVES:  And then we will -- then we'll

19    move forward --

20          MR. FITZPATRICK:  The court reporter --

21          MR. GRAVES:  -- if Judge Miller tells us

22    that we have to.

1          MR. FITZPATRICK:  The court reporter --

2          MR. GRAVES:  So --

3          MR. FITZPATRICK:  The court reporter has

4     marked it where you directed him to answer the

5     question and he's refused to answer the question.

6     I'll just move on and do it at a later time.  All

7     right?  So we'll move on.  I'll ask him questions --

8     more questions.

9          MR. GRAVES:  Well, at this point I'm going

10    to direct him to answer -- not answer any questions

11    outside of the scope of your notice.  And be that

12    what it is, but that's where we are right now.

13         MR. FITZPATRICK:  So Counsel, you have

14    information as an officer of this court.  Okay?  You

15    have information that's pertinent to this

16    investigation.  Okay?  Pertinent to this lawsuit.

17    Where three people are dead and 22 are severely

18    injured and you have that knowledge and so does he.

19    Okay?  And you're directing him as an officer of

20    this court -- I just want to be clear.

21         And my notice was pretty -- pretty broad.  I

22    get to go into certain questions.  If you --

1          MR. GRAVES:  (Indiscernible) broad.

2          MR. FITZPATRICK:  If want to play that game,

3    that's fine.

4          MR. GRAVES:  (Indiscernible).

5          MR. FITZPATRICK:  But as an officer of the

6    court, under Rule 8.4, you know that pertinent

7    information you cannot withhold from a Court.  You

8    cannot direct a witness -- and you didn't.  You

9    didn't direct that witness not to answer.  Now

10   you're directing him not to answer any questions.

11   You directed him to answer the question, Mr. Graves.

12   Very clearly you said go ahead and direct -- and

13   directed him and he refused to repeatedly.

14         MR. GRAVES:  Well, here's the thing.

15         MR. FITZPATRICK:  That's marked in the

16   record.

17         MR. GRAVES:  I'm not under oath.  I'm not

18   answering questions --

19         MR. FITZPATRICK:  I'm going to go forward

20   with the deposition.

21         MR. GRAVES:  -- so you don't direct me to do

22   anything.

1          MR. FITZPATRICK:  I'm going to go forward

2    with the deposition.

3          MR. GRAVES:  You -- that's fine, but I'm --

4    we'll just be where we are.

5          Go ahead.  Ask your questions.  We're giving

6    you a lot of leeway here and you continue to --

7          MR. FITZPATRICK:  But I'm not the one who is

8    obstructing --

9          MR. GRAVES:  -- go beyond the scope of what

10    you're allowed to --

11          MR. FITZPATRICK:  I'm not the one who's

12    obstructing the administration of justice.

13          THE COURT REPORTER:  Counsel, I apologize.

14    You're speaking over one another.

15          MR. FITZPATRICK:  I'm trying to get to the

16    truth --

17          THE COURT REPORTER:  One at a time.

18          MR. FITZPATRICK:  -- of what happened.  I'm

19    trying to --

20          MR. VOYLES:  Yeah, I'll weigh in here as

21    another officer of the court.

22          Chris, you're completely out of line.

1          MR. GRAVES:  I'm not under oath.  I'm not

2     answering questions.

3          MR. FITZPATRICK:  I'm going to go forward

4     with the deposition.

5          MR. GRAVES:  So you don't direct me to do

6     anything.

7          MR. FITZPATRICK:  I'm going to go forward

8     with the deposition.

9          MR. GRAVES:  You -- that's fine, but I'm --

10    we'll just be where we are.  Go ahead.  Ask your

11    questions.  We're given you a lot of leeway here and

12    you continue to --

13         MR. FITZPATRICK:  But I'm not the one who is

14    obstructing --

15         MR. GRAVES:  -- go beyond the scope of what

16    you're allowed to --

17         MR. FITZPATRICK:  I'm not the one who's

18    obstructing the administration of justice.

19         THE COURT REPORTER:  Counsel, I apologize.

20    You're speaking over one another.

21         MR. FITZPATRICK:  I'm trying to get to the

22    truth --

1          No, no.  Shawn --

2          MR. VOYLES:  Terrence has --

3          MR. FITZPATRICK:  Shawn --

4          MR. VOYLES:  Don't interrupt me.

5          MR. FITZPATRICK:  I'm not going to listen to

6    this.

7          MR. VOYLES:  Terrence has done nothing

8    improper in this deposition.

9          MR. FITZPATRICK:  I have a right to conduct

10   a deposition.

11         MR. VOYLES:  You have been out of control --

12         MR. FITZPATRICK:  You guys are --

13         MR. VOYLES:  -- unprofessional --

14         MR. FITZPATRICK:  You guys are

15   obstructing --

16         MR. VOYLES:  -- and beyond the rules of

17   discovery.

18         MR. FITZPATRICK:  All right.

19         MR. VOYLES:  And this is an embarrassment of

20   a deposition.

21         MR. FITZPATRICK:  All right.  No, it --

22   let's just go.

1          MR. VOYLES:  Please continue.

2          MR. FITZPATRICK:  Let's just go.  Let's just

3    finish this deposition.

4          Mr. Voyles, I think it is an embarrassment

5    of the deposition when you have an attorney who has

6    direct knowledge of the fact that -- of an

7    investigation of doctoring logs.  He has direct

8    knowledge of that and he's directing a witness who

9    is both the president of this company -- I think

10   that's an embarrassment.  I think it shocks the

11   conscience of any -- anyone.  Any attorney.  Any

12   court of law.

13         MR. VOYLES:  Terrence has done nothing of

14   the sort.

15         MR. FITZPATRICK: All right.  Mr. --

16         MR. VOYLES:  At all.  And if you want to

17   bring that type of motion on, please do.  I will

18   be --

19         MR. FITZPATRICK:  We will.

20         MR. VOYLES:  -- happy to weigh in.

21         MR. FITZPATRICK:  But please do not obstruct

22   this deposition, Mr. Voyles.  Please do not.  It's

1  not your witness.

2  　　　MR. VOYLES:  Your comments, Chris, are a

3  joke.

4  　　　MR. FITZPATRICK:  No.  You can use the

5  word --

6  　　　MR. VOYLES:  Just ask your questions that

7  are after facts and --

8  　　　MR. FITZPATRICK:  You can use the words that

9  are inappropriate --

10 　　　MR. VOYLES:  -- stop pontificating and

11 speech making.

12 　　　MR. FITZPATRICK:  You can use words like

13 inappropriate and like joke.  I am not going to

14 engage in that type of vernacular.  You can do that

15 as an officer of the court.  Use that type of --

16 　　　MR. VOYLES:  Okay, Chris.

17 　　　MR. FITZPATRICK:  But getting to the truth

18 of the matter is very important.

19 BY MR. FITZPATRICK:

20 　Q  Sir, do you have any knowledge at all

21 regarding a police investigation in which there was

22 allegations regarding your company -- your company

1    doctoring and falsifying records?

2          MR. GRAVES:  Objection.  Object to the form.

3    Outside of the scope of the notice.  Since it is

4    outside of the scope of the notice, I'm directing

5    this witness not to answer the question.

6          MR. FITZPATRICK:  But that was the same

7    question I asked before and you directed him to

8    answer the question.

9          MR. GRAVES:  Well, I now -- I now believe

10   it's a question that shouldn't be answered so let's

11   move on to the next question.

12         MR. FITZPATRICK:  Okay.  Is he invoking his

13   Fifth Amendment right for self-incrimination?

14         MR. GRAVES:  Well, there is no Fifth

15   Amendment involved here because there's no current

16   criminal investigation against Mr. Voveris so I'm

17   not quite sure why you're asking that, but I'm

18   instructing him not to answer because it is outside

19   of the scope of the notice that was served in this

20   instance.

21         MR. FITZPATRICK:  Are you directing him not

22   to --

1        MR. GRAVES:  Next question.

2        MR. FITZPATRICK:  Is he taking the Fifth

3  Amendment because it could potentially incriminate

4  him?

5        MR. GRAVES:  Next question.  I'm not --

6        MR. FITZPATRICK:  So are you --

7        MR. GRAVES:  -- instructing him to take the

8  Fifth Amendment at all.  I mean, that's his right to

9  express if he wants to --

10        MR. FITZPATRICK:  So are you --

11        MR. GRAVES:  -- but I'm instructing him not

12  to answer the question because it is outside of the

13  scope of the notice that was served and he had gone

14  over this more than once.  I've given you leeway and

15  you continue to ask these questions and to turn the

16  deposition into something that you didn't notice.

17  If you wanted to notice it that way, you could have.

18        MR. FITZPATRICK:  So --

19        MR. GRAVES:  Well, so let's move on.  Next

20  question.

21  BY MR. FITZPATRICK:

22     Q  Sir, when did you find out about this

1    incident?

2         MR. GRAVES:  Do you mean him personally or

3    AV Leasing?

4         MR. FITZPATRICK:  Him personally.  No, him.

5    He said he's the president of AV Leasing.

6    BY MR. FITZPATRICK:

7         Q  So when did you find out about this --

8         MR. GRAVES:  (Indiscernible).

9    BY MR. FITZPATRICK:

10        Q  When did you find out about this --

11        A  Are you asking me or are you asking --

12        Q  I'm asking you, sir.

13        A  -- my counsel?

14        Q  I'm asking you.  When did you find out about

15   this?

16        A  I told you.  The claims department from

17   Triton Logistics told me that.

18        Q  Okay.  And when did they tell you that?

19        A  When you said or --

20        Q  When?

21        A  On the same day.

22        Q  Okay.  And what investigation did you do?

1  Did you call anybody?

2      A  No.

3      Q  Okay.  Why not?

4      A  Who do I need to call?

5      Q  Well, you're the president of AV Leasing.

6  You're the owner of this truck.

7      A  Yeah.

8      Q  Okay.  Did you call anybody about this?  Did

9  you call the police department to find out?  Did you

10 call the driver, Mr. Cramer, to find out what

11 happened?

12     A  Mr. Christopher --

13     Q  My name is Mr. FitzPatrick, it's not

14 Mr. Christopher.

15     A  Oh, I'm sorry.  I'm sorry.  I'm sorry.  My

16 bad.

17         Patrick --

18     Q  It's FitzPatrick.  FitzPatrick, sir.

19     A  Yeah.  Can you repeat the question again?

20 You keep cutting off.  It's difficult for me to

21 answer when you keep --

22         MR. FITZPATRICK:  Will the court reporter

1    please read back the question so we have the exact

2    question that I had?

3         THE WITNESS:  So what is the question?

4         THE COURT REPORTER:  Please stand by.

5         MR. FITZPATRICK:  The court reporter is

6    going to repeat it back.  Is going to play it back.

7         THE WITNESS:  Okay.

8         MR. FITZPATRICK:  Is the court reporter

9    there?

10        THE COURT REPORTER:  I'm here.  Please stand

11   by.

12        (The Reporter read the record as follows:

13   Did you call the police department to find out?

14   Did you call the driver, Mr. Cramer, to find out

15   what happened?)

16        THE WITNESS:  No.

17   BY MR. FITZPATRICK:

18      Q  Why not?

19      A  Because I'm the owner of AV Leasing.

20      Q  Okay.  But you're also the president of

21   Triton, correct?

22      A  I'm representing AV Leasing.

1      Q  No, but -- that's not my question.

2          Sir, when this accident happened, you were

3  also the president of Triton, correct?

4          MR. GRAVES:  Same objection as to outside of

5  the scope.  And I'm going to instruct him not to

6  answer the question because it's outside of the

7  scope and we've done this more than once.

8          MR. FITZPATRICK:  He's already testified he

9  was the president.

10          MR. GRAVES:  Well, that's fine.  So why are

11  you asking questions over again?

12          MR. FITZPATRICK:  I'm asking him -- I'm

13  asking --

14          MR. GRAVES:  Well, and I'll add --

15          MR. FITZPATRICK:  Well, as the president of

16  Triton, did he ever make --

17          MR. GRAVES:  -- asked and answered.

18          MR. FITZPATRICK:  Did he ever conduct any

19  investigation or call somebody?

20          MR. GRAVES:  Same objection.  Also asked and

21  answered.

22          MR. FITZPATRICK:  Because these questions

1    are going to be coming right back when he's coming

2    back again.  So we'll be back again.

3         MR. GRAVES:  That's fine.  If you get

4    another shot at it, that's fine.

5         Asked and answered.  Next question.

6         MR. FITZPATRICK:  When would I get another

7    shot if Triton -- he's the president of Triton so --

8         MR. GRAVES:  I'm not -- I'm not getting into

9    that on the record here.

10        MR. FITZPATRICK:  All right.

11        MR. GRAVES:  But just -- I'm making my

12   objection.

13        MR. FITZPATRICK:  I'll tell you what we're

14   going to do.

15        MR. GRAVES:  Move on.

16        MR. FITZPATRICK:  We're going to get through

17   this deposition.  I'll continue to ask him

18   questions.  Okay?

19   BY MR. FITZPATRICK:

20       Q  What did you find out as the president of

21   AV Leasing regarding this incident?  What specifics

22   did you find out?

1      A   You mean what details did I find out or

2   when --

3      Q   What did you find out?

4      A   I mean, I found out about an accident.

5      Q   Okay.  Were you aware that Mr. Cramer has no

6   recollection -- did he ever inform you or did you

7   ever find out, read his deposition transcript, that

8   he had no recollection as to how he, only seconds

9   before, crashed into the back of this bus killing

10  three people?  He has no -- he doesn't know how it

11  happened.  Are you aware of that?

12         MR. GRAVES:  Object to form.

13         THE WITNESS:  AV Leasing has nothing to do

14  with accident at all.

15  BY MR. FITZPATRICK:

16     Q   Okay.  Who employed Mr. Cramer?

17     A   Not AV Leasing.

18     Q   Okay.  Did you ever meet Mr. Cramer?  Have

19  you met him in person?  Spoken to him?

20     A   No.

21     Q   Okay.  How many trucks do you lease to

22  Triton as the president of AV Leasing?

1      A   You mean today?

2      Q   Back in -- back in -- this happened in 2022.

3  So back in 2022, how many trucks did you lease to

4  AV -- to Triton?  How many -- and how many two years

5  later in 2024 do you currently lease to them?

6          MR. GRAVES:  Objection.  Compound question.

7  Let's do it one at a time.  Ask him the first

8  question and then he can answer it --

9          MR. FITZPATRICK:  I'll ask the first

10  question --

11          MR. GRAVES:  -- and then you can ask him the

12  second question.

13  BY MR. FITZPATRICK:

14      Q   Back in 2022, how many trucks did you lease

15  to --

16      A   I wouldn't be able to tell you --

17      Q   -- Triton -- Triton Trucking Company?  How

18  many trucks did you lease?

19      A   I wouldn't be able to tell you exact number.

20  Otherwise I'm going to lie, you know?  So I don't

21  remember.

22      Q   Okay.  Are we talking hundreds?  Are we

1    talking thousands?  Or are we just talking 50?  How

2    many trucks?

3        A   Hundreds.

4        Q   Hundreds of trucks.  Okay.  And who

5    manufactures those trucks?

6        A   All the trucks and trailers AV Leasing own,

7    it's Volvos or Freightliners.

8        Q   Okay.  So AV Leasing -- how do you -- what

9    do you do?  Do you -- does AV Leasing buy the

10   trucks?  How does that --

11       A   Yes.

12       Q   How does that -- you buy the trucks?

13       A   Yes.  I mean, AV Leasing buys trucks.  Not

14   me.  AV Leasing.

15       Q   Okay.  AV Leasing buys trucks, but you're

16   the president and you said you're the only owner,

17   you're the only -- the only investor.  There's

18   nobody else, correct?

19       A   Yes.  Yes, sir.

20       Q   So how many trucks did you buy in 2022?

21       MR. GRAVES:  Objection.  Outside of the

22   scope of the notice.

1          THE WITNESS:  I wouldn't remember.  I mean,

2     we're buying the trucks every year.  I don't

3     remember.  It depends on the year.  One year we buy

4     less, one year we buy more.  But you know,

5     approximately I would say maybe 15.

6     BY MR. FITZPATRICK:

7          Q  How long have you been involved in the

8     leasing and trucking business?  Were you involved in

9     some other business before this?

10          A  I have been in trucking business since 2014.

11          Q  '14?  So approximately nine years to

12     ten years?

13          A  2015 or something like that.

14          Q  All right.

15          A  Since I came to America I went into trucking

16     right away.

17          Q  Were you involved in the trucking business

18     in Lithuania?

19          A  No.

20          Q  Did you ever transfer any assets from

21     Lithuania to the United States in AV Leasing -- with

22     respect --

1      A   No.

2      Q   -- to AV Leasing?

3          MR. GRAVES:   Object to the -- objection.

4    Outside the scope of the notice and also object to

5    form.   I'm not quite sure exactly what you're asking

6    him.   Your question doesn't make sense as currently

7    worded.

8          MR. FITZPATRICK:   Well, I'm asking him

9    whether he's transferred assets --

10         Well, let me ask the question now.

11   BY MR. FITZPATRICK:

12     Q   Today do you transfer assets from Lithuania

13   to the United States with regard to this trucking --

14   this AV Leasing company?

15         MR. GRAVES:   Same objection as to outside of

16   the scope of the notice.

17         MR. FITZPATRICK:   I'm waiting for the

18   answer.

19         THE WITNESS:   Can I answer, Terrence?

20         MR. GRAVES:   Yes.   I'll instruct you --

21   well, let's do this.   You can answer, but I'll move

22   to strike whatever answer you give.

1          THE WITNESS:  Yeah.  Yeah.

2          No.  My answer is no.

3    BY MR. FITZPATRICK:

4      Q  You've never transferred any assets at

5    all -- wired any assets today or over the last ten

6    years from Lithuania to the United States regarding

7    this -- regarding this company, AV Leasing?

8          MR. GRAVES:  Same objection.  Asked and

9    answered.

10          THE WITNESS:  No.

11    BY MR. FITZPATRICK:

12      Q  Have you transferred any assets over the

13    last ten years from Lithuania or any other country

14    to Triton Trucking Company?

15          MR. GRAVES:  Objection.  Outside of the

16    scope of the notice.  I'll move to strike any

17    answer.

18          You can answer the question.

19          THE WITNESS:  No.

20    BY MR. FITZPATRICK:

21      Q  Okay.  When you came to the United States,

22    how did you invest?  Where did you get the money to

1    invest when you came to the United States in this

2    trucking company with respect to AV Leasing and this

3    trucking company Triton?  Where did you get the

4    money, sir?

5         MR. GRAVES:  Objection.  Outside of the

6    scope of the notice.  I'll move to strike any

7    answer.

8         You can answer.

9         THE WITNESS:  I came and worked for the

10   company, you know, and saved money.

11   BY MR. FITZPATRICK:

12    Q  Okay.  You came to the -- you came to this

13   country in 2014.  And how long did you work for the

14   company before you invested in the company?  Is that

15   about nine and a half years ago, ten years ago you

16   came here?

17    A  Yeah.  I came -- like I said, 2014 and

18   worked for the company maybe a year, maybe a year

19   and a half or so.  Something like that.

20    Q  Okay.  And the investment -- your

21   investment --

22         MR. GRAVES:  Chris, before you ask your next

1   question, I'm going to object.  I didn't get a

2   chance to object before he answered.  I didn't want

3   to interrupt him.

4          Object to the -- outside of the scope of the

5   notice.  I move to strike any answer.

6          Sorry.  I didn't mean to interrupt you.  I

7   just needed to note the objection.  Go ahead and ask

8   your question.

9          THE WITNESS:  Sorry, I just forgot.  What is

10  the question again?  I just --

11         MR. FITZPATRICK:  I'll let the court

12  reporter read it back.

13         THE COURT REPORTER:  Stand by, please.

14         (The Reporter read the record as follows:

15  How long did you work for the company before you

16  invested in the company?)

17         THE WITNESS:  Yeah, I told you.  One year or

18  one year and a half.  Something like that.

19  BY MR. FITZPATRICK:

20     Q  And how much money did you invest into the

21  company?

22     A  When?

1    Q  How much money did you invest into the

2  company?

