UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TOWANDA R. FUTTRELL,

    Plaintiff,

v.                                                          ACTION NO. 4:23cv118

AV LEASING, LLC, et al.,

    Defendants.

## OPINION AND ORDER

This personal injury matter is before the Court on the motion *in limine* filed by defendants AV Leasing, LLC, and Triton Logistics, Inc. (collectively "defendants"), to exclude the testimony of plaintiff Towanda R. Futrell's expert, Dallas Lea, II, M.D. Defs.' Br. in Support of Mot. *in Limine* to Exclude Pl.'s Experts, ECF No. 116 ("Defs.' Br.").[1] For the reasons stated below, defendants' motion *in limine* is **DENIED**.

### I.    BACKGROUND

Plaintiff Towanda R. Futrell ("Futrell") filed this personal injury action on August 28, 2023. ECF No. 1. The action arises from a motor vehicle accident on Interstate 64 on December 16, 2022, when a tractor-trailer owned by AV Leasing, LLC, leased by Triton Logistics, Inc., and driven by Daniel Cramer, collided with a bus on which Futrell was a passenger. *Id.*

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, on May 28, 2024, Futrell

---

[1] Defendants also move to exclude Futrell's expert Paul V. Herbert by adopting the arguments made by Daniel Cramer in his motion to exclude filed September 6, 2024, ECF No. 102. ECF No. 117, at 5. The Court will address arguments related to Mr. Herbert in ruling on defendant Cramer's motion to exclude Herbert.

disclosed Dallas Lea, II, M.D. ("Dr. Lea"), as an expert witness in the field of orthopedic surgery who may be called to testify at trial. ECF No. 117-1, at 6–7. Futrell disclosed that Dr. Lea was expected to testify to: (a) Futrell's injuries, including a broken right ankle, sprained left ankle, broken eye socket, and broken left jaw; (b) Futrell's ankle surgeries; (c) Futrell's "extensive physical medicine and rehabilitation"; and (d) his opinion that Futrell's injuries, medical treatment, hospitalizations, "past and future pain and suffering, past and future medical expenses and medical costs and life care medical costs, and economic or non-economic related damages" are "a proximate cause of defendant Daniel Cramer's negligence." *Id.*

Futrell provided defendants with a copy of Dr. Lea's curriculum vitae ("CV"). ECF No. 117-2. On or before July 9, 2024,[2] Futrell also provided defendants with Dr. Lea's expert report—a life care plan for Futrell. ECF No. 117-3. The life care plan outlines Futrell's treatment following the accident, Dr. Lea's opinion that Futrell "will have chronic symptoms and residual disabilities resulting from the accident," and a table containing Dr. Lea's recommendations for Futrell's "current and future care needs." *Id.*

On September 17, 2024, defendants filed the pending motion *in limine* to exclude Dr. Lea's opinion because he was not properly designated as an expert in life care planning and the opinions in his life care plan lack the requisite foundation. ECF No. 116. Futrell opposed the motion on September 27, 2024, ECF No. 141 ("Pl.'s Opp."), and defendants filed a reply on October 1, 2024, ECF No. 145 ("Defs.' Reply").

---

[2] Futrell requested and was granted an extension of time to July 9, 2024, to disclose the life care plan. *See* ECF Nos. 57, 64. The briefs do not indicate when Dr. Lea's CV was provided to defendants.

2

## II.   DISCUSSION

### A.   Federal Rule of Civil Procedure 26(a)(2) Disclosures and Expert Reports

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to disclose to opposing parties "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." For witnesses who are not required to provide a written report, the disclosure must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Rule 26(a)(2)(B) requires that any witness who is retained to provide expert testimony provide a report. *Campbell v. United States*, 470 F. App'x 153, 155 (4th Cir. 2012). The report must contain, in part,[3] "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The report "is intended to set forth the substance of the direct examination of the expert witness," and must "disclose the data and other information considered by the expert." Fed. R. Civ. P. 26 (a)(2)(B) advisory committee's note to 1993 amendment. Therefore, "the expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial." *Campbell*, 470 F. App'x at 155 (quoting *Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005)).

"The most important element of the Rule 26 analysis is whether the report prepared by [the

---

[3] Rule 26(a)(2)(B) also requires that the report contain proposed exhibits used to summarize or support expert opinions, witness qualifications including publications, a list of cases in which the expert has testified during the previous four years, and a statement of the expert's compensation. Defendants have alleged no deficiency with respect to these requirements.

