UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TOWANDA R. FUTRELL,

    Plaintiff,

v.

DANIEL L. CRAMER,
TRITON LOGISTICS, INC., *and*
WDTC, LLC,

    Defendants/Third-Party Plaintiffs,

ACTION NO. 4:23cv118

v.

ANTONIO WIGGINS, *and*
FUTRELL'S PARTY ADVENTURES, LLC,

    Third-Party Defendants.

**OPINION AND ORDER**

This matter is before the Court on third-party defendants', Futrell's Party Adventures, LLC, and Antonio Wiggins', motion to bifurcate. ECF No. 114. Third-party defendants ask the Court to bifurcate the trial for the main complaint and the trial for the third-party complaint. The Court has considered the parties' briefs and oral argument on the motion. For the reasons discussed below, the motion to bifurcate is **DENIED**.

**I.    BACKGROUND**

This action arises from a tragic motor vehicle collision on Interstate 64 East in York County, Virginia. On December 16, 2021, a tractor-trailer—owned by AV Leasing, LLC ("AV Leasing"), leased by Triton Logistics, Inc. ("Triton"), and driven by Daniel L. Cramer ("Cramer")—collided with a party bus driven by Antonio Wiggins ("Wiggins") on which

Towanda R. Futrell ("Futrell") was a passenger. ECF No. 168, at 1.[1] As a result, Futrell and the other 21 passengers on board were ejected from the party bus. Am. Compl. ¶ 8, ECF No. 43. Three passengers died from their injuries, and the other nineteen passengers, including Futrell, suffered serious injuries. *Id.* The record before the Court suggests that the collision occurred in a 70 mile-per-hour ("m.p.h") speed zone on I-64 and that the bus was traveling relatively slow. ECF No. 185-5. It also appears that Futrell's Party Adventures, LLC ("FPA"), owned the party bus at the time of the collision.[2] ECF No. 185-4. FPA is a member-managed limited liability corporation. Suppl. Br. in Supp. of Third-Party Defs.' Mot. to Sever 1 ("Third-Party Defs.' Suppl. Br."), ECF No. 182. Futrell is FPA's sole member. *Id.* at 1–2.

Futrell filed her complaint against Cramer and AV Leasing[3] on August 28, 2023, Compl., ECF No. 1, and amended her complaint on June 3, 2024, adding Triton and WDTC, LLC ("WDTC") as defendants, ECF No. 43. She alleges that Cramer was acting in the scope of his employment for both Triton and WDTC when the collision occurred.[4] *Id.* ¶ 13. Futrell also alleges that Triton allowed Cramer to operate the tractor trailer longer than permitted by regulation, and Cramer falsified his driving log records. *Id.* ¶ 9. Based on these allegations, Futrell asserts *respondeat superior* claims against Triton and WDTC, and negligence against Cramer. *Id.* ¶ 14.

---

[1] Throughout this opinion and order, the Court cites the electronic pagination found in the header of each filing on the docket.

[2] Although FPA is listed on the title of the party bus, ECF No. 185-4, records from the Virginia Department of Motor Vehicles show that it was registered in Futrell's name, ECF No. 185-5.

[3] The Court dismissed AV Leasing without prejudice on October 7, 2024. ECF No. 152.

[4] The amended complaint alleges that WDTC is an LLC "located in Grapevine, Texas that is owned primarily by . . . Cramer." ECF No. 43, ¶ 5.

Cramer and WDTC answered the amended complaint on June 4, 2024, asserting general denials and numerous affirmative defenses, including contributory negligence. Daniel L. Cramer and WDTC's Answer to Am. Compl. ¶¶ 23, 26–27 ("Cramer Answer"), ECF No. 45. On June 17, 2024, Triton answered the amended complaint, similarly asserting contributory negligence as an affirmative defense. AV Leasing and Triton's Answer to Pl.'s Am. Compl. ¶ 20 ("Triton Answer"), ECF No. 48. That same day, Triton also filed a third-party complaint against FPA and Wiggins seeking indemnification based on Wiggins' allegedly negligent operation of the party bus. AV Leasing and Triton's Third-Party Compl. ("Triton Third-Party Compl."), ECF No. 49. Cramer filed a third-party complaint against FPA and Wiggins the next day. Daniel L. Cramer & WDTC's Third-Party Compl. ("Cramer Third-Party Compl."), ECF No. 53. Cramer seeks contribution or indemnification from FPA and Wiggins based on Wiggins' negligently operating the party bus, FPA's modifications to the party bus, and FPA negligently entrusting the party bus to Wiggins. *Id.* ¶¶ 8–59.