3        MR. GRAVES:  Objection.  Outside of the

4  scope --

5        MR. FITZPATRICK:  Well, let me ask you --

6        MR. GRAVES:  -- of the notice.

7  BY MR. FITZPATRICK:

8    Q  Let me ask you this and break it down.  Did

9  you invest first into Triton or did you invest first

10  into AV Leasing?

11        MR. GRAVES:  Objection.  Outside of the

12  scope of the notice.  I move to strike any answer.

13        You can answer.

14        THE WITNESS:  I can only answer questions

15  for AV Leasing.

16  BY MR. FITZPATRICK:

17    Q  So when did you -- I'm going to ask you that

18  question again.

19        When did you first invest in Triton --

20        Well, let me ask you this:  When did you

21  first invest in AV Leasing?

22    A  Like I said, maybe five years ago, but I

1    need to look at my books.  I don't remember to be

2    honest, top of my head.  I don't want to make the

3    number and then, you know --

4        Q  Where did you -- so --

5            MR. GRAVES:  Same objection.

6            MR. FITZPATRICK:  So I assume --

7            MR. GRAVES:  Move to strike.

8    BY MR. FITZPATRICK:

9        Q  -- with five years ago, that five years

10   prior to that you invested in Triton; is that

11   correct?  Or four -- I'm sorry, four years prior to

12   that you invested in Triton?

13           MR. GRAVES:  Objection.  Outside of the

14   scope of the notice.  Since it's specifically asked

15   to Triton, I'm going to instruct him not to answer.

16   BY MR. FITZPATRICK:

17       Q  Okay.  So it's your testimony that within

18   one year you generated enough money to buy a

19   trucking company and then four years later you

20   bought a leasing company; is that correct, sir?

21           MR. GRAVES:  Objection.  Outside of the

22   scope of the notice.  It's also mischaracterizing

1    his previous testimony.  Move to strike the answer

2    and --

3         MR. FITZPATRICK:  Well, it's not

4    mischaracterizing.  He said --

5         MR. GRAVES:  Wait a minute, Chris.

6         Since it involves Triton specifically in the

7    question as I understand it, I'm going to instruct

8    him not to answer with regards to Triton, but he can

9    provide an answer that I will move to strike as to

10   AV Leasing.

11        Go ahead and answer.

12        MR. FITZPATRICK:  Well, he did -- he did

13   provide an answer because he said that within one

14   year he invested.  So -- and then he testified --

15        MR. GRAVES:  I'll --

16        MR. FITZPATRICK:  And then he testified four

17   years later he invested in -- he said invested in

18   the trucking company and then four years later he

19   said he invested into AV Leasing.  But that's okay.

20   BY MR. FITZPATRICK:

21       Q  Sir, did you have any -- did you have any

22   training on safety regulations at all as president

1    of AV Leasing?

2          MR. GRAVES:  Objection.  Outside of the

3    scope of the notice.  You can answer the question,

4    but I'll move to strike any answer that you give.

5          THE WITNESS:  No.

6    BY MR. FITZPATRICK:

7       Q  Did you have any training regarding training

8    your truck drivers regarding --

9          Well, let me ask you this:  You testified

10   that you were a truck driver, correct, for about a

11   year to two years?  From 2014 --

12         MR. GRAVES:  Objection.  Objection.  That's

13   mischaracterizing his testimony --

14         MR. FITZPATRICK:  Well, let me -- let me

15   rephrase it so he understands.

16   BY MR. FITZPATRICK:

17      Q  Am I correct that you --

18      A  What did you say?  If I was a truck driver?

19      Q  You were working --

20         Okay.  Not truck driver.  Let's just make

21   sure that we get the right testimony.

22         Is your testimony that you were working for

1    the year -- for a year when you came here?  What

2    were you working as?

3        A  I was --

4        Q  A truck driver or something else?

5        A  No, I was working in the office.

6        Q  In the office.  Okay.  And in the office did

7    you have any training regarding the importance of

8    safety regulations and the importance of drivers not

9    to be on the road for a certain amount of time?

10        A  Yes, sir.

11        MR. GRAVES:  Okay.  And --

12    BY MR. FITZPATRICK:

13        Q  And what was that training?

14        MR. GRAVES:  Wait one minute.

15    BY MR. FITZPATRICK:

16        Q  What was that training, sir?

17        MR. GRAVES:  Before you go any further, let

18    me object to the question.  He answered quickly

19    before I got a chance to object.

20        MR. FITZPATRICK:  He opened the door.  He

21    said yes, he did.

22        MR. GRAVES:  Yeah, I understand that.  I

1    just need to note my objection.

2          I object to the -- to it being outside of

3    the scope of the notice.  Move to strike any answer

4    for that reason.  He's answered.  Next question.

5          MR. FITZPATRICK:  All right.

6    BY MR. FITZPATRICK:

7       Q  And what was that training, sir?

8          MR. GRAVES:  Objection.

9    BY MR. FITZPATRICK:

10      Q  What did it involve?  What did that --

11         MR. GRAVES:  Objection.

12   BY MR. FITZPATRICK:

13      Q  What did that involve?  The training that

14   you knew -- that you were aware of regarding truck

15   drivers only being on the road for a certain amount

16   of time?

17         MR. GRAVES:  Objection.  Outside of the

18   scope of the notice.  I move to strike any answer.

19   Also, the question is unclear as to whether you're

20   asking about AV Leasing or Triton so I'll object to

21   the form.

22         You can answer the question, Andrew.

1    BY MR. FITZPATRICK:

2        Q  You can answer.

3        A  I mean, just basic about the trucking.  I

4    had a training about safety, you know, trucking, and

5    you know, just in general.

6        Q  And did you --

7        A  I didn't work in safety so --

8        Q  What -- do you have manuals?  Did you have

9    training on that?  What did you -- what did you

10   receive, sir?

11           MR. GRAVES:  Objection.  Outside of the

12   scope of the notice.

13           You can answer.

14           THE WITNESS:  Manuals and talking to safety

15   managers, to (Indiscernible) company.  A lot of

16   trainings, you know?  In general for trucking, for

17   safety, for everything.  But I wasn't working in

18   safety so --

19   BY MR. FITZPATRICK:

20       Q  Okay.  So what was -- what did you learn

21   about safety regulations regarding truck drivers not

22   being on the road for a certain amount of time?

1        MR. GRAVES:  Objection.  Outside of the

2    scope of the notice.  Since it's outside of the

3    scope of the notice, I move to strike any answer.

4        You can answer the question.

5        THE WITNESS:  Well, like I said, I wasn't

6    working in safety so I don't really understand your

7    question.  What kind of hours --

8    BY MR. FITZPATRICK:

9        Q  Well, you said you --

10       A  I said --

11       Q  You said that you --

12       A  I said I had the general information about

13   the trucking.  About the safety.  How a truck driver

14   needs to drive, you know?  Like -- you know, like

15   regular -- like, regular.  Like, seat belts, you

16   know?  How to do PTA and stuff like that.  So it's

17   just the regular stuff, you know?

18       Q  What about hours, sir?

19       A  No, I wasn't learning --

20       Q  You weren't aware of any restrictions at all

21   regarding how long a driver could be on the road?

22       MR. GRAVES:  Once again, I'm going to object

1  to the form and --

2          MR. FITZPATRICK:  He already answered no

3  so --

4          MR. GRAVES:  All right.  Well --

5          MR. FITZPATRICK:  -- I'm asking him --

6          MR. GRAVES:  Wait a minute.

7          MR. FITZPATRICK:  I'll ask him again.

8          MR. GRAVES:  And plus, right now we're

9  getting way outside of the scope of your notice.

10          MR. FITZPATRICK:  All right.

11          MR. GRAVES:  Also, the way you're asking the

12  questions, it's unclear whether you're asking about

13  whether Triton had this knowledge or whether AV

14  Leasing had this knowledge.  And I think in order

15  for it to be fair, you've got to specify who you're

16  asking about and so I'm objecting to the form.

17          I'm also objecting as it's outside of the

18  scope of the notice.  And he can answer the question

19  certainly, but I will move to strike any answer to

20  the degree it's outside of the scope of the notice.

21          THE WITNESS:  Mr. FitzPatrick, I never had

22  any training for AV Leasing for safety.  I'm talking

1   about when I came to America for first job.  I had

2   some general information how to do trucking.  I work

3   for different company.  So for AV Leasing, I didn't

4   get any trainings on stuff like that.

5   BY MR. FITZPATRICK:

6       Q   How many hours did you permit your truck

7   drivers to work?

8           MR. GRAVES:  Objection.

9           THE WITNESS:  I'm sorry?

10          MR. GRAVES:  Objection.  Outside of the

11  scope of the notice.  Object to form.  I will move

12  to strike the answer.  He's already testified that

13  he had no employees for AV Leasing.  That would

14  include truck drivers.

15          MR. FITZPATRICK:  I'm asking about Triton

16  now.

17          MR. GRAVES:  Well, I'll certainly object to

18  it on that basis.  That's also outside of the scope

19  of the notice and I'll instruct him to not answer

20  the question as it specifically applies to Triton.

21  BY MR. FITZPATRICK:

22      Q   How many employees, sir, in Triton --

1  withdrawn.

2        As the president of the company, of Triton,

3  did you have a certain -- regulations and -- rules

4  and regulations that are documented in the handbook

5  regarding how long a truck driver could be on the

6  road for?

7     A  The deposition --

8        MR. GRAVES:  Wait a minute, Andrew.

9        THE WITNESS:  -- is for AV Leasing.

10        MR. GRAVES:  Wait a minute, Andrew.

11        MR. FITZPATRICK:  You're continuing to

12  direct him not to answer, Counsel.  I just want to

13  be clear.

14        MR. GRAVES:  Yeah.  Objection.  Outside of

15  the scope of the notice.  The question was

16  specifically about Triton.  I'll instruct him not to

17  answer on that basis.  Next question.

18        MR. FITZPATRICK:  Okay.

19  BY MR. FITZPATRICK:

20     Q  Sir, how many employees today do you have

21  for Triton?

22        MR. GRAVES:  Objection.  Outside of the

1    scope of the notice.  The question is specifically

2    about Triton.  I'll ask him -- I'll instruct him not

3    to answer on that basis.  Next question.

4          MR. FITZPATRICK:  Okay.

5    BY MR. FITZPATRICK:

6      Q  Sir, are you aware of the fact -- withdrawn.

7          Have you been deposed in any other action so

8    far, sir?

9          MR. GRAVES:  Object to the form.  I'll also

10   object as it's outside of the scope of the notice.

11   And do you mean in his personal capacity or in his

12   capacity as a corporate representation for

13   AV Leasing?

14         MR. FITZPATRICK:  Either.  Either/or.

15         MR. GRAVES:  Okay.  You can answer -- you

16   can answer the question.

17         THE WITNESS:  I do not understand your

18   question, to be honest.

19   BY MR. FITZPATRICK:

20     Q  Okay.  Have you given a deposition testimony

21   regarding the three people that were killed and the

22   other 22 people that were severely injured?

1          MR. GRAVES:  Same objection.

2          You can answer the question.

3          THE WITNESS:  I never had a deposition in my

4   life, ever.

5   BY MR. FITZPATRICK:

6      Q  This is your first deposition?  Okay.

7      A  Yes, sir.

8      Q  All right.  Have you been sued -- has your

9   company been sued, AV Leasing, with respect to any

10  other case or has a claim been made against you

11  regarding this incident?  Against the company,

12  AV Leasing?

13         MR. GRAVES:  Object to form.  I'll also

14  object as it's outside of the scope of the notice.

15         You can answer the question.

16         THE WITNESS:  Yes.

17  BY MR. FITZPATRICK:

18     Q  How many lawsuits have been filed against

19  you, sir?  Against AV Leasing?

20         MR. GRAVES:  Same objection.

21         You can answer the question.

22         THE WITNESS:  I think Mr. Terrence knows

1    better than me to be honest.  I don't want to make a

2    bad number.  I'm sorry.  You know, it's nothing for

3    me to hide, but I don't remember --

4    BY MR. FITZPATRICK:

5        Q   You don't remember how many lawsuits that

6    you've been sued in --

7        A   Yeah.

8        Q   -- in this company?

9        A   I don't remember, but it's quite few.

10       Q   Is it more than five?

11           MR. GRAVES:  Objection.  Same objection.

12   Outside of the scope of the notice.

13           You can answer.

14           THE WITNESS:  Yes, I believe it's more than

15   five.

16   BY MR. FITZPATRICK:

17       Q   And where are those lawsuits venued, sir?

18       A   I don't know.

19           MR. GRAVES:  Same objection.  Outside of the

20   scope of the notice.

21           You can answer.

22           THE WITNESS:  I don't know.

1  BY MR. FITZPATRICK:

2      Q  You don't know.  Right.

3          After this incident, did you ever contact

4  the families at all to express your sympathies on

5  behalf of your company?  On behalf of --

6          MR. GRAVES:  Objection.

7  BY MR. FITZPATRICK:

8      Q  On behalf of AV Leasing?

9          MR. GRAVES:  Objection.  Outside of the

10  scope of the notice.

11          You can answer.

12          THE WITNESS:  No.

13  BY MR. FITZPATRICK:

14      Q  Why not?

15          MR. GRAVES:  Same objection.

16          You can answer.

17          THE WITNESS:  I don't have any contact

18  details.  Nothing.  So I don't know.

19  BY MR. FITZPATRICK:

20      Q  You don't have any contact information?  Is

21  that what you --

22          But you could have easily gotten that

1  contact information from your attorneys, from the --

2  from third parties.  You could have gotten that

3  contact?

4      A   I left --

5          MR. GRAVES:  Wait a minute, Andrew.

6          Objection.  Outside of the scope of the

7  notice.

8          Any objection that I make as to outside of

9  the scope of the notice will also come with the

10 caveat that we'll move to strike that answer, but

11 you can answer the question.

12         THE WITNESS:  I left everything to my

13 attorneys to get in touch so --

14 BY MR. FITZPATRICK:

15     Q   To get in touch to offer your sympathies and

16 condolences on behalf of you and the company?

17     A   Sorry?

18         MR. GRAVES:  Objection.  Outside of the

19 scope of the notice.

20 BY MR. FITZPATRICK:

21     Q   You left it in the hands of your attorneys

22 to get in contact with the families to offer your

1  condolences and sympathies?  Is that what you said?

2      MR. GRAVES:  Objection.  Outside of the

3  scope of the notice.  Also relevance.  We'll move to

4  strike any answer that -- because it's outside of

5  the scope of the notice.

6      You can answer.

7      THE WITNESS:  No comment.  I don't know what

8  to comment.

9  BY MR. FITZPATRICK:

10     Q  Okay.  You don't remember --

11     A  No comment.

12     Q  -- or no comment?

13     A  No comment.

14     Q  Okay.

15     A  I don't know what to comment.

16     Q  Well, you said you left it in the hands of

17 your attorneys.  Did you instruct your attorneys to

18 get in touch with them to offer your sympathies for

19 the company?

20     MR. GRAVES:  Objection.  Outside of the

21 scope of the notice.  Invades the attorney-client

22 privilege.  Also relevance.  We'll move to strike

1   any answer.

2          You can answer.

3          THE WITNESS:  Well, why would I need to

4   contact?  You call --

5   BY MR. FITZPATRICK:

6      Q  I'm not -- you're not asking --

7      A  -- AV Leasing --

8      Q  I'm asking you the questions, sir.  You

9   know?

10     A  So --

11     Q  I'll ask you this question:  Did you offer

12  at any time to pay for the funeral expenses of the

13  three --

14     A  Oh, no.  No.

15     Q  Why not?

16         MR. GRAVES:  Objection.  Outside of the

17  scope of the notice.  Also relevance.  We'll move to

18  strike any answer.  His answer.

19  BY MR. FITZPATRICK:

20     Q  Have you offered to pay for the medical

21  expenses at all for any of the -- of the people that

22  were injured?

1          MR. GRAVES:  Objection.

2          THE WITNESS:  No.

3          MR. GRAVES:  Outside of the scope of the

4    notice.  Also relevance.  We'll move to strike any

5    answer.

6          You can answer.

7          THE WITNESS:  No.

8    BY MR. FITZPATRICK:

9      Q  Did the Virginia -- I think I asked this

10   question, but I want to ask it again.

11         Did the Virginia State Police ever contact

12   anyone at AV Leasing or any -- or anyone at Triton

13   regarding this incident?

14         MR. GRAVES:  Objection.  Outside of the

15   scope of the notice.  We'll move to strike any

16   answer on that basis and I'm instructing him to

17   answer for AV Leasing only.

18         You can answer.

19         THE WITNESS:  Police -- haven't been contact

20   by police.

21         MR. GRAVES:  Also asked and answered, but

22   he's answered.

1    BY MR. FITZPATRICK:

2        Q   But Triton was, correct, sir?

3            MR. GRAVES:  Objection.  Outside of the

4    scope of the notice.  Since you're asking

5    specifically about Triton, we're going to instruct

6    him not to answer your question.  Next question.

7    BY MR. FITZPATRICK:

8        Q   Are there banking transactions at all, wires

9    at all between AV Leasing and Triton?

10           MR. GRAVES:  Objection.

11   BY MR. FITZPATRICK:

12       Q   Regarding --

13           MR. GRAVES:  Go ahead.

14   BY MR. FITZPATRICK:

15       Q   Was there a wiring or transfers of money

16   between Triton and AV Leasing?  And I'm focusing on

17   what AV Leasing received or transferred as a result

18   of this truck that was involved in this particular

19   incident.

20           MR. GRAVES:  Objection.  Outside of the

21   scope of the notice.  Also, I'll object to the form

22   of the question.  I'm not clear on exactly what

1    you're answering -- or asking.  I'm sorry.  I will

2    instruct the witness to answer, but I'll move to

3    strike any answer that he gives since it's outside

4    of the scope of the notice.

5         And Andrew, to the extent you know, you can

6    answer the question.

7         THE WITNESS:  I don't really understand the

8    question.  What kind of transactions?

9    BY MR. FITZPATRICK:

10       Q  Well, with respect to this truck, it was --

11   it was leased by your company to Triton, correct?

12       A  Yes.

13       Q  Okay.  So I'm asking you, when that occurs,

14   what bank do you use regarding the transactions?

15        MR. GRAVES:  Objection.  Outside of the

16   scope of the notice.  Since it's outside of the

17   scope of the notice, I move to strike any answer,

18   but you can answer the question since it's fairly

19   specific to AV Leasing.

20        THE WITNESS:  Chase Bank.

21   BY MR. FITZPATRICK:

22       Q  I'm sorry, sir?  Chase?

1      A   Chase Bank.

2      Q   Chase Bank?  And do you have copies of not

3  only the lease and the contract agreement, but you

4  have contracts [sic] of the checks or wire transfers

5  what were made with respect to this lease?

6          MR. GRAVES:  Objection.  It's outside of the

7  scope of the notice.  I'll move to strike any

8  answer, but you can answer the question.

9          THE WITNESS:  Yes.

10  BY MR. FITZPATRICK:

11     Q   Okay.  You have those?  Can -- we're going

12  to ask for a production of those and we're going to

13  subpoena them for trial.  Can you turn those over to

14  your attorney, please?  Okay?

15          How many pages is the lease, sir?  Do you

16  have a copy of it in front of you right now?

17     A   No, I don't have it with me.

18     Q   Okay.  Where is that lease, sir?

19     A   What do you mean?

20     Q   Well, I'm not going to ask you any

21  communications you had with your attorney or

22  anything, but have you given that lease to your

1   attorney and the contract?

2       A   No.

3       Q   Why not?

4       A   He never request one.

5       Q   Okay.  So this was a lease -- it was a

6   contract between Triton, correct?  What is that

7   lease --

8       A   I'm sorry?

9       Q   What are the terms of that contract, sir?

10      A   I need to have a look at the lease.  I don't

11  have the lease with me.

12      Q   Well, where is it?  Is it in your records?

13      A   Yeah, it's in the records.  Yeah.

14      Q   When was that lease entered into?

15      A   Sorry?

16      Q   When was the lease entered into?

17      A   What do you mean what is the lease?

18      Q   Well, there was a -- there was a contract.

19  When was the date -- what was the date that contract

20  was signed?  The lease was signed?