3

expert] contains a complete statement of his opinions and the bases for his opinions." *Washington v. McKee*, No. 4:06cv6, 2006 WL 2252064, at *2 (E.D. Va. Aug. 3, 2006) (quoting *Campbell v. McMillin*, 83 F. Supp. 2d 761, 764 (S.D. Miss. 2000)). Such detail avoids disclosing "sketchy and vague" expert information. *Id.* (quoting *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)). "Expert reports 'must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.'" *Id.* (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).

If a party fails to disclose information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When determining whether nondisclosure of evidence is substantially justified or harmless, the Court is guided by these factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003)). The party facing sanctions for failure to comply with Rule 26 has the burden of establishing that the nondisclosure was substantially justified or harmless. *Campbell*, 470 F. App'x at 156. Courts are given wide latitude when determining whether sanctions pursuant to Rule 37 are appropriate.

**B.     Rule 702 and the Principles Governing Expert Testimony**

Federal Rule of Evidence 702 provides for the admission of expert testimony "in the form of an opinion or otherwise" upon satisfaction of these conditions:

4

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Courts have condensed these requirements into two primary inquiries: "1) whether the proposed expert's testimony is relevant; and 2) whether it is reliable." *Yates v. Ford Motor Co.*, No. 5:12cv752, 2015 WL 3948303, at *1 (E.D.N.C. June 29, 2015) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005)).

To be considered reliable, expert testimony must be grounded in "scientific, technical, or other specialized knowledge and not on belief or speculation" and "derived [from the use of] scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (citation omitted). The *Daubert* decision identified several, non-exhaustive guideposts that may apply when assessing reliability–testing; peer review/publication; error rate; and general acceptance of the methodology used. *Daubert*, 509 U.S. at 593–94. Whether these guideposts or other factors apply to assess reliability often depends on the nature of the case, the expertise applied, and opinions at issue. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). The analysis to be employed is flexible and designed "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152 (noting "considerable leeway" given to trial courts in assessing

reliability of proposed expert testimony).

A court must also consider the relevance of an expert's testimony by asking "whether expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). This inquiry has also been described as one of "fit." *Id.* at 591. Under this test, scientific studies must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591–92.

The proponent of expert testimony bears the burden of establishing, by a preponderance of the evidence, that the testimony is admissible in accordance with these principles. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

**C.     Errors in the Rule 26(a)(2) disclosure are harmless as Dr. Lea's CV, life care plan, and deposition clarify his expertise and outline his proposed expert testimony.**

First, defendants assert Dr. Lea was not properly designated as an expert in life care planning. Defs.' Br. 3. Defendants note that Dr. Lea was designated as an expert in orthopedic surgery who was expected to testify about Futrell's injuries, Futrell's treatment, and his opinion that Futrell's injuries, treatment, past and future pain and suffering, past and future medical expenses, and life care costs were proximately caused by defendant Daniel Cramer's negligence. *Id.* (citing Pl.'s Rule 26(a)(2) disclosures, ECF No. 117-1).

Futrell asserts that defendants were provided with a copy of Dr. Lea's CV, which put them on notice that Dr. Lea was a life care planner, board certified in physical medicine and rehabilitation, and defendants were provided with his life care plan on July 5, 2024. Pl.'s Mem. 2. During Dr. Lea's deposition, Futrell's counsel clarified that the designation of Dr. Lea as an orthopedic surgeon was due to a "typographical error." Dr. Lea Depo. 9:11–14, ECF No. 141-3.

6

Dr. Lea testified that he was not an orthopedic surgeon, but a specialist in spinal cord injury and in physical medicine and rehabilitation. *Id.* at 10:2–6. Dr. Lea explained that he would not be testifying about causation or negligence, rather he would testify to Futrell's "injuries and future care and needs," and that he was asked to "review records, review the case, and produce a life care plan." *Id.* at 10:7–12, 11:18–22.[4]

The Court finds that Futrell's failure to identify Dr. Lea as an expert to testify about Futrell's life care plan in the Rule 26(a)(2) disclosure served on May 28, 2024, is harmless. The Rule 26(a)(2) disclosure was inaccurate. Futrell's explanation for the inaccurate disclosure—that it was a "typographical error"—is less than satisfactory. The inaccuracy also goes beyond simply misstating that Dr. Lea is an orthopedic surgeon, by wrongfully disclosing that Dr. Lea will testify about the *cause* of Futrell's injuries. The disclosure did, however, include Dr. Lea's expected testimony about plaintiff's future medical care and expected costs over her lifetime. ECF No. 117-1, at 7. The provision of Dr. Lea's CV and life care plan clarified his expertise and proposed testimony and defendants were further able to clarify this with his deposition taken September 6, 2024. *See* ECF Nos. 117-2, 117-3, 141-3. Permitting Dr. Lea to testify about the life care plan he outlined for Futrell would not disrupt the trial. Dr. Lea, however, will not be permitted to testify about the cause of Futrell's injuries and his testimony will be limited to the opinions outlined in his life care plan.