* * *

On September 17, 2024, FPA and Wiggins moved to bifurcate the trial of Futrell's complaint from the third-party complaint. ECF No. 114. On September 23, 2024, Cramer and WDTC,[5] ECF No. 130, and Triton, ECF No. 134, opposed the motion. FPA and Wiggins replied in support of their motion on September 27, 2024. ECF No. 140. On March 5, 2025, the Court directed "**all parties**" to file supplemental briefing. ECF No. 181. Third-party defendants, ECF No. 182, Triton, ECF No. 183, and Cramer, ECF No. 185, filed supplemental briefs on March 17, 2025. After failing to respond to the motion to bifurcate, on March 17, 2025, Futrell filed a

---

[5] Despite only listing Cramer in the opposition, Mr. Voyles, counsel for Cramer and WDTC, stated at the motions hearing that WDTC also opposes the motion.

3

supplemental brief titled "Plaintiff's Notice of No Position on Motion to Sever" that contained one substantive sentence stating that she "takes no position" on the motion. ECF No. 184, at 1. Otherwise, Futrell did not respond to the Court's order.

The Court held a hearing on the motion on March 20, 2025. ECF No. 187. Waleed Risheq, Esq., was present on behalf of Futrell; Shawn Voyles, Esq., was present on behalf of Cramer and WDTC; Terrence Graves, Esq., was present on behalf of Triton; and Angela MacFarlane, Esq., was present on behalf of Wiggins and FPA. Carol Naughton was the official court reporter.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure contemplate two modes for separating claims—one within the action itself, the other resulting in a new second action. In the latter instance, Rule 21 provides that: "On motion or on its own, the court may at any time, on just terms, . . . sever any claims against a party." Fed. R. Civ. P. 21. Under Rule 42: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Under Rule 21, there may be a separate action, while under Rule 42, there may simply be a separate trial or trials. *See* 8 James Wm. Moore et al., *Moore's Federal Practice*, § 42.20(2) ("The creation of separate cases and resulting separate judgments provide the key distinction between Rule 42(b) bifurcation and Rule 21 severance."). Given these differences, the Court considers different factors when deciding whether to sever or to bifurcate claims.

Here, although third-party defendants denominate their motion as a "Motion to Sever," and their supporting memorandum references Rule 21, third-party defendants repeatedly indicate that they are moving to bifurcate the trial on the main complaint and the trial on the third-party

complaint.[6] At the March 20, 2025 hearing, counsel for third-party defendants confirmed that they are moving to bifurcate under Rule 42(b), and no party objected.

Whether to order separate trials under Rule 42(b) is within the trial court's sound discretion. *Glover v. Hryniewich*, 341 F.R.D. 36, 38 (E.D. Va. 2022) (citing *Westvaco Corp. v. Int'l Paper Co.*, No. 3:90cv601, 1991 WL 398677, at *53 (E.D. Va. 1991)); 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2388 (3d ed.) ("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it."). Bifurcating issues for trial, however, "is not to be routinely ordered." Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment; *see also* Wright & Miller § 2388 ("Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule."); *Toler v. Gov't Emps. Ins. Co.*, 309 F.R.D. 223, 225 (S.D.W. Va. 2015). In exercising this discretion, the Court primarily considers "the interests of judicial efficiency, avoidance of delay or prejudice, and the general ends of justice." *Glover*, 341 F.R.D. at 38 (citation omitted).