21      A   I don't know.  I'll have to have a look.  I

22  don't remember.  If you would like --

1      Q  And you signed -- you signed it -- you must

2  have signed it because you're the only person for

3  AV Leasing.

4      A  Yes.

5      Q  Okay.  Are AV Leasing's assets separate and

6  apart from Triton?

7          MR. GRAVES:  Objection.  Outside of the

8  scope of the notice.  I will instruct him to answer,

9  but I'll move to strike any answer that he gives.

10         THE WITNESS:  What are you asking for

11  AV Leasing?  I don't really understand.  What is

12  your question for AV Leasing?

13         MR. FITZPATRICK:  I'll have the court

14  reporter read it back.

15         THE COURT REPORTER:  Stand by.

16         (The Reporter read the record as follows:

17  Are AV Leasing's assets separate and apart from

18  Triton?)

19         THE WITNESS:  I mean, yes.

20  BY MR. FITZPATRICK:

21     Q  Okay.  Have you ever intermixed accounts at

22  all between -- with transactions and accounts and

1    assets between AV Leasing and Triton?

2            MR. GRAVES:  Before you answer, objection.

3    Outside of the scope of the notice.  I'll move to

4    strike any answer.

5            You can answer.

6            THE WITNESS:  No.

7    BY MR. FITZPATRICK:

8        Q  Triton has an extensive website that they're

9    this large national trucking company, correct?

10           MR. GRAVES:  Objection.  Outside of the

11   scope of the notice.  Since it's specific to Triton,

12   I'm going to instruct him not to answer.  Next

13   question.

14   BY MR. FITZPATRICK:

15       Q  Who designed that website for Triton, sir?

16           MR. GRAVES:  Objection.  Outside of the

17   scope of the notice.  Since it's specific to Triton,

18   I'm going to instruct him not to answer.  Next

19   question.

20   BY MR. FITZPATRICK:

21       Q  Sir, is it your testimony that there's never

22   been intermittent -- intermixed assets between

1    Triton and AV Leasing as you sit here today?  That

2    there always has been separate accounts and separate

3    assets and there's never been any intermixing of

4    any assets between any accounts of those

5    corporations?

6             MR. GRAVES:  Objection.  Outside of the

7    scope of the notice.

8             MR. FITZPATRICK:  Those companies.

9             MR. GRAVES:  Outside of the scope of the

10   notice.  Asked and answered.  Since he answered the

11   question fully the first time, I'm going to instruct

12   him not to answer it again.  Next question.

13            MR. FITZPATRICK:  Well, I don't think I

14   really heard it, so I'll have the court reporter

15   read back his answer.  And I think it's -- if you

16   want, it's a good time for a break.  I need two

17   minutes.  I have to go to the bathroom.  We'll take

18   two minutes.

19            MR. GRAVES:  We -- you want him -- you want

20   the court reporter to read your -- read your

21   question and his answer --

22            MR. FITZPATRICK:  I think we --

1       MR. GRAVES:  -- before we take a break?

2       MR. FITZPATRICK:  I think we take a break

3  now and you can come back --

4       MR. GRAVES:  All right.  We'll take a break

5  then.

6       MR. FITZPATRICK:  Thank you.

7       MR. GRAVES:  All right.  Off the record.

8       (Off the record, 2:49 p.m.)

9       (On the record, 3:04 p.m.)

10      MR. GRAVES:  Okay.  Thank you.

11      We had an off record -- off the record

12  discussion among counsel and the witness.  It was

13  represented that this would only take an hour.

14  We're now at a little bit -- about hour and a half

15  in total time here in the deposition.

16      Mr. Voveris has multiple appointments that

17  would have to be cancelled in order to continue the

18  deposition and finish it today.  As a result, we're

19  going to stipulate that he can come back at a later

20  date to finish this deposition pursuant to the

21  notice that was served by the plaintiff upon

22  AV Leasing for its 30(b)(6) deposition.  That date

1    will be agreed to by counsel and Mr. Voveris will be

2    advised on the new finish up date.

3           So today we're going to go forward for

4    another 30 minutes and at that time we'll suspend

5    this corporate deposition.

6           Did I outline that correctly, Chris?

7           MR. FITZPATRICK:  I just want to interject

8    that I agreed -- I would consider it only one hour

9    before I found out what this witness' relationship

10   is between AV Leasing and Triton.

11          Mr. Graves has refused and directed him not

12   to answer any questions regarding Triton.  He does

13   possess a tremendous amount of knowledge even as his

14   capacity individually as well as AV Leasing so I'm

15   not -- I will consider -- I will let him -- I don't

16   want him to miss his appointments so we'll suspend

17   the deposition in a half an hour and then come back

18   at a later time.

19          MR. GRAVES:  That's fine.

20          MR. FITZPATRICK:  All right.

21          MR. GRAVES:  Mr. Court Reporter -- I'm

22   sorry.  I should know your name.  What's your name,

1    Court Reporter?

2          THE COURT REPORTER:  It's Cary.

3          MR. GRAVES:  Cary.  Okay.  I'm sorry.

4          MR. FITZPATRICK:  It's 4:05.  We will go to

5    approximately 4:35.

6          MR. GRAVES:  Okay.  Cary, if you could go

7    ahead and read Mr. FitzPatrick's last question.

8          MR. FITZPATRICK:  And just to let you know,

9    the proposed summons was just filed.  Electronically

10   filed.  You should be receiving that to bring -- to

11   serve Triton in this company.

12         And Mr. Graves has represented -- and I want

13   to be clear.  He made a representation that he would

14   accept service of process on behalf of Triton.

15         Is that correct, Mr. Graves, or not correct?

16         MR. GRAVES:  That's correct.

17         MR. FITZPATRICK:  Okay.  So we will send

18   your -- and we can send it by e-mail and by

19   certified mail to you?

20         MR. GRAVES:  Yeah, that's fine.

21         MR. FITZPATRICK:  Or overnight?

22         MR. GRAVES:  Or overnight.  Yep, that's

1    fine.

2           MR. FITZPATRICK:  All right.

3           THE COURT REPORTER:  Counsel, would you like

4    me to proceed?

5           MR. GRAVES:  Yes, please.

6           MR. FITZPATRICK:  So it's 4:06 so -- I get a

7    half hour.  4:36.

8           So ask the question back, respectfully,

9    Mr. Court Reporter.

10          THE COURT REPORTER:  I'm locating it, sir.

11   Please stand by.

12          MR. FITZPATRICK:  Thank you, Cary.

13          (The Reporter read the record as follows:

14   And separate assets and there's never been any

15   intermixing of any assets between any accounts of

16   those corporations?)

17          MR. GRAVES:  All right.  And once again,

18   I'll object.  It's outside of the scope of the

19   notice.  It's also irrelevant.  And I will object to

20   form as well because it's not specific to

21   AV Leasing.  And I think it was also asked and

22   answered was my prior objection.  And we'll defer to

1    his prior answer to that question so I'll instruct

2    him not to answer this specific one again.  Next

3    question.

4    BY MR. FITZPATRICK:

5        Q  Can I ask you a question, sir?  Why is

6    Triton leasing vehicles from a company that you are

7    the president of?  Why aren't they leasing it from

8    other companies?  Why are they leasing it from

9    AV Leasing?

10          MR. GRAVES:  Objection.  Outside of the

11   scope of the notice.  Irrelevant.  I'll instruct him

12   to not answer the question since it was specific as

13   to Triton.  Next question.

14          MR. FITZPATRICK:  I think that's very

15   relevant.

16          MR. GRAVES:  Well, I think --

17   BY MR. FITZPATRICK:

18       Q  Does AV Leasing --

19          MR. GRAVES:  Next question.

20   BY MR. FITZPATRICK:

21       Q  Does AV Leasing lease any of its trucks to

22   any other companies, sir?

1        MR. GRAVES:  Objection.  Outside of the

2   scope of the notice.  Since it's asked to

3   AV Leasing, I'll instruct him to answer the

4   question.

5        THE WITNESS:  What is your question?  Does

6   AV Leasing has another company?

7   BY MR. FITZPATRICK:

8        Q  Do they lease other trucks to any -- to any

9   other companies besides Triton?

10       A  Okay.

11       Q  And what are the names of those companies?

12       A  Yes.

13       Q  What are the names of the companies, sir?

14       MR. GRAVES:  Same objection as to relevance

15   and outside of the scope of the notice.

16       You can answer the question.

17       Well, I'll move to strike the answer, but

18   you can answer the question.

19       THE WITNESS:  Logistics Experts, LLC.

20   BY MR. FITZPATRICK:

21       Q  What's it called?  I'm sorry?

22       A  Logistics Experts, LLC.

1     Q   And how many trucks does that company have?

2         MR. GRAVES:  Same objection as to outside of

3   the scope of the notice.

4         MR. FITZPATRICK:  Well, he's leasing --

5         MR. GRAVES:  I'll --

6         MR. FITZPATRICK:  He's leasing it to them

7   so --

8         MR. GRAVES:  Well, that's why we'll move to

9   strike any answer.

10        You can answer.

11        THE WITNESS:  You mean how many trucks we

12  leasing --

13  BY MR. FITZPATRICK:

14    Q   Yeah.  How many trucks do you lease to them?

15    A   I need to look it up, but hundreds.

16    Q   Hundreds of trucks.  Are you -- do you have

17  any financial interest?  Are you an officer in that

18  company?

19    A   No.

20    Q   At all?

21    A   No.

22        MR. GRAVES:  Same objection as to outside of

1    the scope.  Move to strike the answer.  His answer.

2    BY MR. FITZPATRICK:

3        Q   Where is that company?  What's it called

4    again?  Logistics?

5        A   Logistics Experts.

6        Q   Okay.

7            MR. GRAVES:  Same objection.  Outside the

8    scope.  We'll move to strike any answer.

9            You can answer.

10   BY MR. FITZPATRICK:

11       Q   What other companies, sir, does AV Leasing

12   lease trucks to?

13           MR. GRAVES:  Same objection.  Outside the

14   scope.  We'll move to strike any answer.

15           You can answer.

16           THE WITNESS:  No more.

17   BY MR. FITZPATRICK:

18       Q   I'm sorry?

19       A   No more companies.

20       Q   No more companies?  Just that other company?

21   One company?  Okay.

22       A   Two companies.

1      Q   And how much money do you make yearly off

2   that company?

3          MR. GRAVES:  Same objection.  Outside the

4   scope.  We'll move to strike any answer.

5          You can answer the question if you know the

6   answer to it.

7          THE WITNESS:  I wouldn't be able to tell you

8   out of my head.  I mean, I need to check the books.

9   BY MR. FITZPATRICK:

10     Q   Okay.  We're going to request -- we're going

11  to request -- we're going to reserve our right

12  whether that -- to request that.  The only thing

13  we're requesting is everything -- and we're going to

14  put this in writing, too.  We'll subpoena if we have

15  to, too -- is all your banking and transaction

16  records and everything that you have with regard to

17  this truck that was involved in this accident and

18  that transaction and lease agreement between you and

19  Triton.

20         Does AV Leasing at all have any

21  regulations -- withdrawn.

22         Do you have any regulations at all or any

1  procedures regarding maintenance of the trucks that

2  you lease?

3      A  I'm sorry?  What is your question?

4      Q  Do you have any safety regulations and

5  maintenance regulations regarding the trucks that

6  you lease to Triton or any other company?

7          MR. GRAVES:  Object to form.  It's a

8  compound question and it's also unclear as to

9  exactly what you're asking.

10         You can answer the question if you

11  understood it.

12         THE WITNESS:  I didn't get the question.  Do

13  I understand the safety you said?

14  BY MR. FITZPATRICK:

15     Q  No, I said do you have any safety

16  maintenance records that you -- well, let me

17  rephrase the question.

18         Do you have any safety maintenance records?

19     A  AV Leasing --

20     Q  Safety --

21     A  AV Leasing leasing don't keep any safety

22  records.

1      Q  But you lease these trucks though, correct,

2   sir?  So when you -- before you lease them, don't

3   you -- doesn't your company inspect the trucks?

4      A  Not necessary if -- I mean, AV Leasing has

5   to.

6      Q  Why wouldn't AV Leasing --

7      A  The truck --

8      Q  Why wouldn't AV Leasing -- why would they

9   not be responsible before they transfer a truck to

10  make sure that truck is in -- is safe and safe to

11  operate?

12     A  I mean, all those trucks and trailers, they

13  have been inspected before.  But once the lease -- I

14  mean, the company who is leasing the trucks from me,

15  they're responsible for future maintenance and for

16  future, you know, inspections and all that.

17     Q  That Triton and this other company are

18  responsible?  That you're not responsible, right?

19     A  No.  No.  I issue the truck -- I mean,

20  AV Leasing issue the truck with inspection, with the

21  truck maintained and every company responsible to --

22     Q  So what are you responsible for, sir?

1          MR. GRAVES:  Objection to the form.

2     BY MR. FITZPATRICK:

3        Q  What are you responsible --

4          MR. GRAVES:  You mean with regards to safety

5     and maintenance or -- do you mean with regards to

6     maintenance?  Because I'm not clear on exactly

7     what --

8          MR. FITZPATRICK:  It's generally.  He said

9     he's not responsible for anything.  He said we just

10    lease the truck.

11    BY MR. FITZPATRICK:

12       Q  So what are you responsible for in terms of

13    maintenance, safety, or anything else?

14         MR. GRAVES:  Object to the form.

15         You can answer the question if you

16    understand.

17         THE WITNESS:  I mean, AV Leasing not

18    responsible for maintenance or safety.

19    BY MR. FITZPATRICK:

20       Q  So what are you responsible for?

21         MR. GRAVES:  Same objection.

22    BY MR. FITZPATRICK:

1      Q   Can you please answer?

2      A   What do you mean what else responsible --

3      Q   What are you responsible for?  In other

4   words, when you lease the truck, what are you

5   responsible for in the sense of inspecting the

6   truck?  Do you do a history of whether the truck has

7   had any deficiencies, any danger -- any safety

8   violations?  Anything that's --

9      A   No.  We're not responsible for that.

10      Q   Well, who is responsible for it, sir?

11      A   The trucking company.

12      Q   And you're the president of Triton, correct?

13   Yes?

14          MR. GRAVES:  Objection.  Outside of the

15   scope of the notice.  Also asked and answered.

16   Since he's answered it once before, I'll move to

17   strike, but I'll also instruct him not to answer the

18   question since he's answered it once before.  Or --

19   BY MR. FITZPATRICK:

20      Q   Do you remember --

21          MR. GRAVES:  -- multiple times at this

22   point.

1    BY MR. FITZPATRICK:

2        Q   Do you remember, sir, anything about this

3    truck at all that you leased at all to Triton?

4        A   What do you mean if I remember?

5        Q   Well, did you ever review the lease, number

6    one?  Did you ever review what the maintenance

7    history was with this truck?  And what type of truck

8    it was?

9        A   You mean before we leased the truck?

10       Q   Yes.

11       A   Yeah.

12       Q   Okay.  So what do you remember about this

13   truck?

14           MR. GRAVES:  I'll object.  It's outside of

15   the scope of the notice.  He can answer, but we'll

16   move to strike any answer that he gives.

17           THE WITNESS:  I mean, I don't understand

18   what you're asking, what do you remember.

19   BY MR. FITZPATRICK:

20       Q   What do you remember about when you leased

21   this truck?  Do you remember what type of truck was

22   it?  Do you remember what type of truck this was?

1       MR. GRAVES:  Same objection.  We'll also

2  move to strike any answer he gives.

3       THE WITNESS:  Yeah.  It's a Freightliner.

4  BY MR. FITZPATRICK:

5    Q  It's a Freightliner?  And who manufactured

6  the truck?

7    A  Freightliner.

8    Q  Freightliner?

9    A  Yes, sir.

10   Q  Okay.  And how long was the truck in service

11  prior to you leasing it?

12   A  I don't remember now.

13       MR. GRAVES:  Objection.  Outside of the

14  scope of the notice.  Move to strike any answer, but

15  he can answer.

16       THE WITNESS:  I don't remember.  You can

17  request the documents.  We can e-mail you over, but

18  I don't remember out of my mind.

19  BY MR. FITZPATRICK:

20   Q  Do you remember anything about this truck?

21   A  I'm sorry?

22   Q  You don't remember other than it was a

1    Freightliner?  That's it?

2        A   Yeah.  I know it's Freightliner.  You know,

3    I have a lot of trucks so I don't really -- you're

4    asking me about the truck?  What do you need to

5    remember?

6        Q   Well, after this incident occurred, did you

7    do any research about this truck?

8        A   I mean, everything was inspected, everything

9    is on time, so I mean -- I mean, we didn't do

10   nothing wrong so --

11       Q   You said everything was inspected?  How do

12   you know everything was inspected?

13       A   Because we have, you know, everything on

14   file.

15       Q   And where are those files?

16       A   What do you mean where's the files?

17       Q   Where are they?  Are they in your office at

18   AV Leasing or are they in Triton's office?

19           MR. GRAVES:  Objection.  Outside of the

20   scope of the notice.  We'll move to strike since the

21   question is about Triton, but you can answer.

22           THE WITNESS:  AV Leasing.

1  BY MR. FITZPATRICK:

2      Q  Okay.  Is the address of your company

3  525 Anderson Drive, Romeoville, Illinois?

4      A  Yes.

5      Q  Okay.  Are you in the same building that

6  Triton is or are you in a separate building at a

7  separate address?

8      A  I only talk about AV Leasing.  This is our

9  address.

10     Q  I'm just asking --

11     A  525 --

12     Q  I'm just asking --

13     A  I'm answering.  525.

14     Q  You're saying -- you're saying, hey, we're

15  totally separate.  I'm certainly entitled to ask you

16  whether you're -- sitting here right now whether

17  you're in the same building that Triton --

18     A  Sir --

19     Q  -- is --

20     A  Sir, I didn't say anything about separate.

21  You said separate.

22     Q  No.  That's why I'm asking you.

1          MR. GRAVES:  So --

2          THE WITNESS:  And I said I represent

3    AV Leasing.

4    BY MR. FITZPATRICK:

5       Q  Right.

6       A  My address is 525.  Move on to your next

7    question.

8          MR. GRAVES:  I'll object to the question on

9    the basis that it's outside of the scope of the

10   notice, but his address speaks for itself.  Whether

11   or not it's the same address as Triton is irrelevant

12   to this particular deposition and this particular

13   proceeding and to the case at this point.  So he's

14   answered as to AV Leasing.  We'll move to strike any

15   answer with regards to Triton and instruct him not

16   to answer anything with regards to Triton at this

17   point.  Next question.

18   BY MR. FITZPATRICK:

19      Q  It says that Triton is a family -- and

20   your -- on Triton's website -- is a family-owned

21   business founded in 2011 and our family-owned

22   business started with just a few trucks and

1    dedicated, reliable drivers.  Over the years, with a

2    great vision, hard work, and consistent work ethics,

3    we became one of the fastest-growing, well-known and

4    most respected logistic companies in the Chicago

5    area.  We take pride in doing what we do --

6    et cetera, et cetera.

7          So who -- if -- you testified before that

8    you started -- you came over in 2014 and I believe

9    within a year -- and so I'm clear whether you bought

10   Triton or somebody else.  So who is the family-owned

11   business?  Who is the family members that founded

12   this in 2011?

13         MR. GRAVES:  Objection.  Outside of the

14   scope of the notice.  Since the question is specific

15   as to Triton, I'm going to instruct him not to

16   answer it.  Next question.

17   BY MR. FITZPATRICK:

18      Q  Okay.  So are there other members of your

19   family that own Triton?

20         MR. GRAVES:  Objection.  Outside of the

21   scope of the notice.  Also irrelevant.  Since it's

22   dealing with Triton specifically, I'll instruct the

1   witness not to answer.  Next question.

2   BY MR. FITZPATRICK:

3       Q  Do you deal with any family members as the

4   president of AV Leasing in leasing these trucks to

5   Triton when you -- when you lease trucks to Triton,

6   are you involved with any brothers, sisters,

7   brother-in-laws, relatives at all?

8           MR. GRAVES:  Objection.  Outside of the

9   scope of the notice.  He can answer, but I'll move

10  to strike any answer because it's outside of the

11  scope of the notice.