---

[4] In opposing defendants' motion *in limine* to exclude Dr. Lea, Futrell argues that "[h]er future lost earnings claim is a major part of her damage claim and she would be severely prejudiced if her expert qualified to provide that opinion before the jury would be fully precluded." Pl.'s Opp. 3. If Futrell is asserting that Dr. Lea will testify about her future lost earnings, Futrell is incorrect. Nothing in Dr. Lea's CV qualifies him to testify to such and there are no opinions in his life care plan addressing future lost earnings.

**D.     Dr. Lea's proposed testimony concerning Futrell's life care plan is based on his medical expertise and will be helpful to a jury.**

Next, defendants argue that Dr. Lea's opinions lack the proper foundation and are speculative. ECF No. 117, at 4. Dr. Lea never treated Futrell and did not interview her or her treating physicians prior to developing the life care plan. *Id.* The life care plan was drafted based on Dr. Lea's review of Futrell's medical records, ECF No. 117-3, at 1–2.

In the introduction to his life care plan, Dr. Lea explains that the "[r]ecommendations included in this Life Care Plan are based on a reasonable degree of medical certainty to manage symptoms, reduce complications or secondary diagnosis, maintain functioning, and optimize independence throughout Ms. Futrell's life span. The recommendations were gathered from the information provided by medical providers as well as knowledge and experience from this Life Care Planner." ECF No. 117-3, at 1. Dr. Lea outlines the medical records he reviewed and the diagnoses they contained, summarizes Futrell's treatment following the accident, and notes her current medications, symptoms, and limitations. *Id.* at 1–9. Dr. Lea then offers the following "summary and recommendations":

> Recommendations for future care and costs are reflected in the Life Care Plan tables. It is anticipated Ms. Futrell will have chronic symptoms and residual disabilities resulting from the accident. Given the severity of Ms. Futrell's condition, additional care is expected throughout her life, and she will require follow-up with physicians regarding her right ankle. Physicians have recommended surgical interventions to improve Ms. Futrell's symptoms, functioning, and quality of life. Ongoing medical care (including pain/symptom management) will be necessary to treat and care for Ms. Futrell's injuries and residual disabilities to improve Ms. Futrell's symptoms, functioning, and quality of life. The attached tables include recommendations to assist Ms. Futrell's care and needs.

ECF No. 117-3, at 9. Dr. Lea attaches a table outlining the cost of Futrell's future medical care, surgical procedures, therapy, labs, medications, equipment, home care, transportation, case

8

manager, and vocational assessment, which totals $265,804.31.

Defendants challenge the opinions contained in Dr. Lea's summary and recommendations section, noting the following testimony from Dr. Lea's deposition:

> Q. And it's fair to say that this part of your assessment [the summary/recommendations] is based solely upon your review of the records and what you anticipate or surmise will happen, correct?
>
> A. Correct

Dr. Lea Dep. Tr. 51:24–52:2. Defendants also challenge several of the line items in Dr. Lea's life care plan table, specifically house cleaning, ophthalmologist evaluations, an ear, nose, and throat evaluation, yearly visits to her primary care physician, and psychological counseling. Defs.' Br. 4. Defendants assert that because Dr. Lea never treated or interviewed Futrell, his opinions lack the proper foundation. *Id.* Defendants argue Dr. Lea does not know whether Futrell has familial support to take care of house cleaning or to what extent she has suffered emotional injuries and needs counseling, and that Dr. Lea assumes Futrell will need more than one yearly visit to her primary care physician because patients do not bring up every medical issue they are experiencing in one visit. *Id.* Defendants conclude that the life care plan is speculative and not tailored to Futrell's unique needs, Defs.' Br. 4–5, and Futrell "provides no indication why Dr. Lea's life care plan is *more* plausible than other possibilities of what [she] will require in the future," Defs.' Reply 5 (citing *Oglesby*, 190 F.3d at 250–51).