---

[6] *See* Third-Party Defs.' Mot. to Sever 1, ECF No. 114 (stating that third-party defendants are moving to "sever" the main complaint from the third-party complaint "for a *separate trial* on a different time and date" (emphasis added)); *id.* at 2 (seeking an order granting the motion to sever and to "continue" the third-party claims "*for a separate trial*" (emphasis added)); Mem. in Supp. of Third-Party Defs.' Mot. to Sever 4, ("Third-Party Defs.' Mem."), ECF No. 115 (requesting that the Court "*sever* [the principal complaint] and the [third-party complaint] *for a separate trial*" (emphasis added)); Reply in Supp. of Third-Party Defs.' Mot. to Sever 5, ("Reply Mem."), ECF No. 140 (arguing that third-party defendants will be prejudiced "if the evidence is presented *in one joint trial*" and that "[f]undamental fairness weighs in favor of *separate trials*" (emphasis added)); *id.* at 6 (seeking a "separate trial").

### III.   DISCUSSION

FPA and Wiggins ask the Court to bifurcate the trial for Futrell's negligence action against defendants (the "principal claims") from the trial for defendants' respective complaints against FPA and Wiggins seeking contribution and/or indemnification. Mem. in Supp. of Third-Party Defs.' Mot. to Sever 3, ("Third-Party Defs.' Mem."), ECF No. 115. Broadly, FPA and Wiggins argue that bifurcation is warranted to avoid prejudice and jury confusion *Id.* More specifically, FPA and Wiggins argue for bifurcation because: (a) the principal claims are distinct from the third-party claims; (b) a single trial would likely lead to jury confusion; (c) the third-party claims are "only relevant if" Futrell prevails on the principal claims; and (d) the jury may "improperly conflate" the principal and third-party claims. *Id.*

### A.   An overview of the claims that are at issue.

Futrell's amended complaint alleges that while acting within the scope of his employment with Triton and WDTC, Cramer negligently crashed the tractor trailer he was driving into the party bus. Am. Compl. ¶¶ 13, 15. It also alleges that Cramer, at Triton's direction, falsified his driving logs to reflect that he was driving fewer hours than the number of hours allowed by regulation. *Id.* ¶ 9. Based on these allegations, Futrell asserts one negligence count against Cramer and—through *respondeat superior*—Triton and WDTC. *Id.* ¶¶ 13, 15.

Cramer, WDTC, and Triton assert contributory negligence as an affirmative defense to Futrell's claim. Although Triton generally asserts the defense, Triton Answer ¶ 20, Cramer and WDTC's answer provides two factual theories in support, Cramer Answer ¶¶ 26–27. First, Cramer alleges that Futrell made (or caused others to make on her behalf) "alterations and/or modifications" to the party bus such that it exceeded its gross vehicle weight and could not exceed 40 m.p.h. *Id.* ¶ 26. The party bus's limited speed, Cramer asserts, proximately caused the collision,

and thus Futrell's "lawsuit is barred by her contributory negligence." *Id.* Second, Cramer contends that Futrell allowed Wiggins to operate the party bus knowing that it was defective, that Wiggins had a suspended driver's license, and that Wiggins did not have a commercial driver's license. *Id.* ¶ 27. Thus, according to Cramer, Futrell's injuries resulted from negligently entrusting the party bus to Wiggins—having known or should have known that he was not qualified to operate the party bus. *Id.*

In its third-party complaint against FPA and Wiggins, Triton alleges that Wiggins—acting within the scope of an employment or agency relationship with FPA—negligently operated the party bus by, among other things, maintaining a slow speed, and his negligence proximately caused the collision. Triton Third-Party Compl. ¶¶ 7–14. Thus, Triton asserts that "[t]o the extent that [Futrell] is entitled to recovery against [Triton] for any damages asserted in the Amended Complaint . . . Triton [is] entitled to recover from . . . Wiggins and [FPA] for negligence." *Id.* ¶ 6. In other words, Triton asks the Court to find "Wiggins and FPA liable to *indemnify* . . . Triton" or order them to "pay on behalf of . . . Triton *all amounts* that . . . Triton [is] required to pay to [Futrell]." *Id.* at 6 (emphasis added).