12          Go ahead and answer, Andrew.

13          THE WITNESS:  No.

14  BY MR. FITZPATRICK:

15      Q  What documents have you kept regarding this

16  particular incident as your -- as the president of

17  AV Leasing?

18      A  What documents?  Sorry.  Can you repeat your

19  question?  What documents?

20      Q  What documents have you kept in the regular

21  course of business?  Did you get a copy of the

22  police report?

1      A   No.

2          You mean regarding this accident?

3      Q   You've never -- did you -- as a result of

4   this accident, did you ever get a copy of the police

5   report, sir?

6      A   No.

7      Q   No?  You've never looked at the police

8   report in this accident, correct?  Before testifying

9   here today?

10     A   No.

11     Q   Three people died, 22 people were injured

12  and you never even took it upon yourself as the

13  president of AV Leasing to get a copy of the police

14  report and to review it?

15     A   I mean, my --

16         MR. GRAVES:  You can answer.

17         THE WITNESS:  My attorneys gave it to me,

18  the e-mail, but --

19  BY MR. FITZPATRICK:

20     Q   You never reviewed --

21     A   -- the police didn't give it to me directly.

22  This is what I mean.

1      Q   You've never reviewed you just testified.

2      A   No, like I said, my attorneys send me the

3   documents.  Okay?  And I saw the documents.  Of

4   course I saw the documents from my attorney, but

5   police never give it to me directly.

6      Q   Did your -- well, that's not my question.

7   My question is did you ever review the police report

8   before testifying here today?

9      A   Yes, I saw it.  I saw the police report.

10     Q   Okay.  Do you remember what date this

11  incident happened?

12     A   I believe it's December 16, 2022.

13     Q   Do you remember what time that it happened

14  at?

15     A   No.

16     Q   You don't remember if it was night or day?

17     A   It was night.  It was night.

18     Q   Okay.  You don't remember whether it was

19  before midnight or after midnight?

20     A   I don't remember, but it was night.

21     Q   Do you remember where it -- where the

22  incident actually happened?

1      A   It's in Virginia.

2      Q   Do you know where in Virginia?

3      A   I don't remember the city, but it's in

4    Virginia.

5      Q   Okay.

6      A   In Virginia state.

7      Q   Did you contact your insurance company about

8    this the day -- on December 16th or December 17th or

9    any time thereafter?

10     A   Yes.

11     Q   Okay.  And what's the name of your insurance

12   company?

13     A   I'm not going to be able to tell you now.

14   You know, I --

15        MR. GRAVES:  I'm going to object to form.

16   The question as asked is not specific to AV Leasing.

17        If you know --

18   BY MR. FITZPATRICK:

19     Q   Does AV Leasing have an insurance company,

20   sir?

21     A   Yes.

22     Q   Yeah.  Who's the insurance company?  You're

1    the president of the company.  Who's the insurance

2    company?

3        A   You mean --

4        Q   Of AV --

5        A   You mean the current company?

6        Q   The current company -- well, no.  Let's

7    ask -- in 2022, at the time this incident happened,

8    who was the company?

9        A   I need to have a look.  I can tell you what

10   is my current company.  We keep changing every year,

11   but if I'm not mistaken -- one second.  Okay?  Just

12   give me one second.

13          (Brief pause.)

14          THE WITNESS:  It's Allied World.  It's A,

15   double L, I-E-D World.  And I'm 99 percent sure it

16   was the same insurance company at the time.

17       Q   How do you spell that insurance company?

18       A   A for apple, L for lemon, L for lemon again,

19   I for India, E for echo, D for delta.  And second

20   word is World, W-O-R-L-D.

21       Q   Okay.  And who have you spoken to at the

22   insurance company?

1       A   Sorry?

2       Q   Who have you spoken to at the insurance

3   company regarding this incident?

4           MR. GRAVES:  Do you specifically mean in his

5   capacity as -- AV Leasing's --

6           MR. FITZPATRICK:  In his capacity regarding

7   AV Leasing.  So we'll keep it with that and then

8   we'll come back at a later time and we'll talk about

9   Triton.

10          THE WITNESS:  What do you mean who I talked

11  to?  You make a claim, you know?  Like, I mean, you

12  report the accident and you call customer service

13  and you report the claim.

14  BY MR. FITZPATRICK:

15      Q   All right.  How many claims has Triton made

16  before December -- either Triton -- let's say

17  AV Leasing.

18          How many claims has AV Leasing made with

19  your insurance company prior to December 16th, 2022?

20          MR. GRAVES:  Objection.  Outside of the

21  scope of the notice.  Object to form.

22          THE WITNESS:  I don't --

1          MR. GRAVES:  Wait a minute, Andy.

2          And he can answer, but we'll move to strike

3   any answer that he gives.

4          So you can answer if you know the answer.

5          THE WITNESS:  You know, I don't know.  I

6   don't remember.

7          MR. FITZPATRICK:  Can the court reporter

8   just read back the last question, please?  I had a

9   hard time understanding his answer, but just read it

10  back.

11         THE COURT REPORTER:  Stand by, please.

12         (The Reporter read the record as follows:

13  How many claims has Triton made before December

14  -- either Triton -- let's say AV Leasing.

15         How many claims has AV Leasing made with

16  your insurance company prior to December 16th,

17  2022?)

18         THE WITNESS:  I understood the question.

19  I'm answering for AV Leasing.  I do not remember how

20  many claims we had.  I don't have those numbers.

21  BY MR. FITZPATRICK:

22      Q  You don't know how many claims have been

1   made?

2       A   No.

3       Q   Okay.  Does your trucking company,

4   AV Leasing, lease trucks to Triton that drive around

5   the United States?  Drive around nationally to all

6   50 states?

7           MR. GRAVES:  Objection.  Outside of the

8   scope of the notice.  He can answer the question,

9   but we'll move to strike any answer that he gives.

10          THE WITNESS:  No, I don't remember.

11  BY MR. FITZPATRICK:

12      Q   You don't remember if your trucks drive

13  anywhere -- in all 50 states?

14          MR. GRAVES:  Same objection.

15          THE WITNESS:  You're asking how many --

16          MR. GRAVES:  (Indiscernible).

17          THE WITNESS:  You're asking how many

18  accidents we had?  I mean, how many claims?

19  BY MR. FITZPATRICK:

20      Q   Well, first I'm asking how many accidents,

21  but now I'm asking do the routes that the trucks

22  that you lease in AV Leasing, do they go around the

1    United States?  Are they on the west coast?  Are

2    they in the south?  Are they in the southwest?

3        A  I don't know.

4        Q  You don't know?

5        A  No.

6        Q  Why would you not know?  You're the

7    president of the company.

8        A  AV Leasing don't know nothing about where

9    the trucks and trailers go.

10       Q  So it's your testimony that you don't know

11   anything about it from AV Leasing's perspective, but

12   from Triton's perspective you would know?  Is that

13   what you're testifying to?

14       MR. GRAVES:  I'll object.  That's

15   mischaracterizing his testimony.

16       MR. FITZPATRICK:  That's exactly what he

17   said.  That's exactly --

18       MR. GRAVES:  No, that's not --

19       MR. FITZPATRICK:  -- what he said.

20       MR. GRAVES:  That's not what he said.  And

21   since it mischaracterizes his testimony, it's

22   impossible for him to answer the question.  So I'll

1    move to strike any answer that he might give and

2    actually, I'll instruct him not to answer the

3    question.

4          MR. FITZPATRICK:  Well, we don't want to get

5    in a thing where he's -- that we're not hearing him

6    properly and there are allegations of

7    mischaracterizing his testimony so I'll just ask the

8    question again so it's simple.

9    BY MR. FITZPATRICK:

10       Q  Is it your testimony, sir, that you don't

11   know if your trucks take -- what routes they take

12   for AV Leasing?  Is that your testimony?  That

13   you --

14         MR. GRAVES:  Same objection.

15   BY MR. FITZPATRICK:

16       Q  That you lease to Triton.  That you don't

17   know whether they operate in the southwest, in the

18   south, the northeast, the northwest?  You don't

19   know?

20         MR. GRAVES:  Same objection.  We'll move to

21   strike any answer, but he can answer.

22         THE WITNESS:  AV Leasing, we don't know.  We

1    don't know where the trucks and trailers.

2    BY MR. FITZPATRICK:

3        Q  We don't know at AV Leasing, okay, but --

4    you say "we", but who do you mean by "we"?  Because

5    you said --

6        A  I am.

7        Q  -- you're the only person.

8        A  AV Leasing.

9        Q  You're the only person.

10       A  AV Leasing am I.  AV Leasing am I.  We're

11   together, right?  Company.

12       Q  AV Leasing and yourself?  Is that what

13   you're saying?

14       A  Yeah, AV Leasing.  Yeah.

15       Q  But AV Leasing is yourself, correct?

16   There's no shareholders, there's no investors,

17   there's no corporate officers, there's no employees,

18   correct?

19       MR. GRAVES:  Same objection.  Outside the

20   scope.

21   BY MR. FITZPATRICK:

22       Q  So in Triton --

1          MR. GRAVES:  We'll move to strike it, but he

2      can answer.

3

4      BY MR. FITZPATRICK:

5          Q  In Triton -- as the president of Triton, you

6      certainly know where your truck drivers -- you're

7      paying them a lot of money and you're paying a lot

8      of money for the deliveries of the contracts of

9      those.  You certainly know whether they operate in

10     California, Texas, Florida, Georgia, Missouri, Ohio,

11     correct?

12         MR. GRAVES:  Objection.  Outside of the

13     scope of the notice.  Since you're asking him about

14     Triton, I'm going to instruct him not to answer.

15     Next question.

16     BY MR. FITZPATRICK:

17         Q  Sir, do you have any record of -- have you

18     ever been arrested or charged with any misdemeanor

19     or felony or any criminal -- any criminal --

20     involving any criminal matter in the United States,

21     Lithuania, or any country throughout the world?

22         A  No.

1      Q  You've never been charged at all?

2          MR. GRAVES:  Asked and answered.

3

4  BY MR. FITZPATRICK:

5      Q  All right.  I just want my -- your testimony

6  to be clear that you came to the United States in

7  2014, you worked approximately a year, and then you

8  bought a trucking company which you haven't

9  identified as Triton, correct?  So when you came

10 to --

11         MR. GRAVES:  Objection.

12 BY MR. FITZPATRICK:

13     Q  When you came to the --

14         MR. GRAVES:  Asked and answered.

15 BY MR. FITZPATRICK:

16     Q  When you came to this country, did you have

17 substantial assets before you came to the country or

18 you just made assets in a year -- less than a year

19 and bought this company?  Which the company says

20 that it was founded in 2011, not 2015 or '16.

21         MR. GRAVES:  Objection.  Outside of the

22 scope of the notice.  You're also obviously asking

1    him about Triton and it's been asked and answered.

2    I'll instruct him not to answer the question.  Next

3    question.

4    BY MR. FITZPATRICK:

5        Q  Sir, have you ever been personally

6    investigated by any -- any police department,

7    including Virginia State Police or any local police

8    department where this occurred, regarding

9    falsifying, altering records of your truck drivers

10   at all, or investigations regarding forcing your

11   truck drivers to work a certain amount of hours?

12        Were you personally -- I'm not asking you

13   from AV Leasing and I'm not asking you from -- as

14   your hat as the president of Triton.

15        Were you personally investigated at all with

16   respect to this?

17        MR. GRAVES:  Objection.  It's outside of the

18   scope of the notice.  It's also totally irrelevant.

19        MR. FITZPATRICK:  Oh, I think it's -- I

20   think it's very relevant.

21        MR. GRAVES:  Hold on, Chris.  I understand

22   what you think.

1        MR. FITZPATRICK:  All right.

2        MR. GRAVES:  I will also instruct the

3   witness not to answer the question on the basis that

4   it is outside of the scope of the notice and it does

5   ask him about his personal investigation which is

6   not the subject of the corporate deposition of

7   AV Leasing.  So I'm going to instruct him on that

8   basis to not answer the question.

9        MR. FITZPATRICK:  You're not instructing

10  him --

11       MR. GRAVES:  Next question.

12       MR. FITZPATRICK:  -- but he's invoking his

13  Fifth Amendment right of self-incrimination.

14       MR. GRAVES:  Whether that's it or not, I'm

15  not sure if that would fall under --

16       MR. FITZPATRICK:  All right.

17       MR. GRAVES:  -- invoking his Fifth Amendment

18  right, but I'm instructing him not to answer the

19  question on the basis that it is outside of the

20  scope and it's asking about him personally which is

21  not the subject of the 30(b)(6) deposition of

22  AV Leasing.

1        THE WITNESS:  Guys, I'm going to have to

2    really go.

3        MR. FITZPATRICK:  All right.  So it's 4:35.

4        THE WITNESS:  (Indiscernible) --

5        MR. FITZPATRICK:  It's 4:35.

6        THE WITNESS:  -- two hours and I really have

7    meetings next.

8        MR. FITZPATRICK:  All right.

9        THE WITNESS:  I don't want to be rude or

10    anything, you know --

11        MR. FITZPATRICK:  All right.

12        THE WITNESS:  -- but I have meetings later

13    you know?  I'm already late.

14        MR. FITZPATRICK:  Well, I'm going to stay

15    true to my stipulation.  Half an hour.  It's 4:35.

16    So we're going to adjourn and I'm going to be in

17    contact with all counsel to have a future deposition

18    as all counsel -- as Mr. Graves has stipulated that

19    he will produce you for a further deposition.  For

20    AV --

21        MR. GRAVES:  For AV Leasing.

22        MR. FITZPATRICK:  Just to let you know, we

1  just -- the summons has been requested from the

2  Court.  We should be getting that Monday.  And

3  Mr. Graves, we will -- once we get that summons, we

4  will serve you with a copy of the amended complaint

5  and we'll do it by certified mail and we'll do it by

6  e-mail and I'm going to ask that you acknowledge

7  that as well.

8         And we're going to be requesting --

9  obviously since he's been brought in, we're going to

10 be requesting a lot of documents that be produced

11 for Triton with respect to this and if you're not

12 going to produce them, whatever.  That's fine.

13 We'll move -- we'll make -- file a motion.  They've

14 just been brought in as a party to the case and

15 we'll go from there.

16         MR. GRAVES:  All right.  So --

17         MR. FITZPATRICK:  I'll let everybody go.

18         MR. GRAVES:  All right.  Thank you.

19         Are you asking me to --

20         THE COURT REPORTER:  Counsel, hold on.

21 Stop.

22         Before everybody leaves, first and foremost,

1    I need orders.  If anyone is going to be ordering.

2            MR. GRAVES:  Yeah, I --

3            MR. FITZPATRICK:  We're ordering.

4            THE COURT REPORTER:  One at a time, please.

5            MR. FITZPATRICK:  This is Mr. FitzPatrick.

6    I need a hard copy and I need an electronic

7    transmittal and I need this by -- can you get it to

8    me by Monday or Tuesday?

9            THE COURT REPORTER:  Counsel, I'm not sure

10   about that.  Can we -- we can try for Tuesday.  Does

11   that work, Mr. FitzPatrick?

12           MR. FITZPATRICK:  Let's try for Tuesday.

13   Okay?

14           THE COURT REPORTER:  Okay.

15           Mr. Graves?

16           MR. GRAVES:  Yeah, I'll take a copy.  You

17   can send it to me by etran, please.

18           THE COURT REPORTER:  Anyone else on the line

19   need a copy?

20           MR. VOYLES:  This is --

21           MS. MACFARLANE:  No, thank you.

22           MR. VOYLES:  -- Shawn Voyles.  No, I don't

1    need a copy.

2            MS. MACFARLANE:  Angela MacFarlane here.

3    No, I don't need a copy.  Thank you.

4            THE COURT REPORTER:  Okay.  Thank you,

5    counsel.

6            (End of recording, 3:38 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1      CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

2              I, Cary Davidow, the officer before

3   whom the foregoing proceedings were taken, do

4   hereby certify that any witness(es) in the

5   foregoing proceedings were fully sworn; that the

6   proceedings were recorded by me and thereafter

7   reduced to typewriting by a qualified

8   transcriptionist; that said digital audio

9   recording of said proceedings are a true and

10  accurate record to the best of my knowledge,

11  skills, and ability; and that I am neither

12  counsel for, related to, nor employed by any of

13  the parties to this case and have no interest,

14  financial or otherwise, in its outcome.

15

16  _____

17  Cary Davidow,

18  NOTARY PUBLIC FOR THE STATE OF ILLINOIS

19

20

21

22

1                    CERTIFICATE OF TRANSCRIBER

2              I, Alicia Greenland, do hereby certify

3       that this transcript was prepared from the digital

4       audio recording of the foregoing proceeding; that

5       said transcript is a true and accurate record of

6       the proceedings to the best of my knowledge, skills,

7       and ability; and that I am neither counsel for,

8       related to, nor employed by any of the parties to

9       this case and have no interest, financial or

10      otherwise, in its outcome.

11

12

13

14      _____

15      Alicia Greenland

16      June 18, 2024

17

18

19

20

21

22

| A |
|---|

**aaisha**
3:13
**ability**
134:11, 135:7
**able**
7:8, 63:16,
63:19, 104:7,
118:13
**about**
14:18, 18:7,
35:20, 37:15,
37:20, 39:19,
40:1, 43:6,
44:12, 44:14,
45:22, 46:1,
56:22, 57:7,
57:10, 57:14,
58:8, 62:4,
68:15, 73:10,
75:20, 76:3,
76:4, 76:21,
77:12, 77:13,
77:18, 78:12,
78:16, 79:1,
79:15, 80:16,
81:2, 89:5,
96:14, 109:2,
109:12, 109:20,
110:20, 111:4,
111:7, 111:21,
112:8, 112:20,
118:7, 120:8,
123:8, 123:11,
126:13, 128:1,
129:5, 129:20,
132:10
**accept**
98:14
**accident**
14:19, 15:18,
20:1, 22:8,
26:11, 27:21,
39:20, 41:6,
60:2, 62:4,
62:14, 104:17,
116:2, 116:4,

116:8, 120:12
**accidents**
122:18, 122:20
**accord**
36:12
**accordingly**
25:21, 26:7
**accounts**
93:21, 93:22,
95:2, 95:4,
99:15
**accurate**
134:10, 135:5
**acknowledge**
131:6
**acting**
28:7
**action**
1:7, 81:7
**actually**
18:9, 117:22,
124:2
**add**
60:14
**address**
11:18, 112:2,
112:7, 112:9,
113:6, 113:10,
113:11
**adjourn**
130:16
**administration**
19:20, 21:13,
50:12, 51:18
**adventures**
4:11
**advice**
31:6
**advise**
32:21, 34:12
**advised**
32:18, 34:9,
34:11, 37:11,
97:2
**advising**
31:5, 31:6,
31:16
**affirmed**
6:4

**after**
36:18, 54:7,
84:3, 111:6,
117:19
**again**
7:19, 14:12,
14:15, 14:22,
15:12, 26:1,
28:15, 40:17,
42:21, 58:19,
60:11, 61:2,
69:10, 70:18,
77:22, 78:7,
88:10, 95:12,
99:17, 100:2,
103:4, 119:18,
124:8
**against**
55:16, 82:10,
82:11, 82:18,
82:19
**ago**
68:15, 70:22,
71:9
**agreed**
97:1, 97:8
**agreement**
91:3, 104:18
**agreements**
32:19, 32:22,
33:2
**ahead**
11:2, 11:5,
23:12, 27:14,
28:21, 41:17,
42:1, 46:19,
49:12, 50:5,
51:10, 69:7,
72:11, 89:13,
98:7, 115:12
**al**
1:9
**alicia**
1:22, 135:2,
135:15
**all**
8:4, 8:5, 9:12,
10:3, 14:20,

15:20, 16:15,
18:4, 20:8,
23:12, 24:9,
24:12, 25:9,
25:16, 26:6,
26:8, 26:22,
36:19, 37:5,
37:21, 40:7,
41:17, 41:20,
44:1, 44:4,
47:3, 47:12,
48:6, 52:18,
52:21, 53:15,
53:16, 54:20,
56:8, 61:10,
62:14, 64:6,
65:14, 67:5,
72:22, 75:5,
77:20, 78:4,
78:10, 82:8,
84:4, 87:21,
89:8, 89:9,
93:22, 96:4,
96:7, 97:20,
99:2, 99:17,
102:20, 104:15,
104:20, 104:22,
106:12, 106:16,
109:3, 115:7,
120:15, 122:5,
122:13, 127:1,
127:5, 128:10,
128:15, 129:1,
129:16, 130:3,
130:8, 130:11,
130:17, 130:18,
131:16, 131:18
**allegations**
54:22, 124:6
**allegedly**
41:4
**alleging**
41:3
**allied**
119:14
**allowable**
25:3
**allowed**
47:6, 50:10,