Defense counsel raised these issues during Dr. Lea's deposition. Dr. Lea explained that: (1) Futrell's chronic symptoms and residual disabilities "were evident" in her medical records, Dr. Lea Dep. Tr. 51:19–23; (2) the monthly housecleaning expense is for deep cleaning, *id.* at 61:16–62:7; (3) the ophthalmologist evaluation and ear, nose, and throat evaluation were a precaution

9

due to her jaw fracture and broken eye socket, *id.* at 26:23–27:4, 56:14–57:12; (4) the yearly visit to her primary care physician would be in addition to a routine yearly physical and would be necessary for pain management and pain management medications, *id.* at 54:8–56:13; and (5) psychological counseling was included because of the mention of Futrell's anxiety in the medical record, *id.* at 57:17–58:2.[5]

Defendants' reliance on *Oglesby* is misplaced. In *Oglesby*, a mechanical engineer's opinion—that a plastic connector in an automobile engine was defective—was based on an incorrect assumption about the composition of the part. *Oglesby*, 190 F.3d at 250–51. The expert did not change his opinion when confronted with the error, conceded that he had none of the necessary data to support his conclusion, and continued to "speculate as to a possibility which was no more likely than other available possibilities" for why the part broke. *Id.* at 251. Dr. Lea reviewed and summarized Futrell's past treatment, current treatment regimen, and future treatment recommended by her physicians. ECF No. 117-3. Dr. Lea then developed a life care plan projecting Futrell's future costs based on this review. Dr. Lea Dep. Tr. 27:18–28:11. A certain amount of speculation is inherent in a life care plan that projects what will be needed in the future and hinges on future events. Permitting cross-examination regarding the facts and data Dr. Lea relied on to arrive at the future costs will allow the fact finder to determine the appropriate weight to assign to Dr. Lea's testimony. *See Balance v. Wal-Mart Stores, Inc.*, 178 F.3d 1282, at *5–6 (4th Cir. Apr. 21, 1999) (holding that the district court did not err in permitting testimony about a

---

[5] Dr. Lea testified that he was provided with, and reviewed, Futrell's deposition transcript after he prepared his life care plan. Dr. Lea Dep. Tr. 37:5–9. Dr. Lea referenced this testimony during his deposition, specifically Futrell's testimony that she could not perform deep cleaning, and that she felt she should resume mental health counseling. *Id.* at 58:3–24, 63:13–21.

life care plan that was contingent upon future events where medical experts testified about plaintiff's future treatment options and defendant was able to cross-examine the life care planner and put on contrary expert testimony).

The Court finds that Dr. Lea is qualified to testify as an expert witness and he is proposing to testify to relevant medical knowledge that will assist the trier of fact in understanding a fact in issue. *See Edwards v. McElliotts Trucking, LLC*, No. CV 3:16-1879, 2017 WL 3611848, at *5 (S.D.W. Va. Aug. 22, 2017) ("Costs of medical procedures, services, and devices are not common knowledge and [the life care planner's] testimony will prove useful for the jury in its calculations of any damages it chooses to award"). In addition, Dr. Lea's opinions are based on sufficient facts and data to be reliable. *See Payne v. Wyeth Pharmaceuticals, Inc.*, No. 2:08cv119, 2008 WL 5586824, at *3–4 (E.D. Va. Nov. 17, 2008) (denying motion to exclude life care planner despite allegations that he never discussed the life care plan with a physician and relied on a summary of the plaintiff's medical record prepared by his nurse); *Koenig v. Johnson*, No. 2:18-CV-3599-DCN, 2020 WL 2308305, at *12 (D.S.C. May 8, 2020) (admitting life care planner testimony that was based on a review of the plaintiff's medical records).

Nor does the Court find that the probative value of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The Court finds that defendants' concerns about the reliability of Dr. Lea's testimony may be properly raised during cross-examination, but they are insufficient to persuade the Court to exclude Dr. Lea.

11

### III. CONCLUSION

For the reasons stated above, defendants' motion *in limine* (ECF No. 116) is **DENIED**. Dr. Lea will be permitted to testify to the opinions contained in his life care plan. He cannot offer testimony on the cause of Futrell's injuries or her future lost earnings.

The Clerk shall deliver a copy of this Order to counsel of record.

                                                            /s/
                                           Robert J. Krask
                               UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 25, 2024