Cramer's third-party complaint asserts three causes of action. First, it asserts negligence against FPA and Wiggins, based on Wiggins' operation of the party bus and his driver's license status. Cramer Third-Party Compl. ¶¶ 8–26. Second, it asserts negligence against FPA, alleging that: (a) Futrell owned the party bus and used it "in connection with her business," FPA, *id.* ¶ 28; (b) "in the course of creating the party[]bus for use in connection with the operation of the business, Futrell, or a third[]party on behalf of [FPA], made alternations and modifications" to the party bus that increased its weight, *id.* ¶ 29; (c) because the party bus was too heavy, it could not travel faster than 40 m.p.h. *id.* ¶ 31; and (d) the party bus's slow speed directly and proximately caused Futrell's

injuries, *id.* ¶ 38. Third, it asserts that FPA negligently entrusted the party bus to Wiggins, knowing he was not qualified to operate it. *Id.* ¶¶ 45–49. Based on these allegations, Cramer alleges that if he is found liable to Futrell, he is entitled to indemnification or contribution from FPA and Wiggins. *Id.* ¶¶ 21–26.

**B.     Bifurcation is not appropriate.**

    **1.     Risk of prejudice and juror confusion.**

        **a.     There is no risk of prejudice from the "spill over" of evidence because the evidence for the principal claims and the third-party claims appears to be the same.**

At the outset, the Court rejects FPA and Wiggins' unsupported contention that "the allegations of bus modifications and negligent entrustment require different witnesses and evidence then the [principal] claims[.]" Reply Mem. 5. All the triable issues here—whether raised in the complaint, asserted as an affirmative defense, or brought in a third-party complaint—arise from the December 16, 2022 collision between the tractor trailer (leased by Triton and operated by Cramer) and the party bus (owned by FPA and operated by Wiggins). In neither the briefing nor at the hearing did FPA and Wiggins (or any party) identify any evidence that would be relevant or admissible in one trial but not the other. And for good reason.

The Court begins by examining the third-party claims only against FPA. The substantial overlap in the evidence is borne out by Futrell being FPA's sole member.[7] For example, potential

---

[7] The Court recognizes that this case presents numerous legal questions and theories particularly relating to Futrell's peculiar posture in this litigation—she was a passenger on the party bus; she is FPA's sole member, the LLC under which the party bus was titled; and the party bus was registered in her name. Futrell's overlapping capacities blur the line between which actions the jury may attribute to: her personally when deciding whether she was contributorily negligent; FPA—if the jury finds defendants liable and that Futrell was not contributorily negligent—when deciding whether defendants are entitled to contribution or indemnification; and both Futrell and FPA.

evidence of Futrell allowing Wiggins to operate the party bus, the status of Wiggins' driver's license and his commercial driver's license, and Futrell's knowledge of the same may be relevant to defendants' contributory negligence defenses and Cramer's negligent entrustment claim against FPA. Similarly, evidence about the speed of the party bus when the collision occurred and the effect of any modifications to the party bus on its roadworthiness may be relevant to establishing that Futrell was contributorily negligent and that FPA was negligent.[8]

Turning to the third-party claims against Wiggins, Cramer (seeking indemnification and contribution) and Triton (seeking only indemnification) allege that Wiggins negligently operated the party bus when the collision occurred. Both contend that because Wiggins acted within the scope of his employment with FPA at the time of the collision, FPA is liable for his negligence under *respondeat superior*. Proving the factual allegations relating to Wiggins' negligence appears to involve the same evidence just mentioned, such as Wiggins' driver's license status and the speed of the bus shortly before the collision. Cramer Third-Party Compl. ¶¶ 9–19; Triton Third-Party Compl. ¶¶ 8–13. Even more, whether Wiggins acted within the scope of any employment or agency relationship with FPA (or Futrell), and evidence of the same, also appears pertinent to the third-party claims and defendants' contributorily negligence defense.

This case does not present the risk of any "spill-over" effect. As the parties concede, there is little to no difference between the evidence relevant to the principal claims and the evidence relevant to the third-party claims.

---

[8] The Court notes that FPA and Wiggins have moved *in limine* to exclude evidence of Wiggins' driver's license status and modifications to the party bus. ECF Nos. 109, 121.