51:16
**already**
7:21, 8:2,
35:22, 60:8,
78:2, 79:12,
130:13
**also**
12:13, 12:21,
13:5, 28:7,
28:18, 31:18,
33:14, 33:17,
34:18, 40:15,
59:20, 60:3,
60:20, 66:4,
71:22, 75:19,
78:11, 78:17,
79:18, 81:9,
82:13, 85:9,
86:3, 86:22,
87:17, 88:4,
88:21, 89:21,
99:19, 99:21,
105:8, 108:15,
108:17, 110:1,
114:21, 127:22,
128:18, 129:2
**altering**
128:9
**always**
95:2
**amended**
131:4
**amendment**
55:13, 55:15,
56:3, 56:8,
129:13, 129:17
**america**
65:15, 79:1
**among**
96:12
**amount**
74:9, 75:15,
76:22, 97:13,
128:11
**anderson**
3:14, 112:3
**andrew**
1:13, 2:1, 5:2,

6:3, 6:14, 9:10,
11:2, 11:22,
16:21, 20:6,
29:6, 31:21,
42:5, 42:19,
75:22, 80:8,
80:10, 85:5,
90:5, 115:12
**andy**
121:1
**angela**
4:12, 133:2
**another**
24:20, 45:2,
50:14, 50:21,
51:20, 61:4,
61:6, 97:4,
101:6
**answered**
9:20, 10:2,
11:1, 14:8,
55:10, 60:17,
60:21, 61:5,
67:9, 69:2,
74:18, 75:4,
78:2, 88:21,
88:22, 95:10,
99:22, 108:15,
108:16, 108:18,
113:14, 127:2,
127:14, 128:1
**answering**
36:9, 49:18,
51:2, 90:1,
112:13, 121:19
**antoni**
4:10
**anybody**
58:1, 58:8
**anyone**
42:9, 42:14,
42:15, 53:11,
88:12, 132:1,
132:18
**anything**
30:19, 49:22,
51:6, 91:22,
107:9, 107:13,

108:8, 109:2,
110:20, 112:20,
113:16, 123:11,
130:10
**anywhere**
122:13
**apart**
93:6, 93:17
**apologize**
24:19, 50:13,
51:19
**apple**
29:21, 30:7,
30:15, 119:18
**applies**
79:20
**appointments**
96:16, 97:16
**appropriate**
7:7, 7:13,
33:9, 34:13
**approximately**
8:10, 65:5,
65:11, 98:5,
127:7
**area**
11:18, 13:13,
114:5
**areas**
15:4
**aren't**
100:7
**around**
122:4, 122:5,
122:22
**arrested**
126:18
**arrogant**
14:1, 14:11
**article**
41:2, 41:7
**asked**
14:5, 34:20,
43:5, 55:7,
60:17, 60:20,
61:5, 67:8,
71:14, 88:9,
88:21, 95:10,

99:21, 101:2,
108:15, 118:16,
127:2, 127:14,
128:1
**asking**
13:7, 23:10,
32:1, 32:17,
36:7, 39:19,
43:7, 43:9,
55:17, 57:11,
57:12, 57:14,
60:11, 60:12,
60:13, 66:5,
66:8, 75:20,
78:5, 78:11,
78:12, 78:16,
79:15, 87:6,
87:8, 89:4,
90:1, 90:13,
93:10, 105:9,
109:18, 111:4,
112:10, 112:12,
112:22, 122:15,
122:17, 122:20,
122:21, 126:13,
127:22, 128:12,
128:13, 129:20,
131:19
**assets**
65:20, 66:9,
66:12, 67:4,
67:5, 67:12,
93:5, 93:17,
94:1, 94:22,
95:3, 95:4,
99:14, 99:15,
127:17, 127:18
**assume**
71:6
**attorney**
6:19, 27:1,
30:21, 36:7,
37:9, 43:4,
43:10, 45:12,
53:5, 53:11,
91:14, 91:21,
92:1, 117:4
**attorney-client**
30:19, 31:19,

34:19, 86:21
**attorneys**
85:1, 85:13,
85:21, 86:17,
116:17, 117:2
**audible**
6:11
**audio**
8:4, 134:8,
135:4
**avenue**
3:5
**aware**
39:17, 39:19,
41:2, 41:6,
41:7, 62:5,
62:11, 75:14,
77:20, 81:6
**away**
65:16

**B**

**b) (6**
9:11, 21:14,
96:22, 129:21
**back**
6:22, 19:11,
20:13, 22:22,
25:16, 25:18,
25:20, 25:22,
27:17, 32:3,
32:7, 32:10,
32:11, 38:1,
59:1, 59:6,
61:1, 61:2,
62:9, 63:2,
63:3, 63:14,
69:12, 93:14,
95:15, 96:3,
96:19, 97:17,
99:8, 120:8,
121:8, 121:10
**background**
9:12, 10:20
**bad**
58:16, 83:2
**ballard**
4:5

**bank**
90:14, 90:20,
91:1, 91:2
**banking**
89:8, 104:15
**basic**
21:9, 21:11,
76:3
**basically**
12:3
**basis**
79:18, 80:17,
81:3, 88:16,
113:9, 129:3,
129:8, 129:19
**bathroom**
95:17
**beach**
4:7
**became**
114:3
**because**
7:7, 8:1, 8:3,
9:10, 10:21,
12:22, 16:5,
17:20, 19:11,
19:21, 21:15,
23:4, 25:3,
27:8, 36:11,
38:2, 38:21,
44:16, 46:1,
46:5, 55:15,
55:18, 56:3,
56:12, 59:19,
60:6, 60:22,
72:13, 86:4,
93:2, 99:20,
107:6, 111:13,
115:10, 125:4
**been**
7:6, 8:7, 22:9,
22:13, 27:1,
52:11, 65:7,
65:10, 81:7,
82:8, 82:9,
82:10, 82:18,
83:6, 88:19,
94:22, 95:2,

95:3, 99:14,
106:13, 121:22,
126:18, 127:1,
128:1, 128:5,
131:1, 131:9,
131:14
**before**
2:9, 6:13, 7:6,
9:9, 18:11,
28:10, 29:4,
39:6, 41:6,
55:7, 62:9,
65:9, 68:14,
68:22, 69:2,
69:15, 74:17,
74:19, 94:2,
96:1, 97:9,
106:2, 106:9,
106:13, 108:16,
108:18, 109:9,
114:7, 116:8,
117:8, 117:19,
120:16, 121:13,
127:17, 131:22,
134:2
**beginning**
24:6
**behalf**
3:2, 3:10, 4:2,
4:10, 84:5,
84:8, 85:16,
98:14
**being**
6:4, 75:2,
75:15, 76:22
**believe**
18:9, 55:9,
83:14, 114:8,
117:12
**belts**
77:15
**besides**
101:9
**best**
134:10, 135:6
**better**
21:21, 83:1
**between**
89:9, 89:16,

92:6, 93:22,
94:1, 94:22,
95:4, 97:10,
99:15, 104:18
**beyond**
21:6, 50:9,
51:15, 52:16
**big**
17:15
**biggest**
7:5
**birthday**
8:18
**bit**
96:14
**books**
8:9, 71:1,
104:8
**bordering**
18:9
**borderline**
19:19
**born**
8:13, 8:17
**both**
11:17, 13:18,
18:10, 18:13,
18:16, 18:18,
19:2, 19:8,
19:9, 34:12,
38:10, 44:21,
53:9
**bought**
71:20, 114:9,
127:8, 127:19
**bounds**
47:5
**box**
3:17, 4:14
**break**
7:3, 70:8,
95:16, 96:1,
96:2, 96:4
**brief**
11:9, 29:19,
119:13
**bring**
20:11, 20:13,

| | | | |
|---|---|---|---|
| 53:17, 98:10 | came | certainly | 58:12, 58:14 |
| **broad** | 36:15, 37:7, | 9:15, 78:19, | **citizen** |
| 48:21, 49:1 | 37:13, 65:15, | 79:17, 112:15, | 9:1 |
| **brother-in-laws** | 67:21, 68:1, | 126:6, 126:9 | **city** |
| 115:7 | 68:9, 68:12, | **certificate** | 118:3 |
| **brothers** | 68:16, 68:17, | 134:1, 135:1 | **civil** |
| 115:6 | 74:1, 79:1, | **certified** | 1:7 |
| **brought** | 114:8, 127:6, | 98:19, 131:5 | **claim** |
| 131:9, 131:14 | 127:9, 127:13, | **certify** | 82:10, 120:11, |
| **building** | 127:16, 127:17 | 134:4, 135:2 | 120:13 |
| 112:5, 112:6, | **can't** | **cetera** | **claims** |
| 112:17 | 7:11, 10:5, | 114:6 | 40:3, 57:16, |
| **burning** | 24:20, 26:15, | **chance** | 120:15, 120:18, |
| 27:5 | 30:5, 30:6, | 69:2, 74:19 | 121:13, 121:15, |
| **bus** | 37:9, 45:21 | **changing** | 121:20, 121:22, |
| 62:9 | **cancel** | 119:10 | 122:18 |
| **business** | 36:21 | **charge** | **claytor** |
| 13:7, 65:8, | **cancelled** | 35:2, 35:8 | 4:13 |
| 65:9, 65:10, | 96:17 | **charged** | **clear** |
| 65:17, 113:21, | **cannot** | 126:18, 127:1 | 48:20, 80:13, |
| 113:22, 114:11, | 10:7, 11:10, | **chase** | 89:22, 98:13, |
| 115:21 | 20:2, 20:3, | 90:20, 90:22, | 107:6, 114:9, |
| **buy** | 26:8, 26:9, | 91:1, 91:2 | 127:6 |
| 64:9, 64:12, | 26:13, 44:21, | **check** | **clearly** |
| 64:20, 65:3, | 45:17, 49:7, | 104:8 | 49:12 |
| 65:4, 71:18 | 49:8 | **checks** | **client** |
| **buying** | **capacity** | 91:4 | 25:6 |
| 65:2 | 81:11, 81:12, | **chicago** | **client's** |
| **buys** | 97:14, 120:5, | 114:4 | 23:15 |
| 64:13, 64:15 | 120:6 | **chris** | **coast** |
| **C** | **care** | 11:7, 11:10, | 123:1 |
| **california** | 18:19 | 14:9, 17:19, | **come** |
| 126:10 | **cary** | 18:19, 24:12, | 8:20, 27:15, |
| **call** | 2:9, 98:2, | 25:8, 27:16, | 27:17, 37:11, |
| 38:22, 39:3, | 98:3, 98:6, | 38:7, 38:9, | 85:9, 96:3, |
| 39:7, 39:13, | 99:12, 134:2, | 38:12, 43:12, | 96:19, 97:17, |
| 46:19, 47:7, | 134:17 | 43:19, 43:21, | 120:8 |
| 47:14, 58:1, | **case** | 44:1, 44:18, | **coming** |
| 58:4, 58:8, | 23:15, 82:10, | 44:19, 45:7, | 19:11, 61:1 |
| 58:9, 58:10, | 113:13, 131:14, | 45:14, 45:16, | **comment** |
| 59:13, 59:14, | 134:13, 135:9 | 50:22, 54:2, | 86:7, 86:8, |
| 60:19, 87:4, | **caveat** | 54:16, 68:22, | 86:11, 86:12, |
| 120:12 | 85:10 | 72:5, 97:6, | 86:13, 86:15 |
| **called** | **certain** | 128:21 | **comments** |
| 101:21, 103:3 | 20:9, 48:22, | **christopher** | 54:2 |
| **calls** | 74:9, 75:15, | 3:3, 6:19, | **communications** |
| 33:12 | 76:22, 80:3, | 35:16, 37:11, | 91:21 |
| | 128:11 | 40:21, 42:20, | **companies** |
| | | | 13:20, 19:22, |

95:8, 100:8,
100:22, 101:9,
101:11, 101:13,
103:11, 103:19,
103:20, 103:22,
114:4
**company**
7:20, 9:13,
9:14, 9:16,
10:10, 10:12,
10:14, 10:18,
11:16, 11:19,
13:5, 16:18,
17:4, 17:6,
17:9, 17:10,
17:14, 19:9,
19:10, 20:2,
28:4, 28:8,
31:7, 33:9,
33:11, 34:1,
34:4, 35:12,
40:5, 41:4,
53:9, 54:22,
63:17, 66:14,
67:7, 67:14,
68:2, 68:3,
68:10, 68:14,
68:18, 69:15,
69:16, 69:21,
70:2, 71:19,
71:20, 72:18,
76:15, 79:3,
80:2, 82:9,
82:11, 83:8,
84:5, 85:16,
86:19, 90:11,
94:9, 98:11,
100:6, 101:6,
102:1, 102:18,
103:3, 103:20,
103:21, 104:2,
105:6, 106:3,
106:14, 106:17,
106:21, 108:11,
112:2, 118:7,
118:12, 118:19,
118:22, 119:1,
119:2, 119:5,

119:6, 119:8,
119:10, 119:16,
119:17, 119:22,
120:3, 120:19,
121:16, 122:3,
123:7, 125:11,
127:8, 127:19
**complaint**
44:14, 131:4
**complaints**
44:12
**completely**
37:22, 50:22
**compound**
63:6, 105:8
**conclusion**
33:13, 34:17
**conditioned**
22:6
**condolences**
85:16, 86:1
**conduct**
24:10, 24:17,
24:21, 25:2,
52:9, 60:18
**conducted**
1:14, 2:1
**conscience**
53:11
**consider**
97:8, 97:15
**consistent**
114:2
**construct**
35:9
**construction**
17:3
**contact**
40:4, 40:12,
40:14, 40:22,
42:6, 42:9,
42:15, 84:3,
84:17, 84:20,
85:1, 85:3,
85:22, 87:4,
88:11, 88:19,
118:7, 130:17
**contacted**
40:1

**contempt**
46:7
**continue**
24:5, 45:4,
50:6, 51:12,
53:1, 56:15,
61:17, 96:17
**continuing**
80:11
**contract**
91:3, 92:1,
92:6, 92:9,
92:18, 92:19
**contracts**
91:4, 126:8
**control**
52:11
**copies**
91:2
**copy**
91:16, 115:21,
116:4, 116:13,
131:4, 132:6,
132:16, 132:19,
133:1, 133:3
**corporate**
9:4, 9:6,
10:13, 17:21,
17:22, 21:2,
81:12, 97:5,
125:17, 129:6
**corporations**
95:5, 99:16
**correct**
13:14, 13:18,
28:9, 59:21,
60:3, 64:18,
71:11, 71:20,
73:10, 73:17,
89:2, 90:11,
92:6, 94:9,
98:15, 98:16,
106:1, 108:12,
116:8, 125:15,
125:18, 126:11,
127:9
**correctly**
97:6

**corrigan**
4:13
**could**
10:21, 20:8,
21:1, 27:11,
56:3, 56:17,
77:21, 80:5,
84:22, 85:2,
98:6
**couldn't**
6:13, 8:1
**counsel**
6:7, 15:5,
19:3, 19:6,
20:17, 21:16,
24:19, 29:2,
31:15, 32:15,
48:13, 50:13,
51:19, 57:13,
80:12, 96:12,
97:1, 99:3,
130:17, 130:18,
131:20, 132:9,
133:5, 134:12,
135:7
**country**
67:13, 68:13,
126:21, 127:16,
127:17
**couple**
16:11
**course**
115:21, 117:4
**court**
1:1, 4:5, 7:7,
7:11, 19:3,
19:6, 24:19,
32:2, 32:6,
32:9, 32:13,
44:20, 45:15,
47:20, 48:1,
48:3, 48:14,
48:20, 49:6,
49:7, 50:13,
50:17, 50:21,
51:19, 53:12,
54:15, 58:22,
59:4, 59:5,

59:8, 59:10,
69:11, 69:13,
93:13, 93:15,
95:14, 95:20,
97:21, 98:1,
98:2, 99:3,
99:9, 99:10,
121:7, 121:11,
131:2, 131:20,
132:4, 132:9,
132:14, 132:18,
133:4, 134:1
**cramer**
1:8, 4:2, 41:5,
58:10, 59:14,
62:5, 62:16,
62:18
**crashed**
62:9
**criminal**
55:16, 126:19,
126:20
**cst**
1:16
**current**
55:15, 119:5,
119:6, 119:10
**currently**
63:5, 66:6
**customer**
120:12
**cutting**
58:20

**D**

**dancigers**
4:4
**danger**
108:7
**daniel**
1:8, 4:2
**date**
92:19, 96:20,
96:22, 97:2,
117:10
**davidow**
2:9, 134:2,
134:17

**dawson**
4:4
**day**
20:9, 57:21,
117:16, 118:8
**dc**
3:7
**dead**
21:18, 48:17
**deal**
115:3
**dealing**
114:22
**deceased**
21:18
**december**
6:22, 39:18,
117:12, 118:8,
120:16, 120:19,
121:13, 121:16
**dedicated**
114:1
**defendant**
1:10, 3:10,
4:2, 4:10
**defer**
99:22
**deficiencies**
108:7
**degree**
78:20
**delineated**
15:7
**deliveries**
126:8
**delta**
119:19
**department**
40:3, 57:16,
58:9, 59:13,
128:6, 128:8
**depends**
65:3
**deposed**
7:6, 81:7
**deposition**
1:13, 2:1, 7:5,
9:11, 16:2,

17:21, 17:22,
18:11, 19:12,
19:15, 19:17,
20:6, 20:14,
21:3, 21:14,
22:3, 22:14,
24:11, 24:17,
24:22, 25:2,
26:10, 35:4,
35:22, 36:2,
36:4, 36:11,
36:22, 37:12,
44:9, 45:3,
46:22, 47:9,
49:20, 50:2,
51:4, 51:8,
52:8, 52:10,
52:20, 53:3,
53:5, 53:22,
56:16, 61:17,
62:7, 80:7,
81:20, 82:3,
82:6, 96:15,
96:18, 96:20,
96:22, 97:5,
97:17, 113:12,
129:6, 129:21,
130:17, 130:19
**designed**
94:15
**designee**
46:13
**despite**
20:19, 22:15
**details**
62:1, 84:18
**died**
22:7, 116:11
**different**
13:10, 13:12,
13:17, 79:3
**difficult**
58:20
**digital**
134:8, 135:3
**direct**
26:9, 26:13,
26:15, 26:18,