### b. Concern that the jury will not properly apply the evidence to the law does not warrant bifurcation.

FPA and Wiggins also argue that the risk of prejudice and jury confusion lies in applying the evidence to the various legal theories and arguments the parties will present. More precisely, they contend that there is a risk that the jury will disregard the threshold requirements necessary to find contribution and equitable indemnification and will instead simply find Cramer, WDTC, Triton, FPA, and Wiggins negligent. Reply Mem. 3–4; *see also* Third-Party Defs.' Mem. 3. (arguing that bifurcation is warranted because "the jury may misunderst[an]d the difference in what needs to be proved against [defendants] and [FPA and Wiggins]. The jury may improperly conflate [Futrell]'s viable claims of negligence against [defendants] and [defendants'] subsequent claim against [Wiggins and FPA]"). Their concern is that "the jury may conflate and confuse the issues and fail to analyze the claims properly." Reply Mem. 5. The Court disagrees.

Addressing defendants' indemnification claims, FPA and Wiggins argue that severance is necessary because there is a "credible risk that the jury" will consider defendants' negligence simultaneously with FPA and Wiggins and "potentially find [FPA and Wiggins] negligent" while ignoring the threshold requirements for indemnification. *Id.* at 3. Virginia law[9] recognizes a claim for equitable indemnification only when "a party without personal fault[] is nevertheless legally liable for damages caused by the negligence of another." *Carr v. Home Ins. Co.*, 463 S.E.2d 457, 458 (Va. 1995). "Equitable principles allow the innocent party to recover from the negligent actor for the amounts paid to discharge the liability." *Id.* (citations omitted). That said, "[a] prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage." *Id.*; *see also Williams ex rel. Williams v. United States*, 469

---

[9] The parties do not dispute that Virginia law applies.

10

F. Supp. 2d 339, 342 (E.D. Va. 2007). An "active[ly] negligen[t]" defendant "may not obtain indemnification from any other defendant." *Phillip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 285 (Va. 1988).

It is not for the jury to determine whether defendants' claims are legally sufficient. Although the jury, as the factfinder, will decide whether any defendants were "actively negligent," it will *not* determine the *legal significance* of that finding. That is a determination reserved to the Court. With adequate instructions on the law and a clear verdict form, the Court is confident that the jury can apply the evidence to that law and reach a just verdict.

Likewise, as for the contribution claims, FPA and Wiggins argue that "[t]he jury may simply evaluate if [d]efendants and [FPA and Wiggins] were negligent instead of understanding that they must evaluate whether [Futrell] could have recovered against [FPA and Wiggins]." Reply Mem. 5. But, again, FPA and Wiggins miss the mark. The Virginia Code provides that "[c]ontribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude." Va. Code Ann. § 8.01-34. To properly claim contribution, a "third-party complaint must reflect that the injured party must have a valid claim for redress of an indivisible injury against both the contribution plaintiff and the contribution defendant[.]" *Kohl's Dep. Stores, Inc. v. Target Stores, Inc.*, 214 F.R.D. 406, 414 (E.D. Va. 2003) (citing *Va. Elec. & Power Co. v. Wilson*, 277 S.E.2d 149, 150 (1981)). In other words, Cramer and WDTC cannot recover contribution from FPA and Wiggins unless Futrell—the injured party—could have recovered against FPA and Wiggins. *See Pierce v. Martin for Benefit of Com. Union Ins. Co.*, 334 S.E.2d 576, 578 (Va. 1985) (citations omitted); *see also Bartlett v. Roberts Recapping, Inc.*, 153 S.E.2d 193, 196 (Va. 1967) ("[B]efore contribution may be had it is essential that a cause of action by the person injured lie against the alleged wrongdoer from whom contribution is sought.").