26:20, 45:17,
45:21, 48:10,
49:8, 49:9,
49:12, 49:21,
51:5, 53:6,
53:7, 80:12
**directed**
43:4, 43:11,
43:15, 45:6,
46:3, 46:14,
48:4, 49:11,
49:13, 55:7,
97:11
**directing**
20:18, 36:13,
36:15, 44:17,
48:19, 49:10,
53:8, 55:4,
55:21
**directly**
28:3, 116:21,
117:5
**director**
35:21
**discovery**
52:17
**discussion**
96:12
**discussions**
30:18
**district**
1:1, 1:2
**division**
1:3
**doctored**
41:5
**doctoring**
40:7, 42:13,
45:22, 46:1,
53:7, 55:1
**documented**
80:4
**documents**
42:12, 42:13,
110:17, 115:15,
115:18, 115:19,
115:20, 117:3,
117:4, 131:10

| | | | |
|---|---|---|---|
| **doing** 25:3, 45:19, 114:5 | 121:14 **electronic** 132:6 | **etran** 132:17 | **extent** 90:5 |
| **done** 52:7, 53:13, 60:7 | **electronically** 98:9 | **even** 97:13, 116:12 | **F** |
| **door** 74:20 | **else** 64:18, 74:4, 107:13, 108:2, | **ever** 60:16, 60:18, 62:6, 62:7, | **fact** 18:10, 20:6, 20:19, 22:6, |
| **double** 119:15 | 114:10, 132:18 | 62:18, 65:20, 82:4, 84:3, | 22:16, 40:5, 53:6, 81:6 |
| **down** 7:8, 44:21, 70:8 | **embarrassment** 52:19, 53:4, 53:10 | 88:11, 93:21, 109:5, 109:6, | **facts** 42:3, 54:7 |
| **drive** 77:14, 112:3, | **employed** 62:16, 134:12, | 116:4, 117:7, 126:18, 128:5 | **fair** 78:15 |
| 122:4, 122:5, 122:12 | 135:8 | **every** 22:1, 23:16, | **fairly** 90:18 |
| **driver** 58:10, 59:14, | **employee** 10:16, 28:3 | 65:2, 106:21, 119:10 | **fall** 129:15 |
| 73:10, 73:18, 73:20, 74:4, | **employees** 10:9, 10:14, | **everybody** 131:17, 131:22 | **falsified** 41:4 |
| 77:13, 77:21, 80:5 | 10:17, 17:16, 79:13, 79:22, | **everything** 20:15, 76:17, | **falsifying** 40:7, 42:12, |
| **drivers** 40:8, 41:5, | 80:20, 125:17 | 85:12, 104:13, 104:16, 111:8, | 42:13, 55:1, 128:9 |
| 73:8, 74:8, 75:15, 76:21, | **end** 44:9, 133:6 | 111:11, 111:12, 111:13 | **families** 84:4, 85:22 |
| 79:7, 79:14, 114:1, 126:6, | **engage** 54:14 | **exact** 59:1, 63:19 | **family** 113:19, 114:11, |
| 128:9, 128:11 | **engaged** 28:7 | **exactly** 66:5, 89:22, | 114:19, 115:3 |
| **duly** 6:4 | **enough** 38:3, 71:18 | 105:9, 107:6, 123:16, 123:17 | **family-owned** 113:20, 113:21, 114:10 |
| **E** | **entered** 28:17, 28:19, | **examination** 5:2, 6:7 | **far** 81:8 |
| **e-mail** 98:18, 110:17, | 92:14, 92:16 | **examined** 6:6 | **fastest-growing** 114:3 |
| 116:18, 131:6 | **entitled** 9:15, 14:19, | **exhibits** 5:7 | **february** 8:19 |
| **easily** 10:21, 84:22 | 46:12, 46:15, 112:15 | **expenses** 87:12, 87:21 | **felony** 126:19 |
| **east** 3:15 | **entity** 13:12, 13:17 | **experts** 101:19, 101:22, | **few** 83:9, 113:22 |
| **eastern** 1:2 | **especially** 26:10, 26:17 | 103:5 | **fifth** 55:13, 55:14, |
| **echo** 29:22, 30:3, | **esquire** 3:3, 3:12, | **explain** 23:1 | 56:2, 56:8, 129:13, 129:17 |
| 30:9, 30:16, 119:19 | 3:13, 4:3, 4:12 | **express** 56:9, 84:4 | **file** 111:14, 131:13 |
| **either** 81:14, 120:16, | **et** 1:9, 114:6 | **extensive** 94:8 | **filed** 82:18, 98:9, |
| | **ethics** 114:2 | | |

98:10
**files**
111:15, 111:16
**financial**
102:17, 134:14,
135:9
**find**
14:17, 19:12,
56:22, 57:7,
57:10, 57:14,
58:9, 58:10,
59:13, 59:14,
61:20, 61:22,
62:1, 62:3, 62:7
**finding**
38:6, 38:8
**fine**
9:22, 38:20,
44:6, 44:8,
46:20, 49:3,
50:3, 51:9,
60:10, 61:3,
61:4, 97:19,
98:20, 99:1,
131:12
**finish**
38:9, 38:14,
38:17, 53:3,
96:18, 96:20,
97:2
**finished**
45:8
**first**
6:4, 63:7,
63:9, 70:9,
70:19, 70:21,
79:1, 82:6,
95:11, 122:20,
131:22
**fitzpatrick's**
98:7
**five**
8:11, 27:11,
70:22, 71:9,
83:10, 83:15
**florida**
126:10
**focused**
15:4, 15:9

**focusing**
89:16
**follow**
20:5, 23:5
**follows**
6:6, 32:14,
59:12, 69:14,
93:16, 99:13,
121:12
**forcing**
128:10
**foregoing**
134:3, 134:5,
135:4
**foremost**
131:22
**forgot**
69:9
**form**
12:22, 33:14,
34:18, 40:9,
40:17, 42:3,
55:2, 62:12,
66:5, 75:21,
78:1, 78:16,
79:11, 81:9,
82:13, 89:21,
99:20, 105:7,
107:1, 107:14,
118:15, 120:21
**forward**
47:19, 49:19,
50:1, 51:3,
51:7, 97:3
**found**
62:4, 97:9
**founded**
113:21, 114:11,
127:20
**four**
27:11, 38:4,
71:11, 71:19,
72:16, 72:18
**freightliner**
110:3, 110:5,
110:7, 110:8,
111:1, 111:2
**freightliners**
64:7

**friday**
1:15
**front**
91:16
**frustrating**
19:19, 21:12
**full**
6:10, 6:12,
29:18
**fully**
95:11, 134:5
**funeral**
87:12
**further**
34:19, 74:17,
130:19
**futrell**
1:5, 3:2, 6:8,
6:21
**futrell's**
4:11
**future**
106:15, 106:16,
130:17

**G**

**game**
49:2
**gave**
38:2, 116:17
**general**
29:2, 31:14,
32:15, 76:5,
76:16, 77:12,
79:2
**generally**
107:8
**generated**
71:18
**gentleman**
15:9
**georgia**
126:10
**getting**
21:16, 22:4,
47:6, 54:17,
61:8, 78:9,
131:2

**give**
29:12, 43:9,
66:22, 73:4,
116:21, 117:5,
119:12, 124:1
**given**
51:11, 56:14,
81:20, 91:22
**gives**
90:3, 93:9,
109:16, 110:2,
121:3, 122:9
**giving**
15:19, 22:9,
22:13, 50:5
**go**
11:2, 11:5,
14:19, 15:20,
21:6, 23:12,
27:14, 28:21,
29:17, 41:17,
42:1, 46:19,
47:10, 48:22,
49:12, 49:19,
50:1, 50:5,
50:9, 51:3,
51:7, 51:10,
51:15, 52:22,
53:2, 69:7,
72:11, 74:17,
89:13, 95:17,
97:3, 98:4,
98:6, 115:12,
122:22, 123:9,
130:2, 131:15,
131:17
**going**
9:10, 14:22,
17:19, 18:9,
19:16, 20:16,
23:22, 24:3,
25:1, 26:4,
26:5, 27:8,
30:17, 31:5,
32:10, 34:10,
35:20, 36:3,
37:5, 37:8,
38:13, 38:15,

38:18, 39:14,
43:20, 44:12,
44:22, 46:18,
48:9, 49:19,
50:1, 51:3,
51:7, 52:5,
54:13, 59:6,
60:5, 61:1,
61:14, 61:16,
63:20, 69:1,
70:17, 71:15,
72:7, 77:22,
89:5, 91:11,
91:12, 91:20,
94:12, 94:18,
95:11, 96:19,
97:3, 104:10,
104:11, 104:13,
114:15, 118:13,
118:15, 126:14,
129:7, 130:1,
130:14, 130:16,
131:6, 131:8,
131:9, 131:12,
132:1
**gone**
56:13
**good**
95:16
**gotten**
84:22, 85:2
**great**
114:2
**greenland**
1:22, 135:2,
135:15
**guess**
43:3
**guy**
9:21
**guys**
11:17, 52:12,
52:14, 130:1

**H**

**half**
68:15, 68:19,
69:18, 96:14,

97:17, 99:7,
130:15
**handbook**
80:4
**hands**
85:21, 86:16
**happened**
6:22, 10:6,
15:10, 25:6,
50:18, 58:11,
59:15, 60:2,
62:11, 63:2,
117:11, 117:13,
117:22, 119:7
**happens**
19:14, 19:15
**happy**
53:20
**hard**
114:2, 121:9,
132:6
**harmon**
4:13
**hat**
128:14
**hats**
20:19, 21:1
**head**
7:12, 71:2,
104:8
**hear**
6:13, 7:15,
7:17, 8:1,
11:10, 16:22,
24:20
**heard**
16:13, 95:14
**hearing**
124:5
**helped**
32:18
**here**
11:11, 11:13,
13:22, 14:5,
14:17, 15:11,
15:20, 24:4,
37:7, 37:11,
50:6, 50:20,

51:11, 55:15,
59:10, 61:9,
68:16, 74:1,
95:1, 96:15,
112:16, 116:9,
117:8, 133:2
**here's**
43:12, 49:14
**hereby**
134:4, 135:2
**hey**
112:14
**hide**
83:3
**history**
108:6, 109:7
**hold**
128:21, 131:20
**honest**
8:8, 71:2,
81:18, 83:1
**hour**
27:9, 37:20,
96:13, 96:14,
97:8, 97:17,
99:7, 130:15
**hours**
27:11, 38:4,
40:7, 41:5,
77:7, 77:18,
79:6, 128:11,
130:6
**hundred**
13:20, 21:1
**hundreds**
63:22, 64:3,
64:4, 102:15,
102:16

**I**

**i-e-d**
119:15
**identified**
127:9
**illinois**
2:10, 11:18,
13:14, 30:22,
112:3, 134:18

**importance**
74:7, 74:8
**important**
19:13, 36:20,
54:18
**impossible**
123:22
**improper**
18:20, 52:8
**inappropriate**
54:9, 54:13
**incident**
6:21, 39:17,
40:2, 57:1,
61:21, 82:11,
84:3, 88:13,
89:19, 111:6,
115:16, 117:11,
117:22, 119:7,
120:3
**include**
79:14
**included**
10:22
**including**
41:5, 128:7
**incorporated**
10:18
**incriminate**
56:3
**india**
30:16, 119:19
**indifferent**
21:6
**individually**
97:14
**inform**
62:6
**information**
9:13, 10:21,
19:12, 19:21,
29:12, 43:9,
44:5, 48:14,
48:15, 49:7,
77:12, 79:2,
84:20, 85:1
**injured**
9:15, 21:17,

22:7, 48:18,
81:22, 87:22,
116:11
**inspect**
106:3
**inspected**
106:13, 111:8,
111:11, 111:12
**inspecting**
108:5
**inspection**
106:20
**inspections**
106:16
**instance**
55:20
**instruct**
25:19, 26:7,
29:15, 60:5,
66:20, 71:15,
72:7, 79:19,
80:16, 81:2,
86:17, 89:5,
90:2, 93:8,
94:12, 94:18,
95:11, 100:1,
100:11, 101:3,
108:17, 113:15,
114:15, 114:22,
124:2, 126:14,
128:2, 129:2,
129:7
**instructed**
16:8
**instructing**
16:11, 17:20,
22:15, 55:18,
56:7, 56:11,
88:16, 129:9,
129:18
**insurance**
118:7, 118:11,
118:19, 118:22,
119:1, 119:16,
119:17, 119:22,
120:2, 120:19,
121:16
**interest**
102:17, 134:13,

135:9
**interject**
97:7
**intermittent**
94:22
**intermixed**
93:21, 94:22
**intermixing**
95:3, 99:15
**interrupt**
16:2, 41:18,
41:22, 52:4,
69:3, 69:6
**interrupting**
41:19
**introduce**
6:18
**invades**
31:18, 34:19,
86:21
**invest**
67:22, 68:1,
69:20, 70:1,
70:9, 70:19,
70:21
**invested**
68:14, 69:16,
71:10, 71:12,
72:14, 72:17,
72:19
**investigate**
40:5
**investigated**
128:6, 128:15
**investigation**
41:7, 46:1,
48:16, 53:7,
54:21, 55:16,
57:22, 60:19,
129:5
**investigations**
128:10
**investment**
68:20, 68:21
**investor**
64:17
**investors**
125:16

**invoking**
55:12, 129:12,
129:17
**involve**
75:10, 75:13
**involved**
15:18, 27:21,
28:2, 31:4,
31:6, 55:15,
65:7, 65:8,
65:17, 89:18,
104:17, 115:6
**involves**
72:6
**involving**
126:20
**irrelevant**
99:19, 100:11,
113:11, 114:21,
128:18
**issue**
106:19, 106:20
**issues**
30:20
**itself**
20:1, 113:10

**J**

**j-a-m-i-e**
29:20
**james**
30:15
**jamie**
29:7, 29:9,
29:20, 30:10,
30:14, 30:17,
30:18, 30:21,
31:4, 34:12
**jamie's**
29:9
**job**
1:20, 25:4,
79:1
**joke**
54:3, 54:13
**judge**
19:17, 24:4,
38:16, 38:19,

39:3, 39:7,
39:13, 44:10,
46:19, 47:7,
47:21
**june**
1:15, 135:16
**justice**
19:20, 21:13,
50:12, 51:18

**K**

**keep**
12:7, 23:21,
23:22, 24:3,
37:18, 58:20,
58:21, 105:21,
119:10, 120:7
**kept**
115:15, 115:20
**killed**
9:14, 81:21
**killing**
62:9
**kind**
17:5, 77:7,
90:8
**knew**
75:14
**know**
7:2, 7:4, 16:5,
16:6, 18:10,
19:11, 21:16,
22:11, 32:4,
33:8, 33:20,
37:19, 49:6,
62:10, 63:20,
65:4, 68:10,
71:3, 76:4,
76:5, 76:16,
77:14, 77:16,
77:17, 83:2,
83:18, 83:22,
84:2, 84:18,
86:7, 86:15,
87:9, 90:5,
92:21, 97:22,
98:8, 104:5,
106:16, 111:2,

111:12, 111:13,
118:2, 118:14,
118:17, 120:11,
121:4, 121:5,
121:22, 123:3,
123:4, 123:6,
123:8, 123:10,
123:12, 124:11,
124:17, 124:19,
124:22, 125:1,
125:3, 126:6,
126:9, 130:10,
130:13, 130:22
**knowledge**
15:10, 15:14,
15:17, 20:2,
22:16, 26:10,
26:12, 26:18,
26:20, 27:10,
27:20, 45:22,
48:18, 53:6,
53:8, 54:20,
78:13, 78:14,
97:13, 134:10,
135:6
**knows**
82:22

**L**

**l-a-k-e**
30:2
**l-a-n**
30:3
**lake**
30:2
**lane**
29:21, 30:4,
30:10, 31:4,
34:12
**large**
94:9
**last**
29:9, 29:21,
32:10, 32:11,
42:21, 67:5,
67:13, 98:7,
121:8
**late**
130:13

**later**
48:6, 63:5,
71:19, 72:17,
72:18, 96:19,
97:18, 120:8,
130:12
**latitude**
9:15
**law**
40:6, 53:12
**lawsuit**
48:16
**lawsuits**
82:18, 83:5,
83:17
**learn**
76:20
**learning**
77:19
**lease**
27:20, 28:7,
28:17, 28:19,
32:19, 32:22,
33:2, 33:10,
33:21, 33:22,
62:21, 63:3,
63:5, 63:14,
63:18, 91:3,
91:5, 91:15,
91:18, 91:22,
92:5, 92:7,
92:10, 92:11,
92:14, 92:16,
92:17, 92:20,
100:21, 101:8,
102:14, 103:12,
104:18, 105:2,
105:6, 106:1,
106:2, 106:13,
107:10, 108:4,
109:5, 115:5,
122:4, 122:22,
124:16
**leased**
9:14, 90:11,
109:3, 109:9,
109:20
**leases**
13:6, 31:16

**leasing's**
93:5, 93:17,
120:5, 123:11
**leaves**
131:22
**lee**
4:2
**leeway**
50:6, 51:11,
56:14
**left**
85:4, 85:12,
85:21, 86:16
**legal**
33:8, 33:12,
33:20, 34:7,
34:9, 34:13,
34:16
**lemon**
29:21, 30:7,
119:18
**less**
65:4, 127:18
**let's**
46:22, 52:22,
53:2, 55:10,
56:19, 63:7,
66:21, 73:20,
119:6, 120:16,
121:14, 132:12
**licensed**
30:21
**lie**
63:20
**life**
82:4
**limited**
36:16
**line**
47:16, 50:22,
132:18
**listed**
9:11
**listen**
13:21, 18:22,
38:15, 38:19,
43:22, 44:22,
45:2, 52:5

**lithuania**
8:14, 8:15,
65:18, 65:21,
66:12, 67:6,
67:13, 126:21
**little**
96:14
**llc**
3:11, 4:11,
12:14, 13:5,
101:19, 101:22
**local**
128:7
**locating**
99:10
**logbooks**
42:13, 46:1
**logistic**
114:4
**logistics**
12:9, 12:11,
40:3, 57:17,
101:19, 101:22,
103:4, 103:5
**logs**
53:7
**long**
8:6, 23:20,
27:2, 65:7,
68:13, 69:15,
77:21, 80:5,
110:10
**look**
8:9, 8:11,
71:1, 92:10,
92:21, 102:15,
119:9
**looked**
116:7
**lot**
50:6, 51:11,
76:15, 111:3,
126:7, 131:10

**M**

**macfarlane**
4:12, 132:21,
133:2

**made**
28:6, 82:10,
91:5, 98:13,
120:15, 120:18,
121:13, 121:15,
122:1, 127:18
**mail**
98:19, 131:5
**main**
3:15
**maintained**
106:21
**maintenance**
105:1, 105:5,
105:16, 105:18,
106:15, 107:5,
107:6, 107:13,
107:18, 109:6
**major**
31:15, 32:16,
33:10, 34:4
**make**
13:1, 21:21,
26:2, 26:4,
26:14, 32:18,
32:22, 37:9,
43:20, 44:11,
44:15, 47:13,
60:16, 66:6,
71:2, 73:20,
83:1, 85:8,
104:1, 106:10,
120:11, 131:13
**makes**
13:3, 23:7
**making**
41:16, 44:2,
44:13, 54:11,
61:11
**man**
30:12, 30:13
**managers**
76:15
**manuals**
76:8, 76:14
**manufactured**
110:5
**manufactures**
64:5

**many**
8:10, 9:3,
10:9, 17:15,
17:16, 62:21,
63:3, 63:4,
63:14, 63:18,
64:2, 64:20,
79:6, 79:22,
80:20, 82:18,
83:5, 91:15,
102:1, 102:11,
102:14, 120:15,
120:18, 121:13,
121:15, 121:20,
121:22, 122:15,
122:17, 122:18,
122:20
**marked**
5:7, 48:4,
49:15
**marketing**
35:2, 35:8,
35:21
**matter**
54:18, 126:20
**maybe**
7:5, 8:11,
20:4, 65:5,
68:18, 70:22
**mckenry**
4:4
**mean**
11:3, 13:9,
14:9, 17:5,
17:10, 17:13,
23:9, 32:17,
56:8, 57:2,
62:1, 62:4,
63:1, 64:13,
65:1, 69:6,
76:3, 81:11,
91:19, 92:17,
93:19, 102:11,
104:8, 106:4,
106:12, 106:14,
106:19, 107:4,
107:5, 107:17,
108:2, 109:4,

109:9, 109:17,
111:8, 111:9,
111:16, 116:2,
116:15, 116:22,
119:3, 119:5,
120:4, 120:10,
120:11, 122:18,
125:4
**medical**
87:20
**meet**
62:18
**meetings**
36:18, 36:20,
130:7, 130:12
**members**
114:11, 114:18,
115:3
**met**
62:19
**midnight**
117:19
**might**
19:13, 124:1
**miller**
19:17, 39:3,
39:7, 44:10,
46:19, 47:7,
47:21
**mind**
110:18
**minute**
38:7, 41:12,
41:14, 43:16,
44:18, 45:7,
45:8, 72:5,
74:14, 78:6,
80:8, 80:10,
85:5, 121:1
**minutes**
95:17, 95:18,
97:4
**mischaracterizes**
123:21
**mischaracterizing**
71:22, 72:4,
73:13, 123:15,
124:7