These issues are for the Court, not the jury, to decide. For instance, the parties sharply disagree on whether Futrell could have brought a negligence action against FPA to recover her damages from the collision. *Compare* Third-Party Defs.' Suppl. Br. 6, *with* Triton's Suppl. Br. 11, ECF No. 183, *and* Cramer's Suppl. Br. 11–12, ECF No. 185. On the one hand, FPA maintains that Futrell could not have done so because she is FPA's sole member and could not sue herself. Third-Party Defs.' Suppl. Br. 6. On the other hand, defendants argue that, although unlikely in practice, because FPA is an LLC—a legal entity separate and distinct from its members—there is no legal impediment to Futrell suing FPA for negligence. Triton's Suppl. Br. 11; Cramer's Suppl. Br. 11–12. As for indemnification, threshold issues like this are legal questions squarely within the Court's decision-making authority and not the jury's. *See Prior v. Teamsters Loc. 101*, No. 3:14cv527, 2015 WL 500173, at *2 (E.D. Va. Feb. 4, 2015) (finding that a contribution claim failed because the plaintiff could not sue the third-party defendant as a matter of law).

This is not a case with an "inordinate number of parties" or "particularly complex issues." *Scarberry v. Huffman*, No. 3:10-0831, 2010 WL 4068923, at *2 (S.D.W. Va. Oct. 15, 2010). "Any potential prejudice resulting from combined trials can be remedied by protective measures, including cautionary warnings, limiting instructions, and other instructions to the jury." *Welch v. Logan Gen. Hosp., LLC*, No. 2:15cv01022, 2015 WL 3797148, at *3 (S.D.W. Va. June 18, 2015) (citation omitted); *see also Marcum v. Scioto Cnty., Ohio*, No. 1:10cv790, 2012 WL 2674303, at *3 (S.D. Ohio July 5, 2012) (explaining that courts can use special verdict forms, jury charges, and limiting instructions to limit the risk of confusion and prejudice); *Palma v. Montgomery Cnty., Md.*, 598 F. Supp. 3d 288, 300 (D. Md. 2022) (same).

### 2. Promoting judicial economy weighs heavily against bifurcation.

As discussed above, resolving the principal and third-party claims appears to involve essentially the same evidence. Should they proceed in two trials, the parties would present substantially overlapping cases—with largely the same witnesses and documentary proof—but with somewhat different legal arguments. This alone strongly counsels against bifurcation. *Dodgeland of Columbia, Inc. v. Federated Mut. Ins. Co.*, No. 3:09-1190-JFA, 2009 WL 10710815, at *2 (D.S.C. July 15, 2009) ("[A] court will likely decline to bifurcate if there will be a significant overlap of evidence at the two trials which would make separation inefficient and inexpedient.").

Second, the Court rejects FPA and Wiggins' contention that bifurcation would promote judicial economy because the third-party claims are relevant only if Futrell prevails on the principal claims. *See* Third-Party Defs.' Mem. 3 (arguing that the third-party claims "are only relevant if [Futrell] first proves that . . . Cramer and Triton were negligent"); Reply Mem. 3–5. The jury must indeed find for Futrell before addressing whether defendants are entitled to indemnification or contribution. FPA and Wiggins fail to realize, however, that actions brought under Federal Rule of Civil Procedure 14—such as the third-party claims here—are, by their very nature, contingent. A defending party may assert claims for contribution and/or indemnity against a person who is not a party to an action but "who *or may be liable* to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1) (emphasis added). Put differently, under Rule 14, a third-party complaint *can be brought only* when "the proposed third-party defendant would be secondarily liable to the original defendant *in the event* the latter is held to be liable to the plaintiff." *Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987) (emphasis added) (citation omitted). The Rules envision and endorse the party and claim

structure present here. So, the fact that the third-party claims are contingent on the outcome of the principal claims—by itself—is not a reason to bifurcate.

Although FPA and Wiggins are correct that the jury may never get to the third-party claims, the only "burden" from trying the principal claims and third-party claims together is the additional legal issues that must be resolved. That burden, however, weighs less heavily than the burden of litigating this case twice—seating two juries at different times to sort through essentially the same factual disputes.

## IV. CONCLUSION

Having considered whether bifurcation would be more convenient, avoid prejudice, or expedite and economize the resolution of this case, the Court is confident that trial can and should proceed on all claims together. Thus, for the reasons discussed herein, FPA and Wiggins' motion to bifurcate, ECF No. 114, is **DENIED**.

The Clerk is directed to deliver a copy of this opinion and order to all counsel of record.

_____
/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
April 1, 2025