**misdemeanor**
126:18
**miss**
97:16
**missouri**
126:10
**misstates**
42:3
**mistaken**
119:11
**monday**
131:2, 132:8
**money**
67:22, 68:4,
68:10, 69:20,
70:1, 71:18,
89:15, 104:1,
126:7, 126:8
**more**
8:11, 14:10,
21:20, 39:1,
39:2, 39:4,
39:9, 42:21,
48:8, 56:14,
60:7, 65:4,
83:10, 83:14,
103:16, 103:19,
103:20
**morgan**
3:4, 6:20
**most**
114:4
**mother**
30:15
**motion**
53:17, 131:13
**move**
10:2, 28:11,
29:5, 29:10,
31:10, 31:19,
33:4, 33:17,
35:14, 39:9,
40:15, 40:19,
42:4, 42:18,
47:19, 48:6,
48:7, 55:11,
56:19, 61:15,
66:21, 67:16,

68:6, 69:5,
70:12, 71:7,
72:1, 72:9,
73:4, 75:3,
75:18, 77:3,
78:19, 79:11,
85:10, 86:3,
86:22, 87:17,
88:4, 88:15,
90:2, 90:17,
91:7, 93:9,
94:3, 101:17,
102:8, 103:1,
103:8, 103:14,
104:4, 108:16,
109:16, 110:2,
110:14, 111:20,
113:6, 113:14,
115:9, 121:2,
122:9, 124:1,
124:20, 126:1,
131:13
**moving**
29:16
**much**
27:7, 69:20,
70:1, 104:1
**multiple**
96:16, 108:21
**must**
93:1
**myself**
6:18, 10:11,
10:16, 35:6

**N**

**name**
6:10, 6:12,
6:14, 6:19,
29:9, 29:18,
29:21, 58:13,
97:22, 118:11
**names**
101:11, 101:13
**nancy**
30:3, 30:9
**national**
94:9

**nationally**
122:5
**necessarily**
13:1, 14:21
**necessary**
23:7, 106:4
**need**
8:8, 8:11,
10:1, 13:21,
13:22, 14:1,
14:3, 15:3,
15:9, 24:4,
58:4, 71:1,
75:1, 87:3,
92:10, 95:16,
102:15, 104:8,
111:4, 119:9,
132:1, 132:6,
132:7, 132:19,
133:1, 133:3
**needed**
69:7
**needs**
77:14
**neither**
134:11, 135:7
**never**
67:4, 78:21,
82:3, 92:4,
94:21, 95:3,
99:14, 116:3,
116:7, 116:12,
116:20, 117:1,
117:5, 127:1
**new**
97:2
**newport**
1:3
**news**
1:3
**next**
55:11, 56:1,
56:5, 56:19,
61:5, 68:22,
75:4, 80:17,
81:3, 89:6,
94:12, 94:18,
95:12, 100:2,

100:13, 100:19,
113:6, 113:17,
114:16, 115:1,
126:15, 128:2,
129:11, 130:7
**night**
117:16, 117:17,
117:20
**nine**
65:11, 68:15
**nobody**
9:8, 40:12,
40:21, 40:22,
42:6, 64:18
**nods**
7:12
**none**
10:16
**northeast**
124:18
**northwest**
124:18
**notary**
2:9, 134:1,
134:18
**note**
69:7, 75:1
**nothing**
6:5, 36:15,
52:7, 53:13,
62:13, 83:2,
84:18, 111:10,
123:8
**noticed**
11:17
**november**
29:22
**number**
63:19, 71:3,
83:2, 109:5
**numbers**
121:20
**nw**
3:5

**O**

**oath**
41:11, 41:13,

41:15, 43:8,
46:4, 49:17,
51:1
**object**
9:10, 10:19,
12:21, 14:22,
33:14, 34:18,
40:9, 42:3,
55:2, 62:12,
66:3, 66:4,
69:1, 69:2,
69:4, 74:18,
74:19, 75:2,
75:20, 77:22,
79:11, 79:17,
81:9, 81:10,
82:13, 82:14,
89:21, 99:18,
99:19, 105:7,
107:14, 109:14,
113:8, 118:15,
120:21, 123:14
**objecting**
78:16, 78:17
**objection**
10:1, 10:19,
10:20, 11:8,
11:20, 12:17,
16:19, 17:17,
26:2, 26:4,
26:14, 28:10,
28:20, 29:4,
29:10, 31:9,
31:17, 33:3,
33:12, 34:2,
34:6, 34:16,
35:3, 35:10,
35:13, 36:1,
37:9, 40:9,
40:17, 40:18,
41:9, 41:16,
41:18, 42:17,
55:2, 60:4,
60:20, 61:12,
63:6, 64:21,
66:3, 66:15,
67:8, 67:15,
68:5, 69:7,

70:3, 70:11,
71:5, 71:13,
71:21, 73:2,
73:12, 75:1,
75:8, 75:11,
75:17, 76:11,
77:1, 79:8,
79:10, 80:14,
80:22, 82:1,
82:20, 83:11,
83:19, 84:6,
84:9, 84:15,
85:6, 85:8,
85:18, 86:2,
86:20, 87:16,
88:1, 88:14,
89:3, 89:10,
89:20, 90:15,
91:6, 93:7,
94:2, 94:10,
94:16, 95:6,
99:22, 100:10,
101:1, 101:14,
102:2, 102:22,
103:7, 103:13,
104:3, 107:1,
107:21, 108:14,
110:1, 110:13,
111:19, 114:13,
114:20, 115:8,
120:20, 122:7,
122:14, 124:14,
124:20, 125:19,
126:12, 127:11,
127:21, 128:17
**objections**
16:5, 22:10,
22:14, 23:21,
25:12, 41:22
**obstruct**
19:17, 24:5,
26:1, 26:9,
53:21
**obstructed**
24:5
**obstructing**
24:1, 24:4,
27:10, 50:8,

50:12, 51:14,
51:18, 52:15
**obviously**
127:22, 131:9
**occurred**
111:6, 128:8
**occurs**
90:13
**offer**
85:15, 85:22,
86:18, 87:11
**offered**
87:20
**office**
74:5, 74:6,
111:17, 111:18
**officer**
45:13, 48:14,
48:19, 49:5,
50:21, 54:15,
102:17, 134:2
**officers**
9:4, 9:6,
10:13, 125:17
**oh**
10:8, 11:14,
58:15, 87:14,
128:19
**ohio**
126:10
**once**
7:19, 14:21,
15:12, 26:1,
36:3, 40:17,
47:1, 56:14,
60:7, 77:22,
99:17, 106:13,
108:16, 108:18,
131:3
**one**
19:7, 24:20,
25:13, 39:1,
39:2, 39:4,
39:9, 42:21,
44:20, 50:7,
50:11, 50:14,
50:17, 51:13,
51:17, 51:20,

63:7, 65:3,
65:4, 69:17,
69:18, 71:18,
72:13, 74:14,
92:4, 97:8,
100:2, 103:21,
109:6, 114:3,
119:11, 119:12,
132:4
**only**
9:21, 10:11,
10:12, 10:16,
21:3, 28:3,
46:21, 62:8,
64:16, 64:17,
70:14, 75:15,
88:17, 91:3,
93:2, 96:13,
97:8, 104:12,
112:8, 125:7,
125:9
**opened**
74:20
**operate**
106:11, 124:17,
126:9
**order**
78:14, 96:17
**ordering**
132:1, 132:3
**orders**
132:1
**other**
65:9, 67:13,
81:7, 81:22,
82:10, 100:8,
100:22, 101:8,
101:9, 103:11,
103:20, 105:6,
106:17, 108:3,
110:22, 114:18
**otherwise**
63:20, 134:14,
135:10
**out**
14:17, 19:12,
36:22, 37:3,
38:8, 39:8,

50:22, 52:11,
56:22, 57:7,
57:10, 57:14,
58:9, 58:10,
59:13, 59:14,
61:20, 61:22,
62:1, 62:3,
62:4, 62:7,
97:9, 104:8,
110:18
**outcome**
134:14, 135:10
**outline**
97:6
**over**
16:4, 24:20,
44:20, 50:14,
51:20, 56:14,
60:11, 67:5,
67:12, 91:13,
110:17, 114:1,
114:8
**overnight**
98:21, 98:22
**own**
10:12, 16:17,
17:3, 17:7,
17:9, 36:12,
64:6, 114:19
**owner**
42:6, 58:6,
59:19, 64:16

**P**

**page**
5:2
**pages**
1:21, 91:15
**papers**
41:3
**part**
9:11, 10:22,
31:15, 32:16
**particular**
89:18, 113:12,
115:16
**parties**
85:2, 134:13,

135:8
**party**
4:11, 131:14
**patrick**
58:17
**pause**
11:9, 29:19,
119:13
**pay**
87:12, 87:20
**paying**
126:7
**pc**
3:14, 4:4
**penalties**
43:8
**pennsylvania**
3:5
**people**
9:14, 21:18,
22:7, 37:20,
48:17, 62:10,
81:21, 81:22,
87:21, 116:11
**percent**
119:15
**perjury**
43:8
**permit**
79:6
**person**
21:17, 34:12,
62:19, 93:2,
125:7, 125:9
**personal**
81:11, 129:5
**personally**
57:2, 57:4,
128:5, 128:12,
128:15, 129:20
**perspective**
123:11, 123:12
**pertinent**
15:10, 19:21,
23:11, 26:10,
26:11, 48:15,
48:16, 49:6
**phone**
19:18, 29:18,

38:16, 44:10
**place**
39:18
**plaintiff**
1:6, 3:2, 3:10,
6:7, 6:20, 96:21
**play**
49:2, 59:6
**please**
7:1, 7:3, 8:1,
15:5, 16:2,
16:3, 18:21,
24:6, 24:8,
24:14, 24:21,
25:10, 26:1,
27:3, 32:13,
37:5, 45:11,
53:1, 53:17,
53:21, 53:22,
59:1, 59:4,
59:10, 69:13,
91:14, 99:5,
99:11, 108:1,
121:8, 121:11,
132:4, 132:17
**plus**
78:8
**point**
11:6, 17:19,
39:12, 44:9,
48:9, 108:22,
113:13, 113:17
**police**
40:4, 54:21,
58:9, 59:13,
88:11, 88:19,
88:20, 115:22,
116:4, 116:7,
116:13, 116:21,
117:5, 117:7,
117:9, 128:6,
128:7
**pontificating**
25:10, 25:11,
25:14, 54:10
**position**
6:15, 7:19,
20:22, 22:20,

23:2, 31:15
**possess**
97:13
**potentially**
56:3
**preceded**
22:6
**prepared**
135:3
**president**
6:17, 7:21,
8:6, 8:7, 9:7,
9:17, 12:9,
12:10, 12:13,
13:4, 13:5,
13:16, 13:18,
13:19, 18:14,
18:18, 19:8,
19:9, 19:10,
20:20, 20:21,
22:21, 28:8,
28:18, 33:10,
33:11, 33:21,
34:1, 34:5,
38:11, 42:10,
42:14, 53:9,
57:5, 58:5,
59:20, 60:3,
60:9, 60:15,
61:7, 61:20,
62:22, 64:16,
72:22, 80:2,
100:7, 108:12,
115:4, 115:16,
116:13, 119:1,
123:7, 126:5,
128:14
**pretty**
48:21
**previous**
72:1
**pride**
114:5
**prior**
71:10, 71:11,
99:22, 100:1,
110:11, 120:19,
121:16

**privilege**
31:19, 34:19,
86:22
**privileged**
30:20
**problem**
8:1, 8:3,
18:15, 46:20
**procedures**
20:5, 105:1
**proceed**
99:4
**proceeding**
113:13, 135:4
**proceedings**
134:3, 134:5,
134:6, 134:9,
135:6
**process**
98:14
**produce**
130:19, 131:12
**produced**
131:10
**production**
91:12
**properly**
124:6
**proposed**
98:9
**provide**
43:9, 72:9,
72:13
**provided**
46:11
**pta**
77:16
**public**
2:10, 17:8,
134:1, 134:18
**publicly**
17:10, 17:14,
20:1
**pursuant**
2:9, 96:20
**put**
21:5, 104:14
_____
**Q**
_____
**qualified**
134:7

**questions**
7:1, 7:2, 14:3,
14:5, 15:1, 15:1,
15:3, 15:9,
15:22, 17:20,
18:5, 19:18,
20:18, 23:10,
25:17, 26:22,
27:3, 27:6,
27:16, 27:18,
36:17, 37:6,
37:8, 39:15,
41:21, 45:4,
48:7, 48:8,
48:10, 48:22,
49:10, 49:18,
50:5, 51:2,
51:11, 54:6,
56:15, 60:11,
60:22, 61:18,
70:14, 78:12,
87:8, 97:12
**quickly**
74:18
**quite**
55:17, 66:5,
83:9

                **R**
**re-ask**
11:7
**reach**
44:11
**read**
32:3, 32:7,
32:10, 32:11,
32:14, 59:1,
59:12, 62:7,
69:12, 69:14,
93:14, 93:16,
95:15, 95:20,
98:7, 99:13,
121:8, 121:9,
121:12
**really**
19:20, 31:22,
32:4, 77:6,
90:7, 93:11,

95:14, 111:3,
130:2, 130:6
**reason**
45:2, 75:4
**receive**
76:10
**received**
89:17
**receiving**
98:10
**recollection**
62:6, 62:8
**record**
6:13, 10:1,
25:22, 32:14,
37:18, 47:11,
49:16, 59:12,
61:9, 69:14,
93:16, 96:7,
96:8, 96:9,
96:11, 99:13,
121:12, 126:17,
134:10, 135:5
**recorded**
134:6
**recording**
133:6, 134:9,
135:4
**records**
40:8, 55:1,
92:12, 92:13,
104:16, 105:16,
105:18, 105:22,
128:9
**reduced**
134:7
**refuse**
37:9, 46:12
**refused**
46:4, 46:5,
48:5, 49:13,
97:11
**refusing**
23:4, 23:10
**regard**
15:13, 66:13,
104:16
**regarding**
19:21, 19:22,

20:1, 20:18,
22:16, 22:18,
22:20, 26:11,
26:12, 31:7,
42:10, 54:21,
54:22, 61:21,
67:6, 67:7,
73:7, 73:8,
74:7, 75:14,
76:21, 77:21,
80:5, 81:21,
82:11, 88:13,
89:12, 90:14,
97:12, 105:1,
105:5, 115:15,
116:2, 120:3,
120:6, 128:8,
128:10
**regards**
72:8, 107:4,
107:5, 113:15,
113:16
**regular**
77:15, 77:17,
115:20
**regulations**
72:22, 74:8,
76:21, 80:3,
80:4, 104:21,
104:22, 105:4,
105:5
**related**
14:19, 134:12,
135:8
**relationship**
11:15, 11:16,
11:19, 12:8,
13:7, 13:8,
13:9, 13:10,
14:18, 97:9
**relationships**
19:22, 26:12
**relatives**
115:7
**relevance**
86:3, 86:22,
87:17, 88:4,
101:14

**relevant**
22:16, 23:14,
100:15, 128:20
**reliable**
114:1
**remember**
8:8, 8:12,
11:6, 63:21,
65:1, 65:3,
71:1, 83:3,
83:5, 83:9,
86:10, 92:22,
108:20, 109:2,
109:4, 109:12,
109:18, 109:20,
109:21, 109:22,
110:12, 110:16,
110:18, 110:20,
110:22, 111:5,
117:10, 117:13,
117:16, 117:18,
117:20, 117:21,
118:3, 121:6,
121:19, 122:10,
122:12
**repeat**
33:18, 58:19,
59:6, 115:18
**repeatedly**
46:4, 49:13
**rephrase**
7:2, 14:14,
73:15, 105:17
**report**
115:22, 116:5,
116:8, 116:14,
117:7, 117:9,
120:12, 120:13
**reporter**
7:8, 7:11,
19:3, 19:6,
24:19, 32:3,
32:7, 32:9,
32:13, 32:14,
44:21, 47:20,
48:1, 48:3,
50:13, 50:17,
51:19, 58:22,

59:4, 59:5,
59:8, 59:10,
59:12, 69:12,
69:13, 69:14,
93:14, 93:15,
93:16, 95:14,
95:20, 97:21,
98:1, 98:2,
99:3, 99:9,
99:10, 99:13,
121:7, 121:11,
121:12, 131:20,
132:4, 132:9,
132:14, 132:18,
133:4, 134:1
**represent**
6:20, 42:22,
113:2
**representation**
81:12, 98:13
**represented**
96:13, 98:12
**representing**
35:17, 42:22,
43:1, 59:22
**request**
92:4, 104:10,
104:11, 104:12,
110:17
**requested**
131:1
**requesting**
104:13, 131:8,
131:10
**research**
111:7
**reserve**
104:11
**respect**
65:22, 68:2,
82:9, 90:10,
91:5, 128:16,
131:11
**respected**
114:4
**respectfully**
99:8
**response**
6:11, 7:7,

7:13, 14:11,
43:10
**responsible**
106:9, 106:15,
106:18, 106:21,
106:22, 107:3,
107:9, 107:12,
107:18, 107:20,
108:2, 108:3,
108:5, 108:9,
108:10
**restrictions**
77:20
**result**
89:17, 96:18,
116:3
**review**
33:2, 109:5,
109:6, 116:14,
117:7
**reviewed**
116:20, 117:1
**reviewing**
31:16
**rhetorical**
14:11
**richmond**
3:18, 4:15
**right**
7:10, 8:4, 8:5,
10:3, 14:20,
15:20, 16:10,
16:15, 19:11,
19:13, 19:20,
20:17, 21:5,
23:3, 23:12,
24:5, 25:9,
25:16, 26:6,
26:8, 26:22,
27:5, 36:19,
37:5, 37:21,
41:17, 41:20,
43:7, 43:13,
44:1, 44:4,
47:3, 47:12,
48:7, 48:12,
52:9, 52:18,
52:21, 53:15,

55:13, 56:8,
61:1, 61:10,
65:14, 65:16,
73:21, 75:5,
78:4, 78:8,
78:10, 82:8,
84:2, 91:16,
96:4, 96:7,
97:20, 99:2,
99:17, 104:11,
106:18, 112:16,
113:5, 120:15,
125:11, 127:5,
129:1, 129:13,
129:16, 129:18,
130:3, 130:8,
130:11, 131:16,
131:18
**road**
40:8, 74:9,
75:15, 76:22,
77:21, 80:6
**romeoville**
11:18, 13:14,
112:3
**routes**
122:21, 124:11
**rude**
130:9
**rule**
7:5, 21:9,
21:11, 49:6
**rules**
23:5, 25:2,
25:6, 52:16,
80:3
**run**
10:14

---
**S**
---

**safe**
106:10
**safety**
72:22, 74:8,
76:4, 76:7,
76:14, 76:17,
76:18, 76:21,
77:6, 77:13,

78:22, 105:4,
105:13, 105:15,
105:18, 105:20,
105:21, 107:4,
107:13, 107:18,
108:7
**said**
9:18, 9:20,
11:3, 16:11,
46:21, 49:12,
57:5, 57:19,
64:16, 68:17,
70:22, 72:4,
72:13, 72:17,
72:19, 74:21,
77:5, 77:9,
77:10, 77:11,
77:12, 86:1,
86:16, 105:13,
105:15, 107:8,
107:9, 111:11,
112:21, 113:2,
117:2, 123:17,
123:19, 123:20,
125:5, 134:8,
134:9, 135:5
**same**
10:19, 11:20,
12:17, 13:13,
16:19, 17:17,
28:20, 29:10,
33:3, 33:22,
34:2, 34:6,
34:14, 34:16,
36:1, 44:21,
55:6, 57:21,
60:4, 60:20,
66:15, 67:8,
71:5, 82:1,
82:20, 83:11,
83:19, 84:15,
101:14, 102:2,
102:22, 103:7,
103:13, 104:3,
107:21, 110:1,
112:5, 112:17,
113:11, 119:16,
122:14, 124:14,

124:20, 125:19
**sanaullah**
3:13
**sands**
3:14
**saved**
68:10
**saw**
117:3, 117:4,
117:9
**say**
8:2, 21:20,
22:2, 65:5,
73:18, 112:20,
120:16, 121:14,
125:4
**saying**
13:17, 19:5,
25:7, 37:1,
38:1, 42:20,
46:2, 112:14,
125:13
**says**
16:6, 113:19,
127:19
**screen**
10:5
**seat**
77:15
**second**
63:12, 119:11,
119:12, 119:19
**seconds**
62:8
**see**
10:5, 10:7
**seems**
14:2, 14:4
**self-incriminati-
on**
55:13, 129:13
**send**
98:17, 98:18,
117:2, 132:17
**sense**
13:1, 13:3,
66:6, 108:5
**sensitive**
30:19

**separate**
93:5, 93:17,
95:2, 99:14,
112:6, 112:7,
112:15, 112:20,
112:21
**serve**
98:11, 131:4
**served**
55:19, 56:13,
96:21
**service**
98:14, 110:10,
120:12
**seven**
15:4
**severally**
21:17
**severely**
48:17, 81:22
**shall**
29:12
**shareholders**
125:16
**shawn**
4:3, 52:1,
52:3, 132:22
**shocks**
53:10
**shot**
61:4, 61:7
**should**
16:6, 16:7,
16:12, 47:4,
97:22, 98:10,
131:2
**shouldn't**
55:10
**sic**
91:4
**signature-mig2k**
135:13
**signature-p1kal**
134:15
**signed**
92:20, 93:1,
93:2
**simple**
19:18, 124:8

**since**
28:3, 55:3,
65:10, 65:15,
71:14, 72:6,
77:2, 89:4,
90:3, 90:16,
90:18, 94:11,
94:17, 95:10,
100:12, 101:2,
108:16, 108:18,
111:20, 114:14,
114:21, 123:21,
126:13, 131:9
**single**
13:5
**sir**
6:10, 7:20,
7:22, 8:10,
8:13, 10:5,
12:6, 12:16,
12:20, 13:8,
13:21, 14:17,
16:17, 25:16,
28:18, 31:16,
32:11, 33:16,
36:6, 39:11,
39:17, 40:14,
42:10, 54:20,
56:22, 57:12,
58:18, 60:2,
64:19, 68:4,
71:20, 72:21,
74:10, 74:16,
75:7, 76:10,
77:18, 79:22,
80:20, 81:6,
81:8, 82:7,
82:19, 83:17,
87:8, 89:2,
90:22, 91:15,
91:18, 92:9,
94:15, 94:21,
99:10, 100:5,
100:22, 101:13,
103:11, 106:2,
106:22, 108:10,
109:2, 110:9,
112:18, 112:20,

116:5, 118:20,
124:10, 126:17,
128:5
**sisters**
115:6
**sit**
95:1
**sitting**
112:16
**skills**
134:11, 135:6
**smug**
14:11
**solution**
26:19
**some**
13:6, 65:9,
79:2
**somebody**
60:19, 114:10
**something**
56:16, 65:13,
68:19, 69:18,
74:4
**sometimes**
8:3
**sorry**
9:5, 12:6,
16:22, 17:4,
19:6, 29:14,
29:17, 32:8,
58:15, 69:6,
69:9, 71:11,
79:9, 83:2,
85:17, 90:1,
90:22, 92:8,
92:15, 97:22,
98:3, 101:21,
103:18, 105:3,
110:21, 115:18,
120:1
**sort**
13:6, 53:14
**south**
123:2, 124:18
**southwest**
123:2, 124:17
**speak**
18:22

| | | | |
|---|---|---|---|
| **speaking** | **states** | 88:15, 90:3, | 56:7, 95:17, |
| 22:10, 22:14, | 1:1, 8:21, | 90:17, 91:7, | 96:1, 96:2, |
| 50:14, 51:20 | 65:21, 66:13, | 93:9, 94:4, | 96:4, 96:13, |
| **speaks** | 67:6, 67:21, | 101:17, 102:9, | 114:5, 124:11, |
| 113:10 | 68:1, 122:5, | 103:1, 103:8, | 132:16 |
| **specific** | 122:6, 122:13, | 103:14, 104:4, | **taken** |
| 43:5, 90:19, | 123:1, 126:20, | 108:17, 109:16, | 134:3 |
| 94:11, 94:17, | 127:6 | 110:2, 110:14, | **taking** |
| 99:20, 100:2, | **stay** | 111:20, 113:14, | 23:1, 23:2, |
| 100:12, 114:14, | 24:16, 130:14 | 115:10, 121:2, | 56:2 |
| 118:16 | **still** | 122:9, 124:1, | **talk** |
| **specifically** | 11:11, 30:5, | 124:21, 126:1 | 44:20, 112:8, |
| 34:11, 71:14, | 45:19 | **stuck** | 120:8 |
| 72:6, 79:20, | **stipulate** | 21:4 | **talked** |
| 80:16, 81:1, | 96:19 | **stuff** | 120:10 |
| 89:5, 114:22, | **stipulated** | 77:16, 77:17, | **talking** |
| 120:4 | 130:18 | 79:4 | 24:20, 37:15, |
| **specifics** | **stipulation** | **subject** | 45:1, 45:9, |
| 61:21 | 130:15 | 129:6, 129:21 | 63:22, 64:1, |
| **specify** | **stock** | **subpoena** | 76:14, 78:22 |
| 78:15 | 16:17, 17:3, | 91:13, 104:14 | **tell** |
| **speech** | 17:5, 17:6, | **substantial** | 15:6, 15:8, |
| 14:22, 15:16, | 17:7, 17:9, | 127:17 | 16:13, 20:3, |
| 15:19, 54:11 | 17:13 | **sued** | 20:10, 36:6, |
| **spell** | **stop** | 82:8, 82:9, | 47:4, 57:18, |
| 29:18, 30:5, | 25:8, 45:1, | 83:6 | 61:13, 63:16, |
| 30:14, 119:17 | 45:2, 45:8, | **suite** | 63:19, 104:7, |
| **spoken** | 45:11, 54:10, | 3:6, 3:16, 4:6 | 118:13, 119:9 |
| 62:19, 119:21, | 131:21 | **summons** | **telling** |
| 120:2 | **street** | 98:9, 131:1, | 24:9, 24:12, |
| **stand** | 3:15 | 131:3 | 27:9 |
| 32:13, 59:4, | **strike** | **sure** | **tells** |
| 59:10, 69:13, | 28:11, 29:5, | 55:17, 66:5, | 47:21 |
| 93:15, 99:11, | 29:11, 29:16, | 73:21, 106:10, | **ten** |
| 121:11 | 31:10, 31:19, | 119:15, 129:15, | 65:12, 67:5, |
| **standing** | 33:4, 33:17, | 132:9 | 67:13, 68:15 |
| 10:20, 11:8 | 35:14, 40:15, | **suspend** | **terms** |
| **start** | 40:19, 42:4, | 97:4, 97:16 | 92:9, 107:12 |
| 17:19 | 42:18, 66:22, | **sworn** | **terrence** |
| **started** | 67:16, 68:6, | 6:4, 134:5 | 3:12, 9:13, |
| 113:22, 114:8 | 69:5, 70:12, | **sympathies** | 18:8, 41:11, |
| **state** | 71:7, 72:1, | 84:4, 85:15, | 43:14, 43:22, |
| 2:10, 6:12, | 72:9, 73:4, | 86:1, 86:18 | 52:2, 52:7, |
| 10:1, 30:21, | 75:3, 75:18, | **T** | 53:13, 66:19, |
| 88:11, 118:6, | 77:3, 78:19, | | 82:22 |
| 128:7, 134:18 | 79:12, 85:10, | **take** | **testified** |
| **statement** | 86:4, 86:22, | 7:3, 7:8, | 6:6, 60:8, |
| 20:17, 22:1 | 87:18, 88:4, | 37:20, 44:21, | 72:14, 72:16, |

73:9, 79:12,
114:7, 117:1
**testify**
6:4
**testifying**
116:8, 117:8,
123:13
**testimony**
7:8, 10:15,
71:17, 72:1,
73:13, 73:21,
73:22, 81:20,
94:21, 123:10,
123:15, 123:21,
124:7, 124:10,
124:12, 127:5
**texas**
126:10
**th**
6:22, 8:19,
39:18, 118:8,
120:19, 121:16
**thank**
96:6, 96:10,
99:12, 131:18,
132:21, 133:3,
133:4
**thereafter**
118:9, 134:6
**thing**
49:14, 104:12,
124:5
**things**
8:2
**think**
11:10, 12:21,
46:12, 46:15,
47:6, 53:4,
53:9, 53:10,
78:14, 82:22,
88:9, 95:13,
95:15, 95:22,
96:2, 99:21,
100:14, 100:16,
128:19, 128:20,
128:22
**thinks**
16:10

**third**
85:2
**third-party**
3:10, 4:10
**thought**
27:8
**thousands**
64:1
**three**
9:14, 21:17,
38:4, 48:17,
62:10, 81:21,
87:13, 116:11
**through**
61:16
**throughout**
22:14, 126:21
**time**
7:3, 19:7,
27:2, 27:5,
27:7, 36:16,
36:17, 39:1,
39:2, 39:4,
39:9, 40:5,
42:21, 44:10,
44:22, 48:6,
50:17, 63:7,
74:9, 75:16,
76:22, 87:12,
95:11, 95:16,
96:15, 97:4,
97:18, 111:9,
117:13, 118:9,
119:7, 119:16,
120:8, 121:9,
132:4
**times**
16:12, 108:21
**today**
15:11, 19:13,
35:17, 36:2,
36:11, 36:16,
37:7, 37:12,
42:22, 47:2,
63:1, 66:12,
67:5, 80:20,
95:1, 96:18,
97:3, 116:9,

117:8
**together**
125:11
**told**
7:21, 8:2,
33:1, 35:22,
37:19, 37:20,
43:4, 57:16,
57:17, 69:17
**took**
39:17, 116:12
**top**
71:2
**total**
96:15
**totally**
7:16, 7:17,
112:15, 128:18
**touch**
85:13, 85:15,
86:18
**towanda**
1:5, 3:2, 6:8,
6:21
**track**
22:22
**traded**
17:10, 17:14,
20:1
**tragic**
6:21
**trailers**
12:4, 64:6,
106:12, 123:9,
125:1
**training**
72:22, 73:7,
74:7, 74:13,
74:16, 75:7,
75:13, 76:4,
76:9, 78:22
**trainings**
76:16, 79:4
**transaction**
104:15, 104:18
**transactions**
89:8, 90:8,
90:14, 93:22

**transcribed**
1:22
**transcriber**
135:1
**transcript**
62:7, 135:3,
135:5
**transcriptionist**
134:8
**transfer**
65:20, 66:12,
106:9
**transferred**
66:9, 67:4,
67:12, 89:17
**transfers**
89:15, 91:4
**transmittal**
132:7
**treasurer**
9:7, 9:17
**tremendous**
15:10, 15:14,
15:17, 26:11,
45:22, 97:13
**trial**
91:13
**triton's**
111:18, 113:20,
123:12
**truck**
9:14, 27:21,
33:10, 33:21,
58:6, 73:8,
73:10, 73:18,
73:20, 74:4,
75:14, 76:21,
77:13, 79:6,
79:14, 80:5,
89:18, 90:10,
104:17, 106:7,
106:9, 106:10,
106:19, 106:20,
106:21, 107:10,
108:4, 108:6,
109:3, 109:7,
109:9, 109:13,
109:21, 109:22,

110:6, 110:10,
110:20, 111:4,
111:7, 126:6,
128:9, 128:11
**trucking**
11:16, 13:4,
16:17, 17:4,
28:8, 33:10,
34:4, 35:12,
63:17, 65:8,
65:10, 65:15,
65:17, 66:13,
67:14, 68:2,
68:3, 71:19,
72:18, 76:3,
76:4, 76:16,
77:13, 79:2,
94:9, 108:11,
122:3, 127:8
**trucks**
12:4, 17:15,
62:21, 63:3,
63:14, 63:18,
64:2, 64:4,
64:5, 64:6,
64:10, 64:12,
64:13, 64:15,
64:20, 65:2,
100:21, 101:8,
102:1, 102:11,
102:14, 102:16,
103:12, 105:1,
105:5, 106:1,
106:3, 106:12,
106:14, 111:3,
113:22, 115:4,
115:5, 122:4,
122:12, 122:21,
123:9, 124:11,
125:1
**true**
130:15, 134:9,
135:5
**truth**
6:5, 22:4,
25:5, 50:16,
51:22, 54:17
**try**
39:1, 39:2,

39:4, 39:9,
47:13, 132:10,
132:12
**trying**
50:15, 50:19,
51:21
**tuesday**
132:8, 132:10,
132:12
**turn**
56:15, 91:13
**two**
20:19, 44:20,
63:4, 73:11,
95:16, 95:18,
103:22, 130:6
**type**
14:11, 31:5,
53:17, 54:14,
54:15, 109:7,
109:21, 109:22
**typewriting**
134:7

**U**

**uh-huh**
7:12
**unclear**
75:19, 78:12,
105:8
**under**
41:11, 41:13,
41:15, 43:7,
43:8, 46:4,
49:6, 49:17,
51:1, 129:15
**understand**
7:1, 7:14,
7:16, 19:1,
19:4, 22:11,
30:6, 31:22,
72:7, 74:22,
77:6, 81:17,
90:7, 93:11,
105:13, 107:16,
109:17, 128:21
**understanding**
121:9

**understands**
73:15
**understood**
33:16, 105:11,
121:18
**united**
1:1, 8:21,
65:21, 66:13,
67:6, 67:21,
68:1, 122:5,
123:1, 126:20,
127:6
**unprofessional**
52:13
**until**
7:16, 45:1,
47:13
**use**
54:4, 54:8,
54:12, 54:15,
90:14

**V**

**vehicle**
15:18
**vehicles**
31:7, 100:6
**venued**
83:17
**vernacular**
54:14
**vice**
9:7, 9:17
**violating**
40:6
**violations**
108:8
**virginia**
1:2, 3:18, 4:7,
4:15, 40:4,
41:3, 88:9,
88:11, 118:1,
118:2, 118:4,
118:6, 128:7
**virtually**
1:14, 2:2
**vision**
114:2

**vital**
44:5
**voice**
12:7
**volvos**
64:7
**voveris**
1:13, 2:1, 5:2,
6:3, 6:14, 20:6,
55:16, 96:16,
97:1
**voyles**
4:3, 50:20,
52:2, 52:4,
52:7, 52:11,
52:13, 52:16,
52:19, 53:1,
53:4, 53:13,
53:16, 53:20,
53:22, 54:2,
54:6, 54:10,
54:16, 132:20,
132:22

**W**

**w-o-r-l-d**
119:20
**wait**
38:7, 41:12,
41:14, 43:16,
44:18, 45:7,
45:8, 72:5,
74:14, 78:6,
80:8, 80:10,
85:5, 121:1
**waiting**
66:17
**walking**
36:22, 37:2,
37:3, 37:4, 38:1
**want**
7:3, 7:15,
18:5, 19:17,
21:4, 23:17,
27:8, 36:21,
39:12, 44:11,
44:12, 45:1,
46:19, 47:10,

**48:20**, 49:2,
53:16, 69:2,
71:2, 80:12,
83:1, 88:10,
95:16, 95:19,
97:7, 97:16,
98:12, 124:4,
127:5, 130:9
**wanted**
21:2, 56:17
**wants**
56:9
**washington**
3:7
**way**
6:22, 47:5,
56:17, 78:9,
78:11
**we'll**
7:4, 20:10,
20:13, 20:14,
37:17, 44:8,
47:18, 48:7,
50:4, 51:10,
61:2, 85:10,
86:3, 86:22,
87:17, 88:4,
88:15, 95:17,
96:4, 97:4,
97:16, 99:22,
102:8, 103:8,
103:14, 104:4,
104:14, 109:15,
110:1, 111:20,
113:14, 120:7,
120:8, 121:2,
122:9, 124:20,
126:1, 131:5,
131:13, 131:15
**we're**
25:18, 25:20,
25:22, 36:3,
37:17, 38:5,
38:8, 38:15,
46:18, 50:5,
51:11, 61:13,
61:16, 65:2,
78:8, 89:5,

91:11, 91:12,
96:14, 96:18,
97:3, 104:10,
104:11, 104:13,
108:9, 112:14,
124:5, 125:10,
130:16, 131:8,
131:9, 132:3
**we've**
20:4, 21:17,
60:7
**wear**
21:1
**wearing**
20:19, 20:20,
20:21
**website**
94:8, 94:15,
113:20
**weigh**
50:20, 53:20
**well-known**
114:3
**wellman**
4:13
**went**
65:15
**weren't**
77:20
**west**
123:1
**whatever**
66:22, 131:12
**whereupon**
6:2
**whether**
20:1, 33:8,
66:9, 75:19,
78:12, 78:13,
104:12, 108:6,
112:16, 113:10,
114:9, 117:18,
124:17, 126:9,
129:14
**whole**
6:5
**wiggins**
4:11

**wire**
91:4
**wired**
67:5
**wires**
89:8
**wiring**
89:15
**wise**
13:22
**withdrawn**
80:1, 81:6,
104:21
**withhold**
49:7
**withholding**
44:3
**within**
24:18, 42:15,
71:17, 72:13,
114:9
**witness(es**
134:4
**woman**
30:12
**word**
54:5, 119:20
**worded**
66:7
**words**
54:8, 54:12,
108:4
**work**
39:8, 68:13,
69:15, 76:7,
79:2, 79:7,
114:2, 128:11,
132:11
**worked**
68:9, 68:18,
127:7
**working**
73:19, 73:22,
74:2, 74:5,
76:17, 77:6
**world**
119:14, 119:15,
119:20, 126:21

**worse**
21:21
**wouldn't**
23:1, 31:15,
32:15, 63:16,
63:19, 65:1,
104:7, 106:6,
106:8
**writing**
104:14
**wrong**
21:5, 111:10

**X**

**x**
1:4, 1:11

**Y**

**yeah**
13:19, 15:2,
29:14, 29:17,
32:21, 34:7,
45:10, 50:20,
58:7, 58:19,
67:1, 68:17,
69:17, 74:22,
80:14, 83:7,
92:13, 98:20,
102:14, 109:11,
110:3, 111:2,
118:22, 125:14,
132:2, 132:16
**year**
8:17, 65:2,
65:3, 65:4,
68:18, 69:17,
69:18, 71:18,
72:14, 73:11,
74:1, 114:9,
119:10, 127:7,
127:18
**yearly**
104:1
**years**
8:10, 47:1,
63:4, 65:11,
65:12, 67:6,
67:13, 68:15,

70:22, 71:9,
71:11, 71:19,
72:17, 72:18,
73:11, 114:1
**yep**
98:22
**yourself**
10:12, 13:6,
36:13, 116:12,
125:12, 125:15

## 0

**00118**
1:8
**04**
96:9
**05**
98:4
**0560**
3:8
**06**
99:6

## 1

**1**
1:16
**1153**
4:16
**135**
1:21
**14**
1:15, 65:11
**15**
65:5
**16**
6:22, 39:18,
117:12, 118:8,
120:19, 121:16,
127:20
**1636**
3:19
**17**
118:8
**18**
135:16
**19**
8:19
**1901**
3:5

**192**
4:5
**1979**
8:19
**1998**
3:17

## 2

**2**
96:8
**20006**
3:7
**2011**
113:21, 114:12,
127:20
**2014**
8:22, 65:10,
68:13, 68:17,
73:11, 114:8,
127:7
**2015**
65:13, 127:20
**202**
3:8
**2022**
6:22, 39:18,
63:2, 63:3,
63:14, 64:20,
117:12, 119:7,
120:19, 121:17
**2024**
1:15, 63:5,
135:16
**22**
48:17, 81:22,
116:11
**23**
1:8, 9:15
**2300**
3:16
**23218**
3:18
**23255**
4:15
**23462**
4:7
**2500**
4:8

## 3

**3**
96:9, 133:6
**30**
9:11, 21:14,
96:22, 97:4,
129:21
**300**
3:6
**33**
47:1
**35**
98:5, 130:3,
130:5, 130:15
**36**
99:7
**38**
133:6

## 4

**4**
98:4, 98:5,
99:6, 99:7,
130:3, 130:5,
130:15
**40**
1:16
**400**
4:6
**461**
4:8
**49**
96:8
**4:-cv--jke-dem**
1:8

## 5

**50**
64:1, 122:6,
122:13
**525**
112:3, 112:11,
112:13, 113:6
**542209**
1:20

## 6

**622**
4:16

**648**
3:19

## 7

**70280**
4:14
**757**
4:8
**772**
3:8

## 8

**8.4**
49:6
**804**
3:19, 4:16

## 9

**919**
3:15
**99**
119:15